**IN THE**
**UNITED STAES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| TRUE THE VOTE, INC. | |
| Plaintiff-Appellant, | |
| v. | No. 14-5316 |
| INTERNAL REVENUE SERVICE, *et al.* | |
| Defendants-Appellees. | |

## UNDERLYING DECISION FROM WHICH APPEAL ARISES

Pursuant to this Court's Order of December 19, 2014, Appellant True the Vote, Inc., through counsel, respectfully submits the underlying decision from which this appeal arises: (1) Order of the United States District Court for the District of Columbia, entered on October 23, 2014 (Docket No. 102), and the Memorandum Opinion of United States District Court for the District of Columbia, entered on October 23, 2014 (Docket No. 103).

1

Dated: January 20, 2015

Respectfully submitted,

___/s/ John C. Eastman_____
John C. Eastman (Cal. 193726)
Center for Constitutional Jurisprudence
c/o Chapman University School of Law
One University Drive
Orange, CA 92866
(877) 855-3330 x2 (telephone)
(714) 844-4817 (fax)
jeastman@chapman.edu
*Counsel for Appellant*

Michael J. Lockerby (D.C. 502987)
Cleta Mitchell (D.C. 433386)
FOLEY & LARDNER, LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, DC 20007
(202) 672-5300 (telephone)
(202) 672-5399 (fax)
mlockerby@foley.com
cmitchell@foley.com
*Lead Counsel for Appellant*

Kaylan L. Phillips (D.C. 1110583)*
Noel H. Johnson (Wisc. 1068004)*
ACTRIGHT LEGAL FOUNDATION
209 West Main Street
Plainfield, IN 46168
(317) 203-5599 (telephone)
(888) 815-5641 (fax)
kphillips@actrightlegal.org
njohnson@actrightlegal.org
*Counsel for Appellant*

William E. Davis (D.C. 280057)
Mathew D. Gutierrez (Fla. 0094014)*
FOLEY & LARDNER, LLP
One Biscayne Tower
2 South Biscayne Boulevard
Suite 1900
Miami, FL 33131
(305) 482-8404 (telephone)
(305) 482-8600 (fax)
wdavis@foley.com
mgutierrez@foley.com
*Counsel for Appellant*

                    *Applications for admission pending or forthcoming

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                        )
TRUE THE VOTE, INC.,                    )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )      Civil Action No. 13-734 (RBW)
                                        )
INTERNAL REVENUE SERVICE, <u>et al.</u>,    )
                                        )
            Defendants.                 )
_____)

## <u>ORDER</u>

For the reasons set forth in the Memorandum Opinion issued contemporaneously with

this Order, it is hereby

**ORDERED** that the Defendants' Motion to Dismiss Counts I, II, IV[,] and V is

**GRANTED**.  It is further

**ORDERED** that the Individual Management Defendants' Motion to Dismiss is

**GRANTED**.  It is further

**ORDERED** that the Motion to Dismiss of Cincinnati Defendants Susan Maloney, Ronald

Bell, Janine L. Estes, and Faye Ng is **GRANTED**.  It is further

**ORDERED** that the Plaintiff's Motion to Stay Agency Action is **DENIED AS MOOT**.

It is further

**ORDERED** that the plaintiff's request for an oral hearing is **DENIED AS MOOT**.  It is

further

**ORDERED** that this case is **CLOSED**.

1

**SO ORDERED** this 23rd day of October, 2014.

REGGIE B. WALTON
United States District Judge

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                                        )
TRUE THE VOTE, INC.,                                    )
                                                        )
            Plaintiff,                                  )
                                                        )
    v.                                                  )        Civil Action No. 13-734 (RBW)
                                                        )
INTERNAL REVENUE SERVICE, et al.,                       )
                                                        )
            Defendants.                                 )
_____)

## MEMORANDUM OPINION

The plaintiff, True the Vote, Inc., filed this civil action against the Internal Revenue

Service ("IRS"), the United States of America, and several IRS officials in both their official and

individual capacities,[1] alleging violations of the First Amendment, the Internal Revenue Code,

26 U.S.C. § 6103 (2012), the Administrative Procedure Act, 5 U.S.C. § 706 (2012), and seeking

declaratory and injunctive relief, as well as monetary damages.  See First Amended Complaint

("Am. Compl.") ¶¶ 13, 139-214.  Currently before the Court are the Defendants' Motion to

Dismiss Counts I, II, IV[,] and V ("Defs.' Mot.") of the Complaint; the Individual Management

Defendants' Motion to Dismiss [Count III of the Complaint] ("Mgmt. Mot."); the Motion to

Dismiss [Count III of the Complaint] of Cincinnati Defendants Susan Maloney, Ronald Bell,

Janine L. Estes, and Faye Ng ("Cincinnati Mot."); and the Plaintiff's Motion to Stay Agency

---

[1]  The individual defendants are: David Fish, Steven Grodnitzky, Lois Lerner, Steven Miller, Holly Paz, Michael
Seto, Douglas Shulman, Cindy Thomas, William Wilkins, Susan Maloney, Ronald Bell, Janine L. Estes, and Faye
Ng.  For purposes of resolving the several motions to dismiss, these individual defendants fall into two categories:
the Individual Management defendants (Steven Grodnitzky, Lois Lerner, Steven Miller, Holly Paz, Michael Seto,
Douglas Shulman, Cindy Thomas, and William Wilkins) and the Cincinnati defendants (Susan Maloney, Ronald
Bell, Janine L. Estes, and Faye Ng).

Action ("Pl.'s Mot.").[2]  For the following reasons, the Court concludes that it must grant all of

the defendants' motions to dismiss and deny the plaintiff's motion to stay agency action.[3]

## I. BACKGROUND

The plaintiff asserts that it "is a not-for-profit Texas corporation organized and operated

exclusively or primarily for a charitable purpose."  Am. Compl. ¶ 2.  On July 15, 2010, the

plaintiff filed an application with the Internal Revenue Service ("IRS") for tax-exempt status

pursuant to the Internal Revenue Code, 26 U.S.C. §§ 501(c)(3), 509(a)(1), 170(b)(1)(a)(vi).  Id.

¶¶ 3-4; see also id. ¶ 53.  After "receiv[ing] no further contact from the IRS [d]efendants during

[the] calendar year 2010," id. ¶ 54, the plaintiff asked Texas Senator John Cornyn to "inquire[]

of the IRS as to the status of [the plaintiff]'s application for tax-exempt status," id. ¶ 55.  On

February 5, 2011, the plaintiff received a "letter sent from the Cincinnati, Ohio IRS office"

requesting "additional information from [the plaintiff] to complete the IRS['s] consideration of

[the plaintiff]'s [a]pplication."  Id. ¶ 56.

---

[2]  In addition to the submissions already identified, the Court considered the following filings submitted by the parties in rendering its decision: (1) True the Vote's Opposition to the Government's Motion to Dismiss Counts I, II, IV, and V ("Opp'n to Defs.' Mot."); (2) the Reply in Support of Motion to Dismiss Counts I, II, IV[,] and V ("Defs.' Reply"); (3) the Supplement to [the] Motion to Dismiss Counts I, II, IV[,] and V ("Defs.' Supplement"); (4) the Plaintiff's Notice of Supplemental Authority [Regarding Counts I, II, IV, and V] ("Pl.'s Supp'l Authority I"); (5) the Federal Defendants' Response to [the] Plaintiff's Notice of Supplemental Authority [Regarding Counts I, II, IV, and V] ("Defs.' Resp. to Pl.'s Supp'l Authority I"); (6) the Memorandum in Support of [the] Individual Management Defendants' Motion to Dismiss ("Mgmt. Mem."); (7) the Memorandum of Points and Authorities in Support of the Cincinnati Defendants' Motion to Dismiss ("Cincinnati Mem."); (8) True the Vote's Opposition to [the] Individual Defendants' Motion to Dismiss ("Opp'n to Mgmt. and Cincinnati Mots."); (9) the Reply Brief in Support of Individual Management Defendants' Motion to Dismiss ("Mgmt. Reply"); (10) the Reply in Support of the Cincinnati Defendants' Motion to Dismiss ("Cincinnati Reply"); (11) the Individual Defendants' Joint Notice of Supplemental Authority ("Joint Supp'l Authority"); (12) the Plaintiff's Notice of Supplemental Authority [Regarding Count III] ("Pl.'s Supp'l Authority II"); (13) the Federal Defendants' Response to [the] Plaintiff['s] Notice of Supplemental Authority [Regarding Count III] ("Defs.' Resp. to Pl.'s Supp'l Authority II"); (14) the Opposition to [the] Plaintiff's Motion to Stay Agency Action ("Opp'n to Pl.'s Mot."); (15) the Plaintiff's Reply to [the] Federal Defendants' Opposition to Motion to Stay Agency Action ("Pl.'s Reply"); (16) the Plaintiff's Notice of Supplemental Authority ("Pl.'s Supp'l Authority III"); and (17) the Individual Defendants' Joint Response to [the] Plaintiff's Notice of Supplemental Authority ("Mgmt. and Cincinnati Resps. to Pl.'s Supp'l Authority III").

[3]  The Court's opinion should not be interpreted as an assessment of the propriety of the alleged conduct by the defendants, as resolution of the motions does not require an assessment of the merits of the plaintiff's claims.

On March 7 and March 8, 2011, that information was "furnished to the IRS."  Id. ¶ 57.  Then, on

October 12, 2011, the plaintiff "contacted the IRS" to follow up on its application for tax-exempt

status.  Id. ¶ 60.  The plaintiff was allegedly told that "the Washington, [DC] office had assumed

primary approval responsibility" for the plaintiff's application.  Id. ¶ 60.  On November 8, 2011,

the plaintiff "submitted to the IRS additional information" about itself, as well as "legal

precedent . . . that provided the IRS [d]efendants the legal basis" for approving the plaintiff's

application.  Id. ¶ 61.

  The following year, on February 8, 2012, the plaintiff received another letter "from the

Cincinnati, Ohio IRS office" stating that "the IRS needed even more information" from the

plaintiff to complete its consideration of the plaintiff's tax-exempt application.  Id. ¶ 63.  That

additional information was provided to the IRS on March 20, 2012.  Id. ¶ 64.  After providing

that information, the plaintiff received a third letter on October 9, 2012, from "the Cincinnati,

Ohio IRS office," "request[ing] still more information."  Id. ¶ 66.  The plaintiff complied with

that information request on November 30, 2012.  Id. ¶ 67.

  Based on its correspondence with the IRS, the plaintiff alleges that due to its "mission of

promoting election integrity and its perceived association with 'Tea Party' organizations, the IRS

[d]efendants systematically targeted [the plaintiff's] application for unwarranted delay and

heightened review and scrutiny," thereby subjecting the plaintiff "to numerous unnecessary,

burdensome, and unlawful requests for information about its operations, activities, leadership,

volunteers, associations, and affiliations."  Id. ¶ 5.  As support for its position, the plaintiff cites a

May 10, 2013 "meeting of the Exempt Organizations Committee of the Tax Section of the

American Bar Association," where one of the individual defendants "admitted . . . that the IRS

had selected applications for tax-exempt status for further review and scrutiny 'simply because

the applications' 'used names like Tea Party . . .'" <u>Id.</u> ¶ 77 (citing reference).  During that

meeting, the plaintiff contends that the IRS admitted it "sent some letters out that were far too

broad, asking questions of these organizations that were[ not] really necessary . . . ." <u>Id.</u> ¶ 78

(internal quotations and citations omitted).  As further support of the plaintiff's allegation

concerning the IRS's selective targeting, the plaintiff cites "a report entitled 'Inappropriate

Criteria Were Used to Identify Tax-Exempt Applications for Review' (the '[Report]')" that was

issued "[o]n or around May 14, 2013," by "the Treasury Inspector General for Tax

Administration." <u>Id.</u>¶ 80.  The plaintiff summarizes the Treasury Inspector General for Tax

Administration's conclusion as follows:

> The IRS used inappropriate criteria that identified for review Tea Party and other
> organizations applying for tax-exempt status based upon their names or policy
> positions instead of indications of potential political campaign intervention.
> Ineffective management: 1) allowed inappropriate criteria to be developed and
> stay in place for more than [eighteen] months, 2) resulted in substantial delays in
> processing certain applications, and 3) allowed unnecessary information requests
> to be issued.

<u>Id.</u> ¶ 81 (quoting the Report); <u>see generally</u> <u>id.</u> ¶¶ 82-118 (describing certain IRS actions).

Thus, according to the plaintiff, the IRS defendants engaged in an "unlawful scheme"

whereby the plaintiff was "forced to repeatedly furnish the IRS with information, materials, and

documents that were not necessary to determine whether [the plaintiff] was entitled to tax-

exempt status." <u>Id.</u> ¶ 6.  The plaintiff alleges that the "IRS [d]efendants knowingly developed,

implemented, and applied the IRS [t]argeting [s]cheme in violation of the United States

Constitution, the Internal Revenue Code governing tax-exempt organizations, procedures

historically followed by the IRS, and Treasury Regulations." <u>Id.</u> ¶ 124; <u>see also</u> <u>id.</u> ¶ 135.  In

the eyes of the plaintiff, the "mistreatment and mishandling of [the plaintiff]'s application for

tax-exempt status and the refusal of the IRS [d]efendants to issue a determination letter

4

recognizing [the plaintiff]'s tax-exempt status . . . has caused the organization substantial damages and financial hardship," id. ¶ 134, and "has substantially and materially interfered with its ability to engage in free speech, free association, and activities in furtherance of its charitable purpose," id. ¶ 137.

The plaintiff filed this action on May 21, 2013, ECF No. 1, and amended its complaint on July 22, 2013, Am. Compl. at 48.  Count one seeks declaratory relief that the plaintiff is entitled to enjoy tax-exempt status as a charitable organization described in 26 U.S.C. § 501(c)(3) (2012). See Am. Compl. ¶¶ 140-41.  Count two also seeks a declaratory judgment that the "IRS [t]argeting [s]cheme" violated the plaintiff's First Amendment rights, and injunctive relief to prevent additional violations.  See id. ¶¶ 150-52, 158.  Count three seeks monetary damages against certain defendants in their individual capacities for their alleged participation in the "IRS [t]argeting [s]cheme."  See id. ¶¶ 164-65.  Count four claims violations of 26 U.S.C. § 6103, which relates to unauthorized disclosures and inspections of any tax return or tax return information.  See id.  And count five asserts violations of the Administrative Procedure Act for the alleged "IRS [t]argeting [s]cheme."  Id. ¶¶ 189-206.

After the plaintiff instituted this action, "an internal IRS memorandum released by the IRS" found that "applications for tax-exempt status continued to be subjected to the . . . IRS [t]argeting [s]cheme until June 20, 2013, when it was allegedly suspended."  Id. ¶ 136 (citing Daniel Werfel, Charting a Path Forward at the IRS: Initial Assessment and Plan of Action, Appendix ("App.") C (June 24, 2013), www.irs.gov/PUP/newsroom/Initial%20Assessment% 20and%20Plan%20of%20Action.pdf ("IRS Action Plan")).  Since the defendants filed their pending motions to dismiss, the IRS has "grant[ed] the [p]laintiff's application for tax-exempt

status . . . and was in the process of issuing a favorable determination letter."[4]  Defs.'

Supplement at 1.  The plaintiff opposes all pending motions to dismiss.

## II. STANDARDS OF REVIEW

### A.  Rule 12(b)(1) Motion to Dismiss

Rule 12(b)(1) allows a party to move to dismiss "for lack of subject-matter jurisdiction."

Fed. R. Civ. P. 12(b)(1).  When a defendant moves to dismiss under Rule 12(b)(1), "the

plaintiff[] bear[s] the burden of proving by a preponderance of the evidence that the Court has

subject[-]matter jurisdiction."  Biton v. Palestinian Interim Self-Gov't Auth., 310 F. Supp. 2d

172, 176 (D.D.C. 2004); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  A

court considering a Rule 12(b)(1) motion must "assume the truth of all material factual

allegations in the complaint and 'construe the complaint liberally, granting [a] plaintiff the

benefit of all inferences that can be derived from the facts alleged.'"  Am. Nat'l Ins. Co. v. FDIC,

642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir.

2005)).  But a "court must give [a] plaintiff's factual allegations closer scrutiny when resolving a

Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a

claim."  Byrum v. Winter, 783 F. Supp. 2d 117, 122 (D.D.C. 2011) (citing Macharia v. United

States, 334 F.3d 61, 64, 69 (D.C. Cir. 2003)).  And "[a]lthough 'the District Court may in

appropriate cases dispose of a motion to dismiss for lack of subject[-]matter jurisdiction under

Fed. R. Civ. P. 12(b)(1) on the complaint standing alone,' 'where necessary, the court may

consider the complaint supplemented by undisputed facts evidenced in the record, or the

---

[4]  The plaintiff has provided the Court with a "true and correct copy of the [d]etermination [l]etter[, which] is a self-authenticating document . . . ."  Opp'n to Defs.' Mot. at 1 n.1; see also id., Exhibit ("Ex.") A (September 26, 2013 Determination Letter Granting the Plaintiff's Application for Tax-Exempt Status ("Determination Letter")).  And in light of the parties' representations, the Court takes judicial notice that the plaintiff's application for tax-exempt status has been approved by the IRS.  Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'"

Coal. for Underground Expansion v. Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting

Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992)).  Finally, in determining

whether it has jurisdiction, the Court "may consider materials outside of the pleadings."  Jerome

Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

### B.  Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion tests whether the complaint "state[s] a claim upon which relief

can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under Rule

12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In considering a Rule 12(b)(6) motion, the

Court affords the plaintiff the "benefit of all inferences that can be derived from the facts

alleged."  Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotations

and citation omitted).  But raising a "sheer possibility that a defendant has acted unlawfully" fails

to satisfy the facial plausibility requirement.  Iqbal, 556 U.S. at 678.  Rather, a claim is facially

plausible "when the plaintiff pleads factual content that allows the [C]ourt to draw [a] reasonable

inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S.

at 556).  While the Court must "assume [the] veracity" of any "well-pleaded factual allegations"

in the complaint, conclusory allegations "are not entitled to the assumption of truth."  Id. at 679.

"In determining whether a complaint states a claim, the [C]ourt may consider the facts alleged in

the complaint, documents attached thereto or incorporated therein, and matters of which it may

take judicial notice."  Abhe & Svoboda, Inc. v. Chao, 508 F.3d 1052, 1059 (D.C. Cir. 2007)

(internal quotations omitted).  And among the documents "subject to judicial notice on a motion

to dismiss" are "public records," <u>Kaempe v. Myers</u>, 367 F.3d 958, 965 (D.C. Cir. 2004), which includes records from other court proceedings, <u>Covad Commc'ns Co. v. Bell Atl. Corp.</u>, 407 F.3d 1220, 1222 (D.C. Cir. 2005).

### III. ANALYSIS

#### A.  Counts One, Two, and Five of the Plaintiff's Complaint

The defendants contend that the Court does not have subject-matter jurisdiction over counts one, two, and five of the plaintiff's complaint because the IRS ultimately approved the plaintiff's application for tax-exempt status, and thus counts one, two, and five—all of which seek "to correct [the] alleged targeting [of the IRS] and delay during its application process" for tax-exempt status—are now moot as there is no longer any case or controversy for the Court to resolve.  Defs.' Reply at 1; <u>see also</u> Defs.' Mot. at 2-4.  The plaintiff, on the other hand, insists that there are "ongoing, live controversies" because "[t]his case is about declaring the illegitimacy of the IRS [t]argeting [s]cheme in <u>all</u> its forms [and] enjoining its ongoing implementation."  Opp'n to Defs.' Mot. at 9 (emphasis in original).  And the plaintiff argues that without this "additional relief, the IRS can continue to employ its [t]argeting [s]cheme."  <u>Id.</u>

As the outset, the Court notes that the plaintiff does <u>not</u> contest that count <u>one</u> of its complaint is moot.  <u>See id.</u> ("Counts <u>[two] and [five]</u> present, actual ongoing, live controversies" (emphasis added)).  Thus, the Court finds that the plaintiff has conceded the motion to dismiss count one for lack of subject-matter jurisdiction.  <u>See Lewis v. District of Columbia</u>, No. 10-5275, 2011 WL 321711, at *1 (D.C. Cir. Feb. 2, 2011) (per curiam) ("'It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.'" (quoting <u>Hopkins v. Women's Div., Gen. Bd. of Global</u>

Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), aff'd, 98 F. App'x 8 (D.C. Cir. 2004))); Local

Civ. R. 7(b).

Unless an actual, ongoing controversy exists in this case, this Court is without power to

decide it.  See Clarke v. United States, 915 F.2d 699, 700-01 (D.C. Cir. 1990).  Even where a

case once posed "a live controversy when filed, the [mootness] doctrine requires" the Court "to

refrain from deciding it if 'events have so transpired that the decision will neither presently affect

the parties' rights nor have a more-than-speculative chance of affecting them in the future.'"  Id.

(quoting Transwestern Pipeline Co. v. FERC, 897 F.2d 570, 575 (D.C. Cir. 1990)).  Here, after

the plaintiff initiated this case, its application to the IRS for tax-exempt status was approved by

the IRS.  See Opp'n to Defs.' Mot., Ex. A (Determination Letter) at 1.[5]  The allegedly

unconstitutional governmental conduct, which delayed the processing of the plaintiff's tax-

exempt application and brought about this litigation, is no longer impacting the plaintiff.  See

NorCal Tea Party Patriots v. IRS, No.1:13-cv-341, 2014 WL 3547369, at *9 n.11 (S.D. Ohio

July 17, 2014) ("The claim for declaratory and injunctive relief cannot be brought by other

Plaintiff Groups who have either had their applications for tax-exempt status ruled upon or have

withdrawn their applications.").  Counts two and five, therefore, are moot.

Notwithstanding the IRS's favorable resolution of the plaintiff's tax-exempt application,

the plaintiff wants to forge ahead with these counts of its complaint.  The plaintiff attempts to

salvage these counts by invoking the "voluntary cessation" exception to the mootness doctrine.[6]

See Opp'n to Defs.' Mot. at 11-15.  As the District of Columbia Circuit has explained:

---

[5]  This critical fact renders Z St., Inc. v. Koskinen, _ F. Supp. 2d _, 12-cv-0401(KBJ), 2014 WL 2195492 (D.D.C. May 27, 2014), inapplicable to the Court's analysis.

[6]  By invoking an exception to the mootness doctrine, the plaintiff implicitly seems to concede that these claims are moot.

The rationale supporting the defendant's voluntary cessation as an exception to mootness is that, while the defendant's unilateral cessation of the challenged conduct may grant the plaintiff relief, the defendant is free to return to its old ways—thereby subjecting the plaintiff to the same harm but, at the same time, avoiding judicial review. Accordingly, a case can be mooted by virtue of the defendant's cessation of its allegedly illegal conduct only if (1) there is no reasonable expectation that the conduct will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.

Qassim v. Bush, 466 F.3d 1073, 1075 (D.C. Cir. 2006) (internal alterations, quotations, and citations omitted). "The defendant carries the burden of demonstrating 'that there is no reasonable expectation that the wrong will be repeated,' and 'the burden is a heavy one.'" Am. Bar Ass'n v. FTC, 636 F.3d 641, 648 (D.C. Cir. 2011) (internal alteration omitted) (quoting United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953)). But "'where the defendant is a government actor—and not a private litigant—there is less concern about the recurrence of objectionable behavior.'" D.C. Prof'l Taxicab Drivers Ass'n v. District of Columbia, 880 F. Supp. 2d 67, 75 (D.D.C. 2012) (quoting Citizens for Responsibility & Ethics in Wash. v. SEC, 858 F. Supp. 2d 51, 61 (D.D.C. 2012) (citing Circuit cases)).

The "voluntary cessation" exception does not rescue counts two and five of the plaintiff's complaint from dismissal on the ground of mootness. According to the plaintiff, the IRS publicly "suspended" its "targeting scheme" on June 20, 2013.[7] Am. Compl. ¶ 136 (emphasis added); see also Initiative & Referendum Inst. v. U.S. Postal Serv., 685 F.3d 1066, 1074 (D.C. Cir. 2012), cert. denied, _ U.S. _, 133 S. Ct. 1802 (2013) ("It is implausible that the [defendant] would have gone through the cumbersome process of amending its regulation . . . only to

---

[7] Although the complaint states that the IRS "allegedly suspended" the "targeting scheme," Am. Compl. ¶ 136, the Court takes judicial notice that the IRS has in fact suspended the alleged scheme and taken remedial steps to address the alleged conduct, see IRS Action Plan at 7, 14, App. C; IRS Charts a Path Forward [W]ith Immediate Actions, http://www.irs.gov/uac/Newsroom/IRS-Charts-a-Path-Forward-with-Immediate-Actions (last visited Oct. 23, 2014) ("IRS Path Forward"), as it has publicly stated so on its website, see, e.g., Seifert v. Winter, 555 F. Supp. 2d 3, 11 n.5 (D.D.C. 2008) (Walton, J.) (citing cases that allow the taking of judicial notice of information published on government websites).

[unconstitutionally] re-amend the regulation after this case is resolved"); Coal. of Airline Pilots

Ass'ns v. FAA, 370 F.3d 1184, 1191 (D.C. Cir. 2004) (mooting case where government

provided "unequivocal assurances" that application of challenged regulation was "effectively

dead"); Citizens for Responsibility, 858 F. Supp. 2d at 62-63 (finding that a submission by the

plaintiff reflecting defendant's abandonment of challenged policy was enough to provide the

Court with "comfort that the [defendant] [wa]s taking seriously [the] [p]laintiff's concerns with

the prior policy and [wa]s undertaking efforts to ensure" its "discontinu[ation]"); Mont. Shooting

Sports Ass'n v. Norton, 355 F. Supp. 2d 19, 21 n.1, 23 (D.D.C. 2004) (mooting case where

government "rescinded" its challenged action), aff'd, No. 04-5434, 2005 WL 2810686 (D.C. Cir.

June 14, 2005); Jean v. Dep't of Labor, No. 89-cv-0611-OG, 1990 WL 515163, at *4 (D.D.C.

Jan. 9, 1990) (rendering case moot by defendants' actions and assurances of good faith as to

future behavior).  And subsequent to that suspension, the plaintiff's application for tax-exempt

status was granted.  Opp'n to Defs.' Mot., Ex. A (Determination Letter) (approving plaintiff's

application on September 26, 2013).  Now that the plaintiff has received tax-exempt status,

which has "completely and irrevocably eradicated the effects of the alleged violation[s]" by the

defendants, Qassim, 466 F.3d at 1075, there is no reasonable expectation that the defendants will

"return to [their allegedly] old ways," i.e., utilizing an allegedly unlawful "targeting scheme" on

certain organizations seeking tax-exempt status during the tax-exempt application process, and

"subjecting the plaintiff to the same harm" again, id.  Therefore, the defendants' grant of tax-

exempt status to the plaintiff, and the defendants' suspension of the alleged IRS targeting scheme

during the tax-exempt application process, including remedial steps to address the alleged

conduct, coupled with the reduced "concern about the recurrence of objectionable behavior" by

government actors, <u>D.C. Prof'l Taxicab Drivers</u>, 880 F. Supp. 2d at 75, convinces the Court that

the "voluntary cessation" exception is not applicable here.[8]

Endeavoring to prolong the life of counts two and five of the complaint, the plaintiff

hypothetically suggests that the IRS could audit the plaintiff at a later point in time and "be

singled out [again] for reasons unrelated to the provisions of the Internal Revenue Code."  Opp'n

to Defs.' Mot. at 13.  But not only is this prospect of future harm speculative, <u>see</u> <u>Munsell v.</u>

<u>Dep't of Agric.</u>, 509 F.3d 572, 581 (D.C. Cir. 2007) ("[E]ven if [the plaintiff] could establish that

agency officials violated his First Amendment rights . . . [the plaintiff could not] demonstrate[] a

real and immediate threat that [the plaintiff] would be subject to the same conduct in the

future."); <u>Don't Tear it Down, Inc., v. Gen. Servs. Admin.</u>, 401 F. Supp. 1194 1199 (D.D.C.

1975) (mooting case where challenged governmental conduct "[s]o far as the Court [wa]s aware .

. . ha[d] not been duplicated in any other instance," and "that it will be duplicated must be

deemed speculative"), it is also a harm that is different than the one identified in the complaint,

which is entirely focused on an alleged IRS "targeting scheme" during the plaintiff's tax-exempt

application process,[9] <u>Qassim</u>, 466 F.3d at 1075 ("voluntary cessation . . . exception" applicable

where plaintiff would be "subject[ed] . . . to the <u>same</u> harm" (emphasis added)).  As such, counts

two and five no longer warrant the Court's attention and further use of its resources.[10]  <u>Newdow</u>

---

[8]  The cases cited by the plaintiff invoking the "voluntary cessation" exception are thus inapposite.

[9]  This rationale applies equally to the plaintiff's argument in its motion to stay agency action that the IRS may potentially disclose the plaintiff's confidential information at some point in the future pursuant to 26 U.S.C. § 6104. <u>See</u> Opp'n to Defs.' Mot. at 10-11.

[10]  The plaintiff urges the Court to allow it to maintain these counts because "there are indications that the IRS [t]argeting [s]cheme has not ceased, that it has spread beyond the application process, and that it is likely to continue."  Opp'n to Defs.' Mot. at 13.  This plea is rejected for several reasons.  First, this projected harm is contrary to what the plaintiff has alleged in its complaint, which is that the IRS targeting scheme is no longer ongoing.  Am. Compl. ¶ 136 (alleging that IRS targeting scheme was "<u>suspended</u>" on June 20, 2013 (emphasis added)).  Second, the Court will not allow the plaintiff to amend the already-amended complaint through an opposition brief and recast its claims concerning the IRS's alleged targeting scheme that stalled the approval of its

(continued . . .)

v. Roberts, 603 F.3d 1002, 1008 (D.C. Cir. 2010) (holding that while the constitutionality of

certain governmental conduct "may be an important question to [the] plaintiffs, . . . it is not a live

controversy that can avail itself of the judicial powers of the federal courts[, and the question] is

therefore moot").  Accordingly, counts two and five are dismissed for want of subject-matter

jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).[11]

### B.  Count Three of the Plaintiff's Complaint

The plaintiff seeks "money damages," also commonly known as a Bivens remedy,[12]

against the individual IRS defendants in their individual capacities for their alleged constitutional

---

(. . . continued)
tax-exempt application, e.g., id. ¶ 73 (identifying IRS targeting scheme as limited to a "written and unwritten policy
for identifying and subjecting certain applicants for tax-exempt status to additional and heightened review and
scrutiny" (emphasis added)), as a broader challenge to a potentially unlawful ongoing scheme or policy at the IRS in
carrying out its responsibilities other than reviewing tax-exempt applications.  Indeed, "it is a well-established
principle of law in this Circuit that [the plaintiff] may not amend [its] complaint by making new allegations in [the]
opposition brief."  Budik v. Ashley, _ F. Supp. 2d _, _, No. 12-cv-1949(RBW), 2014 WL 1423293, at *8 (D.D.C.
Apr. 14, 2014) (Walton, J.) (citing Larson v. Northrop Corp., 21 F.3d 1164, 1173-74 (D.C. Cir. 1994)).  And third,
even assuming that the defendants continue to implement the IRS targeting scheme against other organizations like
the plaintiff in its review of their applications for tax-exempt status—which is contradicted by the plaintiff's
complaint, Am. Compl. ¶ 136—the plaintiff filed its complaint on the basis of alleged harm to itself during its
application process for tax-exempt status and not on the behalf of others that may have been similarly situated to the
plaintiff, i.e., other organizations subjected to the same alleged conduct during their application processes for tax-
exempt status, see Qassim, 466 F.3d at 1076 (explaining that constitutional challenge to a government policy can
proceed if seeking "relief for individuals similarly situated").

[11]  The plaintiff's reliance on City of Hous. v. Dep't of Hous. & Urban Dev., 24 F.3d 1421, 1428 (D.C. Cir. 1994), is
misplaced; and in fact, the Court's conclusion is consistent with the case.  The District of Columbia Circuit
enumerated three possible outcomes when a plaintiff's claim for declaratory relief regarding agency action taken
against the plaintiff pursuant to an unlawful policy is moot: (1) the plaintiff can invoke the "capable of repetition,
yet evading review" or "voluntary cessation" exceptions to continue the litigation and challenge the policy; (2) the
plaintiff "lacks standing to attack future applications of that policy" and "the [C]ourt is unable to award relief"; or
(3) the plaintiff "has standing to challenge the future implementation of that policy" and "declaratory relief may be
granted if the claim is ripe for review."  Id. at 1429-30.  Here, the Court has already determined that the "voluntary
cessation" exception is inapplicable.  And the plaintiff has not properly pleaded imminent future harm in the
complaint, as the pleaded future harm is not only different than the one spelled out in the complaint, but the
defendants have also suspended the disputed policy, such that the Court could not find standing to challenge future
applications of the policy.  See Lujan, 504 U.S. at 560-61 (explaining that there must be an injury-in-fact that is
"concrete and particularized" and "actual or imminent, not conjectural or hypothetical," to maintain standing in a
suit).

[12]  In Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court
held that a plaintiff could recover monetary damages against federal officials who violated the constitutional rights
of the plaintiff while acting under the color of federal law.

violations alleged in count three of the complaint.  Am. Compl. ¶ 164; see also Opp'n to Mgmt.

and Cincinnati Mots. at 24-42.  In response, the individual IRS defendants generally argue that

count three should be dismissed because: (1) the Court does not have personal jurisdiction over

several defendants; (2) even if the Court has personal jurisdiction over all defendants, no Bivens

claim can be asserted against the individual IRS defendants; and (3) to the extent any Bivens

claim is allowed, the IRS defendants are entitled to qualified immunity.  See, e.g., Mgmt. Mem.

at 1-2, 6-8; Cincinnati Mem. at 1-2.  As explained below, because precedent does not permit the

Court to create a Bivens remedy for the plaintiff against the individual IRS defendants, the Court

need not address the personal jurisdiction and qualified immunity issues.

In Kim v. United States, 632 F.3d 713 (D.C. Cir. 2011), the Circuit dealt with aggrieved

taxpayers who alleged IRS wrongdoing, including unconstitutional conduct by individual IRS

employees, and sought Bivens relief as a result of the alleged harm.  Id. at 714-15.  The Circuit

affirmed the district court's dismissal of the "Bivens claims against the [d]efendants in their

official capacities" pursuant to Fed. R. Civ. P. 12(b)(1), noting that it is "well established that

Bivens remedies do not exist against officials sued in their official capacities."  Id. at 715.  The

Circuit also affirmed the district court's dismissal of the "Bivens claims against the [d]efendants

in their individual capacities" pursuant to Fed. R. Civ. P. 12(b)(6) because "no Bivens remedy

was available in light of the comprehensive remedial scheme set forth by the Internal Revenue

Code."  Id. at 717.

The plaintiff here attempts to distinguish Kim by characterizing it as "materially

different" and suggesting that Kim's holdings are limited to cases involving "Bivens claims

[against IRS employees] under [the] Due Process Clause."  Opp'n to Mgmt. and Cincinnati

Mots. at 40.  But that suggestion relies on a strained reading of Kim.  In affirming the rejection

14

of the Bivens claims against IRS officials in both their official and individual capacities, the

Circuit's language did not limit the scope of its ruling.  See Kim, 632 F.3d at 715, 717.  And in

any event, the plaintiff has not distinguished—through the cases it cites or otherwise—any

legally cognizable distinction between Due Process Clause claims and First Amendment Claims

such that a Bivens remedy is appropriate in the former context, but not the latter context.[13]

The plaintiff attempts to blunt the force of Kim by complaining that the Circuit in Kim

"omit[ted] an entire[] inquiry into whether Congress ha[d] not inadvertently omitted damages

remedies for certain claimants, and ha[d] not plainly expressed an intention that the courts

preserve Bivens remedies."  Opp'n to Mgmt. and Cincinnati Mots. at 41 (certain internal

alterations and quotations omitted).  Accordingly, the plaintiff urges the Court to engage in this

inquiry.  See id. at 42-44.  The alleged omission by the plaintiff, however, is belied by a closer

reading of the district court opinion as well as the Circuit's opinion.

The district court in Kim undertook the very analysis that the plaintiff asks the Court to

conduct.  In declining to extend a Bivens remedy to the plaintiffs against the IRS employees in

their individual capacities for alleged constitutional violations, the district court recognized that

the "existence of a comprehensive remedial scheme" was a "special factor" that counseled

against its extension.  Kim v. United States, 618 F. Supp. 2d 31, 38 (D.D.C. 2009), aff'd in part,

rev'd in part and remanded, 632 F.3d 713 (D.C. Cir. 2011).  "That is, when 'Congress has put in

place a comprehensive system to administer public rights, has not inadvertently omitted damages

remedies for certain claimants, and has not plainly expressed an intention that the courts preserve

Bivens remedies,' courts 'must withhold their power to fashion damages remedies' pursuant to

Bivens."  Id. (quoting Spagnola v. Mathis, 859 F.2d 223, 228 (D.C. Cir. 1988) (per curiam) (en

---

[13] "The trend in other Circuits also has been to not recognize Bivens actions against IRS agents."  NorCal, 2014 WL 3547369, at *8 (citing Circuit cases, "follow[ing] the majority position," and dismissing Bivens actions).

banc)).  On appeal, the Circuit "agree[d] with the district court's reasoning" that "no <u>Bivens</u>

remedy was available in light of the comprehensive remedial scheme set forth by the Internal

Revenue Code." <u>Kim</u>, 632 F.3d at 718; <u>see also</u> <u>NorCal</u>, 2014 WL 3547369, at *5-8; <u>Church By

Mail, Inc. v. United States</u>, No. 87-cv-0754-LFO, 1988 WL 8271, at *3 (D.D.C. Jan. 22, 1988)

(explaining that declaratory relief for applicants seeking tax-exempt status under 26 U.S.C. §

7428 renders <u>Bivens</u> remedy improper for aggrieved applicants).  In light of the Circuit's

unequivocal endorsement of the district court's <u>Bivens</u> analysis, the Court cannot take a different

approach.

     Moreover, a former member of this Court was confronted with a nearly identical case to

the one before the Court and refrained from fashioning a <u>Bivens</u> remedy as well.  In <u>Church By

Mail</u>, the plaintiff, a non-profit church seeking tax-exempt status, filed suit against the

defendants, the IRS and various individual IRS agents, for the denial of its tax-exempt status

application.  1988 WL 8271, at *1.  The plaintiff claimed, <u>inter alia</u>, that the defendants violated

the Constitution, including the First Amendment, by "favoring traditional churches over more

unusual ones," <u>id.</u>, "demonstrat[ing] dislike and intolerance of [the] plaintiff's religion," <u>id.</u> at *2

(internal quotations omitted), and "engag[ing] in invidious discrimination against [the] plaintiff

by singling it out for investigation and attack," <u>id.</u>  According to the plaintiff, in denying its tax-

exempt application, the defendants "exceeded the bounds of the authority given to [the]

defendants under existing law."  <u>Id.</u>

     In dismissing the plaintiff's claims seeking <u>Bivens</u> damages for the constitutional

violations alleged against the defendants, the Court in <u>Church By Mail</u> reasoned that "a court-

created remedy" was unnecessary where "Congress has created a specific remedy for challenges

to rulings on tax exemption."  <u>Id.</u> at *3.  Specifically, the Court recognized "that no <u>Bivens</u>-type

damages remedy against the individual IRS agents should be created by the Court . . . because Congress has created a specific, meaningful declaratory judgment remedy under 26 U.S.C. [§] 7428 for cases . . . in which an application for tax[-]exempt status has been denied." Id. Had it created a Bivens remedy, the Court opined that it could have "'wre[acked] havoc . . . [on] the federal tax system.'" Id. (quoting Baddour, Inc. v. United States, 802 F.2d 801, 807 (5th Cir. 1986)). The Court reasoned that "[i]t would make the collection of taxes chaotic if a taxpayer could bypass the remedies provided by Congress simply by bringing a damage action against [IRS] employees." Id. (internal quotations and alterations omitted). This Court agrees with Judge Oberdorfer's assessment, and therefore dismisses count three of the complaint with prejudice for the failure to state a proper claim for relief under Federal Rule of Civil Procedure 12(b)(6).[14]

### C. Count Four of the Plaintiff's Complaint

In count four of the complaint, the plaintiff seeks relief from the defendants for their alleged violations of 26 U.S.C. § 6103 because "[p]ursuant to the IRS [t]argeting [s]cheme, the IRS [d]efendants knowingly requested information from [the plaintiff] in furtherance of the IRS'[s] discriminatory and unconstitutional" conduct. Am. Compl. ¶ 175. So according to the plaintiff, "the IRS [d]efendants knowingly inspected information provided to the IRS . . . [which was] unnecessary." Id. ¶ 179 (internal quotations and citations omitted). Because the information provided by the plaintiff was unnecessary, the plaintiff claims that the defendants'

---

[14]   The plaintiff asserts that because the IRS pays for the individual defendants' legal representation in a Bivens action, it follows that permitting the plaintiff to proceed on a Bivens claim against the individual defendants is appropriate. See Opp'n to Mgmt. and Cincinnati Mots. at 26. The Court fails to see how this is remotely relevant, let alone a basis to rule contrary to this Circuit's precedent. Moreover, the plaintiff argues that the declaratory relief provided by 26 U.S.C. § 7428 is not an adequate alternative remedy for constitutional injuries. Opp'n to Mgmt. and Cincinnati Mots. at 30-37. But the plaintiff's dissatisfaction with the remedies available to it is not a legally sufficient reason for the Court to create a Bivens remedy. See Spagnola, 859 F.2d at 227 ("[I]t is the comprehensiveness of the statutory scheme involved, not the 'adequacy' of specific remedies extended thereunder, that counsels judicial abstention.").

inspection of that information was not "per se for tax administration purposes."  Id. ¶ 178

(internal quotations omitted).  Consequently, the plaintiff argues that the defendants are liable

under 26 U.S.C. § 7431, which provides damages for violations of 26 U.S.C. § 6103.  Am.

Compl. ¶¶ 170, 207; see also Opp'n to Defs.' Mot. at 28-42.  The defendants contend that the

underlying basis for the plaintiff's fourth count is the "nature of the [IRS's] requests for

information," which is not actionable under 26 U.S.C. § 6103, as this provision only prohibits

"the improper inspection and disclosure" of the information which the plaintiff provided.  Defs.'

Mot. at 10-11.

      26 U.S.C. § 6103 protects the confidentiality of taxpayers' tax "[r]eturns and [tax] return

information."  Id. § 6103(a).  Tax "return information" is broadly defined to include:

> [A] taxpayer's identity, the nature, source, or amount of his income, payments,
> receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability,
> tax withheld, deficiencies, overassessments, or tax payments, whether the
> taxpayer's return was, is being, or will be examined or subject to other
> investigation or processing, or any other data, received by, recorded by, prepared
> by, furnished to, or collected by the Secretary with respect to a return or with
> respect to the determination of the existence, or possible existence, of liability (or
> the amount thereof) of any person under this title for any tax, penalty, interest,
> fine, forfeiture, or other imposition, or offense[.]

Id. § 6103(b)(2)(A); see also id. § 6103(b)(2)(B)-(D).  Section 6103 contains numerous

exceptions to the general prohibition against disclosure or inspection of tax returns and tax return

information, including that:

> Returns and return information shall, without written request, be open to
> inspection[15] by or disclosure to officers and employees of the Department of the
> Treasury whose official duties require such inspection or disclosure for tax
> administration purposes.

Id. § 6103(h)(1).  And "[t]he term tax administration"

---

[15] "The terms 'inspected' and 'inspection' mean any examination of a return or return information."  26 U.S.C. §
6103(b)(7).

(A) means—
(i) the administration, management, conduct, direction, and supervision of the execution and application of the internal revenue laws or related statutes (or equivalent laws and statutes of a State) and tax conventions to which the United States is a party, and
(ii) the development and formulation of Federal tax policy relating to existing or proposed internal revenue laws, related statutes, and tax conventions, and
(B) includes assessment, collection, enforcement, litigation, publication, and statistical gathering functions under such laws, statutes, or conventions.

Id. § 6103 (b)(4).  In short, Section 6103 addresses "improper disclosure of tax return information."  Mann v. United States, 204 F.3d 1012, 1020 (10th Cir. 2000); see also Venen v. United States, 38 F.3d 100, 105 (3d Cir. 1994) ("The history of [S]ection 6103 indicates that Congress enacted the provision to regulate a discrete sphere of IRS activity—information handling.").

Section 6103 does not provide a means for the plaintiff to avoid dismissal of count four of its complaint.  As just noted, Section 6103 concerns the disclosure or inspection, i.e., the "handling," of tax return information.  Venen, 38 F.3d at 105.  To the extent the plaintiff takes issue with the defendants' inspection of its tax return information, those allegations are insufficiently pleaded in its amended complaint.  See Iqbal, 556 U.S. at 679 (conclusory allegations "are not entitled to the assumption of truth").  The insufficiency of the plaintiff's allegations is highlighted by the plaintiff's admission that "[t]he number of unauthorized inspections of [the plaintiff]'s return information and the identity of those who made the inspections cannot be completely and accurately ascertained at this time . . . ."[16]  Am. Compl. ¶ 182.

_____

[16]  As the Court will explain, any alleged inspections of the plaintiff's tax return information by the defendants cannot support a claim for a violation of 26 U.S.C. § 6103, as the predicate for these allegedly unauthorized inspections is the defendants' requests for information that were allegedly "wholly unnecessary" to its application to obtain tax-exempt status.  Opp'n to Defs.' Mot. at 35.

The plaintiff's real bone of contention is that the defendants allegedly demanded "information [that] was not necessary for determining [the plaintiff]'s [tax-]exempt status," and then inspected it.  Opp'n to Defs.' Mot. at 31-32.  Although the plaintiff is upset about the defendants' inspection of its tax return information, it is actually the defendants' alleged unconstitutional conduct in <u>acquiring</u> that information that forms the basis of count four of the complaint.  But, unfortunately for the plaintiff, Section 6103 is silent as to how tax return information can be acquired.  Even assuming that the defendants improperly <u>acquired</u> the plaintiff's tax return information, that does not compel a finding that such information was improperly <u>inspected</u>.  In the Court's view, there is a clear dichotomy between the means by which tax return information is acquired and the disclosure or inspection of that information thereafter.  The plaintiff, however, attempts to have the Court disregard this dichotomy,[17] which conflicts with cases which have found that the propriety of certain conduct separate and apart from the actual handling of tax return information is irrelevant and cannot be the predicate of a Section 6103 violation.  <u>Cf.</u> <u>Mann</u>, 204 F.3d at 1020 ("Sections 6103 and 7431 address improper disclosure of tax return information and not improper collection activity.  We therefore agree with the district court that the validity of the means by which the return information was disclosed is irrelevant to whether the disclosure of the information violated § 6103.  We further agree with the district court and the <u>majority of courts</u> which have considered the issue that there is nothing in § 6103 which requires that the underlying means of disclosure be valid before [a disclosure exception] applies." (emphasis added)); <u>Wilkerson v. United States</u>, 67 F.3d 112, 117 (5th Cir. 1995) (holding that disclosures of tax return information "were not wrongful"

---

[17]  Again, the plaintiff attempts to amend its complaint through its opposition brief by contending that its "[S]ection 7431 claim is premised on the improper handling of its information."  Opp'n to Defs.' Mot. at 32 n.9.  The plaintiff identifies nothing in its amended complaint that supports this position.  Nor could it, as this is contrary to the allegations in its complaint.  <u>See</u> Am. Compl. ¶¶ 174-80.

notwithstanding "improper levying procedures"); Venen, 38 F.3d at 106 ("Section 6103 and its

attendant damages provision, [S]ection 7431, were meant to regulate only one sphere of

activity—information handling—and were not intended to interfere with collection actions.

Thus, the propriety of the underlying collection action, in this instance the validity of the levy, is

irrelevant to whether disclosure is authorized under [S]ection 6103 and the basis for liability

under [S]ection 7431." (internal citations, quotations, and ellipses omitted)); Huff v. United

States, 10 F.3d 1440, 1447 (9th Cir. 1993) (finding no liability under Section 6103 "despite the

possible procedural lapses involving the actual levy").

     Further supporting the Court's maintenance of the dichotomy between the IRS's

acquisition of tax return information for assessing tax-exempt status and the IRS's inspection of

that information thereafter,[18] is the availability of judicial review and a separate and distinct

remedy for an applicant aggrieved during the tax-exempt application process. Cf. Wilkerson, 67

F.3d at 116 ("Congress enacted separate and distinct provisions concerning collection activities

and information handling."); Venen, 38 F.3d at 105 ("In a claim such as the present one based on

an improper levy, the concern is not improper information handling but rather improper

collection activity. Collection activity is a separate sphere of IRS activity governed by a separate

body of law."). Under 26 U.S.C. § 7428, an applicant requesting tax-exempt status under 26

U.S.C. § 501(c)(3) may seek a declaratory judgment that it indeed qualifies for tax-exempt status

if either the application has been denied by the IRS or the IRS has failed to act on the application

---

[18] The plaintiff asserts that the defendants have violated 26 U.S.C. § 6103 because the defendants did not "per se" inspect the plaintiff's tax return information for "tax administration purposes." Opp'n to Defs.' Mot. at 33; see also id. at 37; Am. Compl. ¶¶ 177-78. At first blush, this argument has appeal. The plaintiff appears to argue that the request and inspection of information allegedly unnecessary to determine an applicant's tax-exempt status is not the result of "tax administration." See Opp'n to Defs.' Mot. at 39-42. However, there does not appear to be a genuine dispute that "tax administration" encompasses the review of return information submitted in conjunction with a tax-exempt application. Again, the basis for the plaintiff's alleged violation of 26 U.S.C. § 6103 is not the inspection of tax return information; rather, it is the defendants' request for allegedly unnecessary information during the tax-exempt application process.

in 270 days.  26 U.S.C. §§ 7428(a)-(b).  If the application is denied, the applicant may file suit

within ninety days of the mailing of the rejection letter.  Id. § 7428(b)(3).  Alternatively, if the

IRS fails to act on the application within 270 days, the applicant is "deemed to have exhausted its

administrative remedies," provided that it, "in a timely manner, [took] all reasonable steps to

secure . . . [a] determination" of its tax-exempt status.  Id. § 7428(b)(2).  In either case, the

applicant may file suit in the United States Tax Court, the United States Court of Federal Claims,

or the United States District Court for the District of Columbia.  Id. §§ 7428(a), (b)(2).  In light

of the remedies made available under 26 U.S.C. § 7428 for controversies arising out of the tax-

exempt application process,[19] which would encompass plaintiff's allegations against the

defendants, cf. Church By Mail, 1988 WL 8271, at *3 (holding that "plaintiff clearly has an

adequate remedy under 26 U.S.C. [§] 7428" for constitutional violations during the tax-exempt

application process), it must remain separate and distinct from the remedies available under 26

U.S.C. § 7431 for unauthorized inspections of tax return information that occur after the

application process has either stalled or concluded.  Accordingly, count four of the complaint

fails to state a claim for relief and will be dismissed with prejudice pursuant to Fed. R. Civ. P.

12(b)(6).[20]

---

[19]  Other avenues of relief may be better candidates than 26 U.S.C. § 7431.  For example, the plaintiff acknowledges
that the defendants' conduct could potentially be governed by 26 U.S.C. § 7605(b), which generally ensures that
"[n]o taxpayer shall be subjected to unnecessary examination or investigations . . . ."  Opp'n to Defs.' Mot. at 37
n.14.  And in NorCal, the Court identified 26 U.S.C. § 7433 as potentially providing adequate relief to aggrieved
applicants for tax-exempt status, as it "creates a damages remedy for the wrongful collection of federal tax."  2014
WL 3547369, at *6.  The Court declines to weigh in, however, on the merits of any potential argument under these
statutory provisions.

[20]  In light of the Court's interpretation of the authority cited in this Memorandum Opinion, the Court must
respectfully disagree with that portion of the NorCal opinion, which permitted the plaintiffs to take discovery "to
establish with evidence that IRS officials inspected or disclosed the [plaintiffs'] return information for improper
purposes," 2014 WL 3547369, at *13, even though the plaintiffs' complaint there apparently muddied the
dichotomy identified by the Court in this opinion, and thus did not sufficiently plead allegations concerning a
violation of 26 U.S.C. § 6103.  See 2014 WL 3547369, at *13 (citing "PageID 1046" of the plaintiffs' complaint);
Second Amended Class Action Complaint ¶ 247, NorCal, No.1:13-cv-341 (S.D. Ohio Jan. 23, 2014), ECF No. 71

(continued . . .)

## IV. CONCLUSION

For the foregoing reasons, the Court grants the defendants' motions to dismiss as to all five counts of the plaintiff's complaint and denies the plaintiff's motion to stay agency action.[21]

**SO ORDERED** this 23rd day of October, 2014.

REGGIE B. WALTON
United States District Judge

---

(. . . continued)
("Defendants inspected [p]laintiffs' information and shared it amongst themselves even though they knew it was unnecessary for making a decision on [p]laintiffs' tax-exempt status, and even though they knew it had been sought based on [p]laintiffs' political viewpoint.  Accordingly, the inspection, review, and disclosure was objectively unnecessary, and subjectively not undertaken, 'for tax administration purposes' under 26 U.S.C. § [6103(h)].").  Here, the Court will not allow the plaintiff to take discovery where it has not sufficiently pleaded a violation of 26 U.S.C. § 6103.  See Am. Compl. ¶ 182 (asserting the need for discovery only because the "number of unauthorized inspections" and "the identity of those who made the inspections cannot be completely and accurately ascertained at this time.").

Further, because the Order accompanying this opinion closes this case, the plaintiff's motion for a stay of agency action is moot.

[21]  An Order consistent with this Memorandum Opinion will be issued contemporaneously.

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Underlying Decision from which Appeal Arises with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on January 20, 2015. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: January 20, 2015                    ____/s/ John C. Eastman_____
                                           John C. Eastman
                                           jeastman@chapman.edu
                                           *Counsel for Plaintiff*