IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| TRUE THE VOTE, INC., | ) |
| | ) |
| Plaintiff-Appellant | ) |
| | ) |
| v. | ) No. 14-5316 |
| | ) |
| INTERNAL REVENUE SERVICE, et al., | ) |
| | ) |
| Defendants-Appellees | ) |

**OPPOSITION TO PLAINTIFF-APPELLANT'S MOTION FOR
PARTIAL REVERSAL AND REMAND, FILED BY APPELLEES
THE UNITED STATES OF AMERICA AND
THE INTERNAL REVENUE SERVICE**

On May 8, 2015, this Court, on its own motion, ordered that the instant appeal be held in abeyance pending further order of the Court and directed the parties to file motions to govern future proceedings in the case within 30 days after the Court's resolution of *Z Street v. Koskinen*, No. 15-5010. In response to that order, Plaintiff-Appellant True the Vote filed a motion for partial reversal and remand, contending that "*Z Street* requires that the district court accept as true the allegations in True the Vote's complaint," and that a remand is warranted because (according to True the Vote) "the district court did not accept [the complaint's] allegation [regarding unconstitutional delay

12919974.1

in the IRS's tax-exempt-application process] as true." (True the Vote Motion at 1.) That contention is incorrect, and True the Vote's motion should be denied.

## ARGUMENT

### A. *Z Street* does not address the issues raised by this appeal or justify True the Vote's belated attempt to seek summary reversal

The District Court adhered to the correct standard of review for motions to dismiss under Rule 12(b)(1), applying the exact same standard of review that this Court applied in *Z Street v. Koskinen*, No. 15-5010, 2015 WL 3797974 (D.C. Cir. June 19, 2015). In *Z Street*, this Court stated — quoting *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) — that "at the motion to dismiss stage a court must 'assume the truth of all material factual allegations in the complaint.'" 2015 WL 3797974, at *2. The District Court applied the same standard, in reliance on the same authority, stating that a "court considering a Rule 12(b)(1) motion must 'assume the truth of all material factual allegations in the complaint.'" *True the Vote, Inc. v. Internal Revenue Service et al.*, No. 13-734, 2014 WL 5395036, at *4 (D.D.C. Oct. 23, 2014) (quoting *Am. Nat'l Ins. Co.*, 642 F.3d at 1139). Tellingly, True the Vote did not move for summary reversal on the basis

12919974.1

of *Am. Nat'l Ins. Co.* (or any other authority that predated the filing of its appeal) during the 45-day period after its appeal was docketed. *See D.C. Circuit Handbook of Practice & Internal Procedures* 35 (2015) ("Motions for summary affirmance or summary reversal must be filed within 45 days of the date the case is docketed."). Nor did True the Vote list failure to comply with the correct standard of review for motions to dismiss as one of the four discrete issues raised on appeal. *See* Joint Submission on Briefing Format at 1-2 (filed April 27, 2015).

True the Vote provides no explanation for its belated attempt to seek summary reversal. *Z Street* did not change this Court's law regarding the standard of review for Rule 12(b)(1) motions. Nor did *Z Street* address the specific complaint about the District Court's decision raised by True the Vote in its motion. In this regard, True the Vote contends that the "District Court contravened *Z Street* through the improper and selective use of judicial notice to resolve disputed facts" in its mootness determination. (True the Vote Motion at 9 (capitalization altered).) That contention lacks merit because *Z Street* addresses neither the mootness doctrine nor the proper scope of judicial notice. In *Z Street*, unlike in the instant case, there was no argument or

12919974.1

determination that the taxpayer's tax-exempt application had been granted or that the IRS had adopted new procedures and implemented corrective measures. Indeed, in *Z Street*, the Government asserted that no such policy exists. Thus, *Z Street* sheds no light on the correctness of the District Court's mootness determination, including the court's use of judicial notice.

The only new issue addressed by this Court in *Z Street* is whether the Anti-Injunction Act precludes a suit to enjoin an allegedly unconstitutional delay in processing a tax-exempt application. *See Z Street*, 2015 WL 3797974, at *5-7. True the Vote has not — and cannot — seek summary reversal on the basis of *Z Street*'s Anti-Injunction Act ruling because the District Court did not dismiss True the Vote's complaint on that basis, as we explained in our motion addressing the *Z Street* decision (filed on July 20, 2015).

### B. True the Vote has failed to demonstrate that summary reversal — a rarely granted measure — is merited here

In any event, "[s]ummary reversal is rarely granted and is appropriate only where the merits are 'so clear, plenary briefing, oral argument, and the traditional collegiality of the decisional process

would not affect [the Court's] decision.'" *D.C. Circuit Handbook of Practice & Internal Procedures* 36 (2015) (quoting *Sills v. Federal Bureau of Prisons*, 761 F.2d 792, 793-794 (D.C. Cir. 1985)). True the Vote's arguments regarding the District Court's mootness determination fall far short of demonstrating that summary reversal is merited here.

"The mootness doctrine, deriving from Article III, limits federal courts to deciding 'actual, ongoing controversies.'" *Clarke v. United States*, 915 F.2d 699, 700-701 (D.C. Cir. 1990) (*en banc*) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)). "Even where litigation poses a live controversy when filed, the doctrine requires a federal court to refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Id.* at 701 (citation omitted). *See, e.g.*, *County of L.A. v. Davis*, 440 U.S. 625, 631-632 (1979) (holding that a case was "moot" where the government agency had abandoned the challenged practices and adopted "new procedures"); *Schmidt v. United States*, 749 F.3d 1064, 1068 (D.C. Cir. 2014)

12919974.1

(observing that a challenge to an administrative board's failure to make a decision was "moot" after the board made the decision).

The District Court properly determined that True the Vote's claims regarding the allegedly unconstitutional delay in the IRS's tax-exempt-application process are moot because the IRS has acted on True the Vote's tax-exempt application and has abandoned, and taken steps to remedy, that complained-of process. But, at a minimum, True the Vote has failed to demonstrate that its challenge to the District Court's mootness determination merits summary reversal.

### 1. It is undisputed that True the Vote's tax-exempt application has been granted

True the Vote's unconstitutional-delay claims are moot, first and foremost, because the IRS has acted on — and granted — True the Vote's application. *True the Vote*, 2014 WL 5395036, at *5. True the Vote is no longer experiencing delay because its application is no longer pending with the IRS. That fact is undisputed; True the Vote provided the District Court a copy of the IRS's determination letter granting its application, and the District Court properly took judicial notice of it. *Id.* at *3 n.4. *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be

accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). Indeed, in its motion seeking summary reversal, True the Vote ignores — but does not challenge — the District Court's taking judicial notice of the IRS's granting of True the Vote's application.

The District Court's mootness determination based on the IRS's granting of True the Vote's tax-exempt application does not "resolve disputed facts," as True the Vote contends (True the Vote Motion at 9 (capitalization altered)). In reviewing the Government's motion to dismiss, the District Court assumed — as True the Vote alleged in its complaint — that the IRS had engaged in unconstitutional delay, but determined that the "allegedly unconstitutional governmental conduct, which delayed the processing of the plaintiff's tax-exempt application and brought about this litigation, is no longer impacting the plaintiff," because the IRS had granted True the Vote's tax-exempt application. *True the Vote*, 2014 WL 5395036, at *5. The requirement that a court accept a complaint's allegations as true does not preclude a court's determination that the allegations — assumed to be true — are moot. As the District Court correctly observed, "in determining whether it has

jurisdiction, the Court 'may consider materials outside of the pleadings.'" *Id.* at *4 (quoting *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)).

True the Vote's unconstitutional-delay allegations — even if true — are moot because its application is no longer pending with the IRS. This "critical" and undisputed fact "renders *Z St., Inc. v. Koskinen* [ ] inapplicable to the court's analysis," as the District Court explained, and True the Vote ignores. *True the Vote*, 2014 WL 5395036, at *5 n.5 (citation omitted). In *Z Street*, the Court emphasized that the taxpayer there sought only "to obtain relief from unconstitutional delay, *the effects of which it is now suffering*." 2015 WL 3797974, at *7 (emphasis added).[1] True the Vote, in sharp contrast, needs no such relief. Assuming that True the Vote had experienced unconstitutional delay

---

[1] In its motion (at 8-9), True the Vote relies on excerpts from the May 4, 2015 oral argument in *Z Street*. That reliance is misplaced because the Court addressed a situation where the taxpayer — unlike True the Vote — had a tax-exempt application pending with the IRS. Indeed, during that argument, one member of the panel observed that if the IRS had acted on Z Street's application while the case was pending in court, it may have "moot[ed] the case." No. 15-5010, Transcript of Oral Argument, at 19.

while its tax-exempt application was pending with the IRS, it is no longer suffering from any such delay.[2]

### 2. It is undisputed that the IRS has announced that it has changed its tax-exempt-application process and taken corrective actions

Further demonstrating that True the Vote's unconstitutional-delay claims are moot is the fact that the IRS has changed its tax-exempt-application procedures. In this regard, the District Court recognized that, prior to granting True the Vote's application, the IRS "publicly" suspended its allegedly unconstitutional "targeting scheme,"[3] and took "remedial steps to address the alleged [unconstitutional] conduct." *True the Vote*, 2014 WL 5395036, at *6 & n.7. That jurisdictional fact is supported by the two reports cited in True the Vote's complaint (Doc. 14 at 23, 34-35) and discussed in the District

---

[2] The District Court further determined that any possible "future harm" to True the Vote had not been "properly pleaded" and that, even if it had, True the Vote lacked "standing to challenge future applications of the [alleged targeting-scheme] policy." *True the Vote*, 2014 WL 5395036, at *6 n.11. True the Vote has not challenged that determination in its motion for summary reversal.

[3] The District Court determined that the IRS had suspended the allegedly unconstitutional "targeting scheme," not merely the use of a "BOLO [*i.e.*, be-on-the-lookout] list," as True the Vote suggests (Motion at 10 n.3).

Court's opinion:  (i) the report of the Treasury Inspector General for Tax Administration, *Inappropriate Criteria Were Used to Identify Tax-Exempt Applications for Review*, No. 2013-10-053 (May 14, 2013), and (ii) the report of the then-Principal Deputy Commissioner, Daniel Werfel, *Charting a Path Forward at the IRS:  Initial Assessment & Plan of Action* (June 24, 2013).

By way of brief background, in 2012, certain members of Congress asked the Treasury Inspector General for Tax Administration to investigate the IRS's processing of tax-exempt applications with potential significant political campaign intervention.[4]  (Doc. 14-6 at 3, 10.)  After conducting an audit, the Treasury Inspector General issued a report that concluded that the IRS had "used inappropriate criteria" to

---

[4]  The Internal Revenue Code requires the IRS to identify potential political campaign cases in the tax-exempt-application process to ensure that the applicants satisfy the requirements for tax exemption.  To qualify for tax-exemption under § 501(c)(3) of the Internal Revenue Code, the applicant must demonstrate that it does not participate in, or intervene in, either directly or indirectly, any political campaign on behalf of, or in opposition to, any candidate for public office.  I.R.C. § 501(c)(3); Treas. Reg. § 1.501(c)(3)-1(c)(3).  To qualify for tax-exemption under § 501(c)(4) of the Internal Revenue Code, the applicant must demonstrate that its participation in any such political activity is limited and does not constitute the primary activity of the organization.  I.R.C. § 501(c)(4); Treas. Reg. § 1.501(c)(4)-1.

identify "potential political cases" that needed further review by selecting tax-exempt applications that had "'political-sounding' names," such as organizations with "Tea Party," "Patriots," or "9/12" in the name. (*Id.* at 12-13 (a copy of the Treasury Inspector General report is attached to True the Vote's complaint (Doc. 14-6)).) Although the audit did not uncover political bias (*id.* at 15), and found that "ineffective management oversight" delayed the processing of potential political cases (*id.* at 19), the Treasury Inspector General nevertheless concluded that this name-based criteria "gives the appearance that the IRS is not impartial in conducting its mission," and that the IRS should instead "focus on the activities of the organizations and whether they fulfill the requirements of the law" (*id.* at 13-14). The Treasury Inspector General made several recommendations regarding how the IRS could remedy the problem and improve the tax-exempt-application process. His report recognized that the IRS had begun to implement "corrective actions."[5] (*Id.* at 4.)

---

[5] The Treasury Inspector General recently has supplemented his initial report, and has concluded that the "IRS has taken significant actions to eliminate the selection of potential political cases based on names and policy positions, expedite processing" of tax-exempt

(continued...)

12919974.1

In response to the Treasury Inspector General's report, the IRS's Principal Deputy Commissioner published a report (the *Charting a Path Forward* report) publicly documenting the "comprehensive corrective actions" taken to "address the problems with IRS review of tax exempt applications." *Charting a Path Forward* at 4 (this report is cited in True the Vote's complaint (Doc. 14 at 34-35) and is available on the IRS's website at www.irs.gov). The Principal Deputy Commissioner acknowledged that the IRS Exempt Organizations unit "applied inappropriate screening criteria to applicants for tax exempt status, creating BOLO [*i.e.*, be-on-the-lookout] listings that resulted in the improper targeting of a number of applicants for additional scrutiny," and stated that the IRS "accepted all nine recommendations [set out in the Treasury Inspector General report] in full, [was] making effective progress in implementing them," and had taken several additional

---

(…continued)

applications, and "eliminate unnecessary information requests." Treasury Inspector General for Tax Administration, *Status of Actions Taken to Improve the Processing of Tax-Exempt Applications Involving Political Campaign Intervention*, No. 2015-10-025 at "Highlights" page (March 27, 2015) (available at www.treasury.gov/tigta). That supplemental report, which this Court can take judicial notice of, further supports the District Court's mootness determination.

corrective actions, including "[s]uspend[ing] the use of BOLO lists in the application process for tax exempt status" and initiating "an end-to-end overhaul" of the tax-exempt-application process.[6] *Id.* at 9, 14.

The Treasury Inspector General and Principal Deputy Commissioner reports support the District Court's mootness determination because they evidence that the tax-exempt-application process that created the allegedly unconstitutional delay has been replaced. Ignoring the fact that the Treasury Inspector General report (both the original and its supplement) supports the District Court's mootness determination, True the Vote challenges the District Court's reliance on the Principal Deputy Commissioner's *Charting a Path Forward* report. (True the Vote Motion at 10-11.) That challenge lacks merit.

First, the District Court properly considered the *Charting a Path Forward* report because it was incorporated by reference in True the Vote's complaint (Doc. 14 at 34-35) and thus is not an "extra-record report" (True the Vote Motion at 10). *Cf. Abhe & Svoboda, Inc. v. Chao*,

---

[6] Monthly updates to the Principal Deputy Commissioner's initial report are published and available at www.irs.gov/uac/Newsroom/IRS-Charts-a-Path-Forward-with-Immediate-Actions.

508 F.3d 1052, 1059 (D.C. Cir. 2007) (holding that courts are permitted to consider in a Rule 12(b)(6) motion "'the facts alleged in the complaint, documents attached thereto or *incorporated therein*, and matters of which it may take judicial notice'") (citations omitted) (emphasis added).

Second, the District Court properly considered the report — publicly available on the IRS's website — because it was a matter of which a court may take judicial notice. *See Cannon v. D.C.*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (taking judicial notice of the "contents" of a document available on a government "website"); *Cellco Partnership v. FCC*, 357 F.3d 88, 96 (D.C. Cir. 2004) (taking judicial notice of agency's report); *Redfern v. Napolitano*, 727 F.3d 77, 83 (1st Cir. 2013) (taking judicial notice of agency's manifested intent to discontinue challenged practice). Although True the Vote refers to the report as "self-serving agency materials" (True the Vote Motion at 10), it is undisputed that the then-head of the IRS publicly declared — in a report published on the IRS's website — that the agency had changed its procedures for reviewing tax-exempt applications and was in the process of implementing the changes recommended by the Treasury Inspector General. The District Court properly accepted this publicly announced

policy change by a co-equal branch of government at face value. *See Clarke*, 915 F.2d at 705 (observing that "it would seem inappropriate for the courts either to impute such manipulative conduct to a coordinate branch of government, or to apply against that branch a doctrine that appears to rest on the likelihood of a manipulative purpose"); *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009) ("[G]overnment actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties. Without evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing.").

Finally, even if the report is not appropriate for judicial notice, it nevertheless evidences the overhaul in the IRS's exempt-organization procedures and thus supports the District Court's mootness determination. *See Citizens for Responsibility & Ethics in Washington v. SEC*, 858 F. Supp. 2d 51, 62-63 (D.D.C. 2012) (holding that the "Court need not take judicial notice of the contents of the Office of Inspector General report to determine that Defendants have abandoned the prior policy" about which the plaintiff complained and dismissing

the case as moot, despite the fact that the plaintiff "adamantly disputes Defendants' claims that the challenged policy has been abandoned"). The report has been posted on the IRS's website for over two years and has provided guidance for the IRS's on-going reform of its tax-exempt-approval process. There is no evidence that the IRS is "manipulating the judicial process by voluntarily ceasing the complained of activity, and then seeking a dismissal of the case, thus securing freedom to 'return to [its] old ways.'" *Clarke*, 915 F.2d at 705 (citation omitted).

In sum, True the Vote's motion does not satisfy the demanding standard for summary reversal, which "is rarely granted and is appropriate only where the merits are 'so clear, plenary briefing, oral argument, and the traditional collegiality of the decisional process would not affect [the Court's] decision.'" *D.C. Circuit Handbook of Practice & Internal Procedures* 36 (2015) (citation omitted). True the Vote's contention that the Court should summarily reverse and remand the District Court's mootness determination as contravening *Z Street* lacks merit because the Court did not address the mootness doctrine in its *Z Street* decision. Whether the District Court erred in its mootness determination is — at a minimum — not so clear as to justify summary

reversal, as we briefly illustrated above. Rather, that question should be fully briefed, just like the other issues raised by the appeal. True the Vote's motion for summary reversal should be denied, and the appeal should proceed to full briefing and argument.

## CONCLUSION

The Government respectfully requests that the Court deny True the Vote's motion for partial reversal and remand, and order the parties in this case to proceed with briefing.

                          Respectfully submitted,

                          /s/ Judith A. Hagley
                          JUDITH A. HAGLEY    (202) 514-8126
                            *Attorney for the United States & the IRS*
                            *Tax Division*
                            *Department of Justice*
                            *Post Office Box 502*
                            *Washington, D.C. 20044*
                            Judith.a.hagley@usdoj.gov
                            Appellate.Taxcivil@usdoj.gov

*Of Counsel:*

VINCENT H. COHEN, JR.
  *Acting United States Attorney*

July 30, 2015

12919974.1

# CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2015, I electronically filed the foregoing Opposition to Plaintiff-Appellant's motion for partial reversal and remand, filed by Appellees the United States of America and the Internal Revenue Service, with the Clerk of the Court for the United States Court of Appeals for the District of Columbia by using the CM/ECF system.  Counsel for the appellant and the individual appellees are registered CM/ECF users and are being served by the CM/ECF system.

/s/ Judith A. Hagley<br>JUDITH A. HAGLEY<br>*Attorney for Appellees United States & IRS*

12919974.1