ORAL ARGUMENT SCHEDULED FOR APRIL 14, 2016

# No. 14-5316

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

TRUE THE VOTE, INC.,

Plaintiff-Appellant

v.

INTERNAL REVENUE SERVICE, *et al.*,

Defendants-Appellees

———————————

ON APPEAL FROM THE ORDER OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
(No. 1:13-cv-00734-RBW – Judge Reggie B. Walton)

———————————

BRIEF FOR THE APPELLEES UNITED STATES OF AMERICA
AND INTERNAL REVENUE SERVICE

———————————

CAROLINE D. CIRAOLO
 *Acting Assistant Attorney General*

DIANA L. ERBSEN
 *Deputy Assistant Attorney General*

GILBERT S. ROTHENBERG    (202) 514-3361
TERESA E. MCLAUGHLIN     (202) 514-4342
JUDITH A. HAGLEY         (202) 514-8126
 *Attorneys, Tax Division*
 *Department of Justice*
 *Post Office Box 502*
*Of Counsel:*          *Washington, D.C. 20044*
                      *Judith.a.hagley@usdoj.gov*

CHANNING D. PHILLIPS
 *United States Attorney*

13576463.1

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**A.    Parties and Amici.**  The parties to the above-captioned appeal are plaintiff-appellant True the Vote, Inc. (plaintiff), the defendants-appellees the United States of America, the Internal Revenue Service (IRS), John A. Koskinen (in his official capacity as Commissioner of Internal Revenue), and several known and unknown IRS officials in both their official and individual capacities.  The known IRS officials are Steven T. Miller, Douglas H. Shulman, William Wilkins, Lois Lerner, Holly Paz, Cindy M. Thomas, Steven Grodnitzky, David Fish, Michael C. Seto, Susan Maloney, Ronald Bell, Janine L. Estes, and Faye Ng.  In the District Court, Commissioner Koskinen was substituted for his predecessor in office, Acting (later, Principal Deputy) Commissioner Daniel Werfel, pursuant to Fed. R. Civ. P. 26(d)(1).  Because they are sued in their official capacities only, plaintiff's claims against Koskinen and Werfel are actually claims against the United States.

No amici or intervenors appeared before the District Court, nor have any amici or intervenors appeared in this Court.

13576463.1

-ii-

**B.    Rulings Under Review.**  The rulings under review are the District Court order and memorandum opinion by Judge Reggie B. Walton entered on October 23, 2014, and published at 71 F. Supp. 3d 219.

**C.    Related Cases.**  This case was not previously before this Court or any other appellate court.  Counsel are aware of the following related cases, as provided in Cir. R. 28(a)(1)(C):  *Linchpins of Liberty et al. v. United States et al.*, No. 15-5013 (D.C. Cir); *NorCal Tea Party Patriots v. IRS, et al.*, No. 1:13-cv-00341 (S.D. Ohio), *petition for writ of mandamus docketed sub nom. In re: United States*, 6th Cir. No. 15-3793 (July 22, 2015); and *Freedom Path Inc. v. Lerner et al.*, No. 3:14-cv-01537–D (N.D. Tex.).

-iii-

# TABLE OF CONTENTS

**Page**

Certificate as to parties, rulings, and related cases .................................i

Table of contents ....................................................................... iii

Table of authorities ................................................................... v

Glossary ................................................................................ x

Jurisdictional statement .............................................................. 1

Statement of the issues ............................................................... 1

Statement of the case ................................................................. 2

    A.   Procedural overview ............................................... 2

    B.   Background ........................................................ 4

    C.   The 2013 TIGTA Report ............................................ 5

    D.   The *Path-Forward* Report ......................................... 7

    E.   The proceedings in the District Court ............................. 8

Summary of argument ................................................................. 10

Argument .............................................................................. 11

I.   The District Court correctly determined that it lacked
jurisdiction over plaintiff's claims for equitable relief
regarding the IRS determination process because those
claims are moot............................................................... 11

    Standard of review ............................................... 11

    A.   Introduction ..................................................... 12

    B.   Plaintiff's claims are moot because the IRS has granted
plaintiff's exemption and overhauled the determination
process........................................................... 13

**Page**

C.   Plaintiff's challenges to the District Court's mootness
     determination cannot withstand scrutiny ............................... 17

D.   Plaintiff's speculation about potential future injury is
     beyond the scope of its amended complaint and is
     otherwise nonactionable for lack of standing ......................... 21

E.   No continuing controversy is presented by the IRS's
     possession of documents alleged to have been
     unnecessary for considering plaintiff's application ............... 26

II.   The District Court correctly dismissed plaintiff's § 7431
      count for failure to state a claim ..................................... 28

A.   Introduction ............................................................. 28

B.   The inspections at issue, which were made in the context
     of tax administration and at plaintiff's request, are not
     actionable under § 7431 .............................................. 29

C.   Sections 6103 and 7431 do not regulate the acquisition
     of information by the IRS .......................................... 33

D.   Plaintiff's arguments lack merit .............................. 37

Conclusion ......................................................................... 40
Certificate of compliance ..................................................... 41
Certificate of service .......................................................... 42
Statutory addendum .......................................................... 43

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Allen v. Wright,*
  468 U.S. 737 (1984) ..............................................................23
*Bivens v. Six Unknown Named Agents of the*
  *Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ...........................2
*Brown v. Secretary of the Army,*
  78 F.3d 645 (D.C. Cir. 1996) ...........................................34
*Cannon v. D.C.,*
  717 F.3d 200 (D.C. Cir. 2013) .........................................18
*Cellco Partnership v. FCC,*
  357 F.3d 88 (D.C. Cir. 2004) ...........................................18
*Chamber of Commerce v. Dep't of Energy,*
  627 F.2d 289 (D.C. Cir. 1980) .........................................17
*Chamber of Commerce v. EPA,*
  642 F.3d 192 (D.C. Cir. 2011) .........................................23
*Chandler v. United States,*
  687 F. Supp. 1515 (D. Utah 1988), *aff'd,*
  887 F.2d 1397 (10th Cir. 1989) ......................................36
*Church of Scientology v. United States,*
  506 U.S. 9 (1992) ......................................................27
\* *Citizens for Responsibility & Ethics v. SEC,*
  858 F. Supp. 2d 51 (D.D.C. 2012) ..................................13
*Clapper v. Amnesty Int'l USA,*
  133 S. Ct. 1138 (2013) .............................................23, 24
*Clark v. Library of Congress,*
  750 F.2d 89 (D.C. Cir. 1984) .........................................25
\* *Clarke v. United States,*
  915 F.2d 699 (D.C. Cir. 1990) ..................................12, 15, 19, 22, 26
\* *Community for Creative Non-Violence v. Hess,*
  745 F.2d 697 (D.C. Cir. 1984) .......................................17

\* Authorities on which we chiefly rely are marked with asterisks.

13576463.1

# Cases (cont'd):                                                 Page(s)

* *County of L.A. v. Davis*,
    440 U.S. 625 (1979) ...................................................... 12, 13, 16
*Del Monte Fresh Produce Co. v. United States*,
    570 F.3d 316 (D.C. Cir. 2009) ........................................ 22
*Entergy Servs., Inc. v. FERC*,
    391 F.3d 1240 (D.C. Cir. 2004) ...................................... 24
*Exploratory Research, Inc. v. Commissioner*,
    T.C. Memo. 2008-89, 2008 WL 941710 (2008) ............... 27
*Gardner v. United States*,
    213 F.3d 735 (D.C. Cir. 2000) ........................................ 33
*Genesis HealthCare Corp. v. Symczyk*,
    133 S. Ct. 1523 (2013) ................................................... 12
*Hudson Valley Black Press v. IRS*,
    409 F.3d 106 (2d Cir. 2005) ........................................... 27
*Huff v. United States*,
    10 F.3d 1440 (9th Cir. 1993) .................................... 35, 36
*Jerome Stevens Pharm., Inc. v. FDA*,
    402 F.3d 1249 (D.C. Cir. 2005) .................................. 11, 12
*Judicial Watch, Inc. v. Rossotti*,
    317 F.3d 401 (4th Cir. 2003) ........................................... 2
* *Kaempe v. Myers*,
    367 F.3d 958 (D.C. Cir. 2004) ................................... 12, 31
*Lehrfeld v. Richardson*,
    132 F.3d 1463 (D.C. Cir. 1998) ...................................... 28
* *Mann v. United States*,
    204 F.3d 1012 (10th Cir. 2000) .................................. 35, 36
*Munsell v. Dep't of Agriculture*,
    509 F.3d 572 (D.C. Cir. 2007) ................................... 24, 25
* *National Black Police Ass'n v. D.C.*,
    108 F.3d 346 (D.C. Cir. 1997) ................................... 12, 16
*NorCal Tea Party Patriots v. IRS*,
    2014 WL 3547369 (S.D. Ohio 2014) ............................... 38

\* Authorities on which we chiefly rely are marked with asterisks.

13576463.1

**Cases (cont'd):**                                                   **Page(s)**

*Redfern v. Napolitano*,
   727 F.3d 77 (1st Cir. 2013)................................................. 18

*Rorex v. Traynor*,
   771 F.2d 383 (8th Cir. 1985) ......................................... 36

\* *Schmidt v. United States*,
   749 F.3d 1064 (D.C. Cir. 2014) ...................................... 14

*Schroeder v. United States*,
   2013 WL 3832445 (D. Nev. 2013), *aff'd*,
   608 Fed. Appx. 545 (9th Cir. 2015)................................. 39

*Sossamon v. Lone Star State of Texas*,
   560 F.3d 316 (5th Cir. 2009) .......................................... 19

*Tax Analysts v. IRS*,
   117 F.3d 607 (D.C. Cir. 1997) ...................................... 33

\* *Venen v. United States*,
   38 F.3d 100 (3d Cir. 1994) ...................................... 35, 36

*Wilkerson v. United States*,
   67 F.3d 112 (5th Cir. 1995) .......................................... 35

*Worth v. Jackson*, 451 F.3d 854 (D.C. Cir. 2006)................................ 24

**Constitution and Statutes:**

U.S. Const. art. III ...................................................... 12, 23

Internal Revenue Code (26 U.S.C.):

   § 501(c) ....................................................................... 30
   § 501(c)(3)..................................... 1, 2, 3, 4, 6, 8, 29
   § 501(c)(4)..................................... 4, 6, 8, 29
  \* § 6103........................ 9, 10, 11, 28, 29, 30, 33, 35, 36, 39
   § 6103(a) ..................................................................... 28
   § 6103(b)(4)(A)(i)........................................ 28, 29, 31
  \* § 6103(h)(1)........................................ 28, 29, 30, 31, 37
   § 6103(k) ................................................................. 35

\* Authorities on which we chiefly rely are marked with asterisks.

**Constitution and Statutes (cont'd):**                                    **Page(s)**

Internal Revenue Code (26 U.S.C.)(cont'd):

    § 6104 ...................................................................................26
    § 7428(a) ..............................................................................27
\*   § 7431................ 1, 2, 9, 10, 11, 28, 29, 31, 33, 34, 35, 36, 37, 38, 39
\*   § 7431(b)(2).................................................................31, 32
    § 7802(a) .............................................................................16
    § 7803(c) .............................................................................16
    § 7803(d) ............................................................................16

Tax Equity and Fiscal Responsibility Act of 1982,
  Pub. L. No. 97-248, § 357, 96 Stat. 324 ........................................34

Taxpayer Browsing Protection Act, Pub. L. No. 105-35,
  § 3, 111 Stat. 1104........................................................................34

**Rules and Regulations:**

Fed. R. Evid. 201(b)(2).....................................................................15
Fed. R. Evid. 201(d) ........................................................................15
Fed. R. Civ. P. 12(b)(6) ...................................................................39

Treasury Regulations (26 C.F.R.):

    § 1.501(c)(3)-1(c)(3)(iii) ....................................................4
    § 1.501(c)(4)-1(a)(1) .........................................................4
    § 1.501(c)(4)-1(a)(2) .........................................................4
    § 1.501(c)(4)-1(a)(2)(ii)......................................................4

\*  Authorities on which we chiefly rely are marked with asterisks.

**Miscellaneous:**                                                    **Page(s)**

H.R. Rep. No. 105-51 (1997) .............................................................. 34

Internal Revenue Manual § 7.20 ...................................................... 19

Parnell, *Congressional Interference in Agency Enforcement:*
  *The IRS Experience*, 89 Yale L. J. 1360 (1980) ............................ 16

Sen. Hearings No. 105-260 (1997) ...................................................... 34

\*   TIGTA, *Inappropriate Criteria Were Used to Identify*
     *Tax-Exempt Applications for Review*, No. 2013-10-053
     (May 2013) ................................ 2, 3, 5, 6, 7, 14, 16, 18, 22, 30, 31, 39

\*   TIGTA, *Status of Actions Taken to Improve the Processing of*
     *Tax-Exempt Applications Involving Political Campaign*
     *Intervention*, No. 2015-10-025
     (March 2015) ................................................ 3, 14, 15, 16, 17, 18, 19

U.S. Government Accountability Office, *IRS Examination*
  *Selection:  Internal Controls for Exempt Organization*
  *Selection Should Be Strengthened*,
  GAO-15-514 (2015) ................................................................ 19, 20

\*   Daniel Werfel, *Charting a Path Forward at the IRS:*
     *Initial Assessment & Plan of Action*
     (June 2013) ...................................... 7, 8, 14, 16, 18, 19, 21

\*  Authorities on which we chiefly rely are marked with asterisks.

-x-

# GLOSSARY

| | |
|---|---|
| BOLO | Be On the Lookout |
| Br. | opening brief filed by appellant-plaintiff |
| Doc. | District Court docket entries |
| GAO | U.S. Government Accountability Office |
| I.R.M. | Internal Revenue Manual |
| IRS | Internal Revenue Service |
| JA | Joint Appendix |
| TIGTA | Treasury Inspector General for Tax Administration |

# JURISDICTIONAL STATEMENT

Plaintiff's description of the District Court's jurisdiction omits the court's determination that it lacked jurisdiction over plaintiff's claims for equitable relief because they were moot, as discussed below (pp. 9-28). Plaintiff's description of this Court's jurisdiction is correct.

## STATEMENT OF THE ISSUES

1. Whether, after the IRS granted plaintiff's application for exemption under § 501(c)(3)[1] and changed its procedures for processing such applications, the District Court correctly dismissed as moot plaintiff's claims for equitable relief regarding the processing of its application.

2. Whether the District Court correctly dismissed, for failure to state a claim, plaintiff's claim for damages under § 7431 for unauthorized inspection of taxpayer-return information submitted by plaintiff in support of its application, where no allegation was made that the information was viewed by unauthorized IRS personnel.

---

[1] All "§" references are to the Internal Revenue Code (26 U.S.C.), as in effect during the time in question. Pertinent provisions are set forth in the Addendum.

-2-

# STATEMENT OF THE CASE

## A.    Procedural overview

Plaintiff brought this suit after experiencing delay in the

processing of its application for recognition of a tax exemption as a

charitable or educational organization under § 501(c)(3).  It sought a

declaration under § 7428 regarding its qualification for exemption,

equitable relief against action taken by the IRS in processing its

application, damages against the Government for unauthorized

inspection of taxpayer-return information under § 7431, and damages

against the individual IRS defendants (who are separately represented)

under *Bivens v. Six Unknown Named Agents of the Federal Bureau of

Narcotics*, 403 U.S. 388 (1971).  (JA17-64.)

Shortly after the suit was filed, and in response to an in-depth

audit by the Treasury Inspector General for Tax Administration

(TIGTA), "the independent internal monitor of IRS activities," *Judicial

Watch, Inc. v. Rossotti*, 317 F.3d 401, 403 (4th Cir. 2003), the IRS

overhauled its procedures for processing applications for exemption.

*See* TIGTA, *Inappropriate Criteria Were Used to Identify Tax-Exempt

Applications for Review*, No. 2013-10-053 (May 2013) (attached to

-3-

plaintiff's amended complaint (JA131-184)) (2013 TIGTA Report).  As

the TIGTA recently confirmed, the IRS abandoned the complained-of

procedures and adopted corrective measures to ensure they are not

repeated.  TIGTA, *Status of Actions Taken to Improve the Processing of*

*Tax-Exempt Applications Involving Political Campaign Intervention*,

No. 2015-10-025 (March 2015) (available at www.treasury.gov/tigta)

(2015 TIGTA Report).

In addition, a few months after plaintiff filed its complaint, the

IRS issued it a determination letter, granting its application for tax-

exempt status under § 501(c)(3), retroactive to the date of its formation.

(JA207; Doc. 65-1.)  Plaintiff does not dispute that this determination

mooted its claim for a declaratory judgment regarding its exempt

status.  (JA206.)

The Government and the individual defendants moved to dismiss

the complaint.  The District Court granted the motions to dismiss,

ruling that all claims for injunctive and declaratory relief are moot and

that plaintiff failed to state any claims for damages.  Plaintiff now

appeals.

-4-

## B.    Background

To qualify for an exemption from taxation as an organization described in § 501(c)(3), an organization must demonstrate (among other things) that it "does not participate in . . . any political campaign on behalf of (or in opposition to) any candidate for public office." § 501(c)(3); Treas. Reg. § 1.501(c)(3)-1(c)(3)(iii).  To qualify for exemption as a "social welfare" organization under § 501(c)(4), an organization must be devoted exclusively to the promotion of social welfare, Treas. Reg. § 1.501(c)(4)-1(a)(1), meaning that it is "primarily" engaged in promoting the common good or general welfare, Treas. Reg. § 1.501(c)(4)-1(a)(2).  Because campaigning does not promote social welfare, Treas. Reg. § 1.501(c)(4)-(1)(a)(2)(ii), such activity must not be the organization's primary focus.  These inquiries are fact-intensive.  Therefore, applications for exemption that raise concerns about political campaigning frequently "require significant follow-up with the organizations" by the IRS to enforce these limitations.  (JA147-148.)

From 2008 to 2012, the IRS's Exempt Organizations Division observed a significant increase in the number of applications for exemption under §§ 501(c)(3) and 501(c)(4) from organizations that

13576463.1

appeared to be engaged in political campaigns.  (JA158, 179.)  The
Division also received numerous referrals from Congress, the public,
and watchdog groups alleging that certain tax-exempt organizations
were engaged in impermissible or excessive political-campaign activity.
(JA179.)  In response, the Division added such activity to its Be-On-the-
Lookout ("BOLO") listing.  (JA142.)

### C.    The 2013 TIGTA Report

In 2012, certain members of Congress asked the TIGTA to
investigate the IRS's handling of applications for exemption in cases
involving political-campaign activity.  (JA132, 139.)  From June 2012
through February 2013, the TIGTA audited the IRS process for
considering applications for exemption.  (JA139-140.)

In its 2013 TIGTA Report, issued in May 2013, the TIGTA
concluded that the IRS had "used inappropriate criteria" to identify
"potential political cases" for further review by selecting tax-exempt
applications that had "'political-sounding' names" or policies, such as
organizations with "Tea Party, Patriots, or 9/12" in their name.  (JA141-
142.)  The TIGTA did not uncover political bias.  (JA144.)  But it found
that "ineffective management oversight" delayed the processing of

political-campaign cases (JA148), with the result that this name-and-policy-based criteria "gives the appearance that the IRS is not impartial in conducting its mission" (JA142).  It recommended that the IRS should instead "focus on the activities of the organizations and whether they fulfill the requirements of the law."  (JA143.)

The TIGTA also concluded that, in many political-campaign cases, additional information had been requested that was "later" determined to be "unnecessary."  (JA154.)  It found that seven unnecessary questions had been asked of applicants "because of a lack of managerial review" and because the relevant employees "lacked knowledge of what activities are allowed by" §§ 501(c)(3) and 501(c)(4).  (JA154.)

The TIGTA made nine recommendations for rectifying the problems with the IRS determination process.  (JA146-157.)  The 2013 Report acknowledged that the IRS had begun to implement those "corrective actions" and was changing its procedures for considering applications.  (JA133.)  In particular, the TIGTA found that the IRS had (i) reformed its BOLO listing by removing the inappropriate name-and-policy-based selection criteria (JA143, 177), (ii) agreed to seven of the TIGTA's recommendations and proposed alternatives for the remaining

two (JA132), (iii) "stopped issuance of additional information request letters" (JA155, 175), and (iv) adopted the recommended training program for those requests (JA157).

After the TIGTA audit, and as incorporated in the 2013 TIGTA Report, IRS management acknowledged that "selection based on organization name was not appropriate" and that "mistakes" made in the determination process had led to "delays" and "information requests that were overbroad." (JA180.) Accordingly, the IRS abandoned the procedures that had been the subject of the TIGTA Report's criticism and developed a "new approval process." (JA180.)

### D.    The *Path-Forward* Report

In response to the TIGTA Report, new leadership was installed at the IRS in late May 2013 to evaluate and implement "comprehensive corrective actions" to "address the problems with IRS review of tax exempt applications." Daniel Werfel, *Charting a Path Forward at the IRS: Initial Assessment & Plan of Action* 4 (June 2013) (*Path-Forward* Report) (available on the IRS's website (www.irs.gov), together with monthly updates regarding the current status of the TIGTA's nine

-8-

recommended actions).[2]  Werfel, the new head of the agency, published

the *Path-Forward* Report to advise the public of the IRS's "end-to-end

overhaul" of its process for considering applications for exemption.  *Id*.

at 14.  Werfel confirmed that the IRS had "accepted all nine [TIGTA]

recommendations in full" and was implementing several additional

corrective actions, including suspending BOLO lists altogether and

adopting a new "self-certify[ing]" procedure for obtaining an exemption

under § 501(c)(4).  *Id*.  According to the Report's monthly updates, all

TIGTA recommendations had been completed by January 31, 2014.  *See*

www.irs.gov/uac/Newsroom/IRS-Charts-a-Path-Forward-with-

Immediate-Actions.

### E.    The proceedings in the District Court

Plaintiff filed its application for exemption under § 501(c)(3) in

2010.  (JA200.)  While the application was pending, it brought this suit,

alleging that the IRS had "targeted" its application for "unwarranted

delay and heightened review" because of its "perceived association with

'Tea Party' organizations," in violation of its First Amendment rights.

---

[2]  The District Court took judicial notice of the *Path-Forward*
Report (cited in plaintiff's amended complaint (JA50-51)) and its
monthly updates.  (JA208 n.7.)

13576463.1

(JA22.)  Its application was granted during the pendency of this suit.

(JA207.)  As relevant to this appeal against the Government, plaintiff

sought declaratory and injunctive relief for alleged violations of the

First Amendment and the Administrative Procedure Act during the

IRS's consideration of its application for exemption (Counts II and V,

respectively) (JA52-54, 59-62) and damages under § 7431 for

unauthorized inspections of plaintiff's taxpayer-return information

under § 6103 (Count IV) (JA55-58).

The Government moved to dismiss for lack of jurisdiction or

failure to state a claim.  (Doc. 54, 59, and 78.)  Plaintiff opposed the

motion.  (Doc. 65.)

The District Court granted the Government's motion to dismiss.

It concluded that Counts II and V were moot.  Noting that plaintiff's

application for exemption had been granted, the court concluded that

the "allegedly unconstitutional governmental conduct, which delayed

the processing of the plaintiff's tax-exempt application and brought

about this litigation, is no longer impacting the plaintiff."  (JA207.)  The

court rejected plaintiff's hypothetical argument regarding a possible

future audit, ruling (i) that the "prospect of future harm" was

"speculative" and "different than the one identified in the complaint" (JA210), and (ii) that plaintiff lacked "standing to challenge future applications of the [allegedly discriminatory] policy" (JA211 n.11).

The District Court further held that plaintiff failed to state an unlawful inspection claim under § 7431 respecting plaintiff's confidential taxpayer-return information.  (JA217-220.)  As the court explained, this claim was based on the IRS's "alleged unconstitutional conduct in *acquiring*" information from plaintiff that was unnecessary for processing its application, and "Section 6103 is silent as to how tax return information can be acquired."  (JA218.)

## SUMMARY OF ARGUMENT

1.  The District Court correctly dismissed plaintiff's claims for equitable relief because those claims are now moot.  Plaintiff's exemption has been granted, and the TIGTA, a source embraced in plaintiff's complaint, has confirmed that the IRS's determination procedures have been overhauled.  Plaintiff has failed to identify any ongoing, concrete injury caused by the IRS.  Consequently, no live controversy is still presented regarding alleged violations of plaintiff's

rights under the First Amendment and the Administrative Procedure Act.

2. The District Court also correctly dismissed plaintiff's claim for unauthorized inspection of its return information. Sections 6103 and 7431 are designed to protect the confidentiality of taxpayer-return information. They do not, however, bar the IRS employees responsible for reviewing plaintiff's exemption application from inspecting the very information that plaintiff submitted in support of its application. Plaintiff's claim is predicated on its allegation that the IRS requested unnecessary information when reviewing its application. But §§ 6103 and 7431 do not regulate the IRS's acquisition of information. They merely restrict access to the taxpayer's files once obtained.

## ARGUMENT

### I

**The District Court correctly determined that it lacked jurisdiction over plaintiff's claims for equitable relief regarding the IRS determination process because those claims are moot**

### Standard of review

The Court reviews the dismissal of the complaint *de novo*. *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1250 (D.C. Cir. 2005). In

-12-

evaluating a motion to dismiss, courts must "accept[ ] the complaint's factual allegations as true," unless they "contradict exhibits to the complaint or matters subject to judicial notice." *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004). In determining whether it has jurisdiction, courts "may consider materials outside the pleadings." *Jerome Stevens*, 402 F.3d at 1253.

### A.    Introduction

"The mootness doctrine, deriving from Article III, limits federal courts to deciding 'actual, ongoing controversies.'" *Clarke v. United States*, 915 F.2d 699, 700-701 (D.C. Cir. 1990) (*en banc*) (citation omitted). If an "intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,'" the action "must be dismissed as moot." *Genesis HealthCare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013) (citation omitted). The intervening circumstance may be the fact that the defendant has ceased or changed the challenged activity. *See County of L.A. v. Davis*, 440 U.S. 625, 631-632 (1979) (dismissing as moot challenge to allegedly discriminatory hiring procedures after the government adopted "new procedures"); *National*

*Black Police Ass'n v. D.C.*, 108 F.3d 346, 349-350 (D.C. Cir. 1997)

(dismissing as moot challenge to a law after it was amended).

A case is not moot due to "'voluntary cessation of allegedly illegal conduct'" unless (i) "'events have completely and irrevocably eradicated the effects of the alleged violation'" and (ii) "'there is no reasonable expectation'" that "'the alleged violation will recur.'" *County of L.A.*, 440 U.S. at 631-632 (citation omitted). Although demonstrating those criteria is a "heavy" burden, courts have "consistently recognized that where the defendant is a government actor — and not a private litigant — there is less concern about the recurrence of objectionable behavior." *Citizens for Responsibility & Ethics v. SEC*, 858 F. Supp. 2d 51, 61-62 (D.D.C. 2012) (collecting cases).

### B. Plaintiff's claims are moot because the IRS has granted plaintiff's exemption and overhauled the determination process

The District Court properly applied these mootness principles to plaintiff's complaint. Plaintiff's claims regarding the IRS's process for reviewing applications for exemption are moot, first and foremost, because the IRS has acted on — and granted — plaintiff's application. (JA207.) Plaintiff is no longer impacted by that process because it is no

-14-

longer subject to that process.  *See Schmidt v. United States*, 749 F.3d 1064, 1068 (D.C. Cir. 2014) (dismissing as moot a challenge to the Government's failure to make a decision once it made the decision).

Further demonstrating that plaintiff's claims regarding the application-review process are moot is the fact that the IRS has abandoned the complained-of procedures and adopted corrective measures.  That change is evidenced by the 2013 TIGTA Report and the *Path-Forward* Report, both of which were cited in plaintiff's amended complaint (JA39, 50-51) and describe the IRS's "comprehensive corrective actions."  *See*, above, Statement of the Case, §§ C-D. According to the monthly updates to the *Path-Forward* Report, all nine TIGTA recommendations to correct the complained-of procedures were completed by January 2014, months before the District Court's mootness determination.  *See* www.irs.gov/uac/Newsroom/IRS-Charts-a-Path-Forward-with-Immediate-Actions.

Those comprehensive corrective actions have been confirmed recently by the TIGTA, which in 2015 supplemented its 2013 Report after further audit.  2015 TIGTA Report, above.  In the 2015 Report, the TIGTA concluded that the "IRS has taken significant actions to

eliminate the selection of potential political cases based on names and policy positions, expedite [tax-exempt-application] processing," and "eliminate unnecessary information requests." *Id.* at "Highlights" page. This supplementary report — from a source endorsed by plaintiff in its complaint — is susceptible of judicial notice and, therefore, properly supports the District Court's mootness determination. Under Fed. R. Evid. 201(b)(2), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Notably, judicial notice may be taken "at any stage of the proceeding," including on appeal. Fed. R. Evid. 201(d).

The District Court correctly concluded that the IRS's comprehensive corrective actions satisfied both voluntary-cessation criteria. (JA208-211.) Plaintiff's application has been granted, the complained-of procedures in the IRS's application-review process have been abandoned, and there is no reasonable expectation that the IRS will "return to [its] old ways." *Clarke*, 915 F.2d at 705. The IRS's response to the changes recommended by the TIGTA was positive and accepting, giving "'no indication that it desired to return to the original

regulatory scheme.'" *National Black Police Ass'n*, 108 F.3d at 349

(citation omitted).  Moreover, it is highly unlikely that the IRS could

"return to its old ways," given that it is subject to scrutiny by numerous

entities within the legislative and executive branches.  *See* § 7802(a)

(IRS Oversight Board); § 7803(c) (Taxpayer Advocate); § 7803(d)

(TIGTA); Parnell, *Congressional Interference in Agency Enforcement:*

*The IRS Experience*, 89 Yale L. J. 1360, 1365-1368 (1980) (describing

Congressional subcommittees that oversee the IRS).  It is implausible

that the IRS, after publicly and forcefully disavowing challenged

aspects of its review process, would resurrect such purged practices

after obtaining dismissal here.

       In short, the TIGTA Reports (both original and supplemental) and

the *Path-Forward* Report support the District Court's mootness

determination.  They demonstrate that the aspects of the application-

review process that gave rise to allegedly unconstitutional treatment

have been jettisoned.  As in *County of L.A.*, the changes the IRS has

already made to its application-review process moot plaintiff's

allegations complaining of the process.  The IRS has already done —

under the watchful eye of both Executive and Congressional oversight

— what plaintiff wants the Court to order the IRS to do, in contravention of mootness principles.

Finally, even if the case were "not technically moot," courts have the discretion to dismiss a suit seeking equitable relief where — as here — the underlying challenged conduct has been "modified" "significantly since suit was brought." *Community for Creative Non-Violence v. Hess*, 745 F.2d 697, 700-701 (D.C. Cir. 1984); *see Chamber of Commerce v. Dep't of Energy*, 627 F.2d 289, 291-292 (D.C. Cir. 1980) (exercising discretion to withhold equitable relief where "allegedly unlawful departmental practice" was "under review and may never recur"). The reports cited by plaintiff and the District Court establish that — at a minimum — the challenged process has undergone significant modifications that are sufficient to warrant withholding judicial intervention at this time. *See also* 2015 TIGTA Report 5.

## C.    Plaintiff's challenges to the District Court's mootness determination cannot withstand scrutiny

Plaintiff contends (Br. 16) that the District Court's mootness determination is flawed for "three reasons." None has merit.

1. Plaintiff contends (Br. 16) that the court's finding of mootness is "unreliable because the evidentiary foundation for [it] is the IRS

itself," citing the court's reliance on the *Path-Forward* Report and its monthly updates (JA208 n.7). That contention, however, ignores that both TIGTA reports support the court's mootness determination. Therefore, even if the *Path-Forward* Report were not considered, the reports published by the TIGTA — an independent source embraced by plaintiff — properly demonstrate that the IRS has remedied the alleged misconduct.

Moreover, the District Court properly considered the *Path-Forward* Report and its monthly updates — publicly available on the IRS's website — because they are matters of which a court may take judicial notice. *See Cannon v. D.C.*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (taking judicial notice of "contents" of document available on government "website"); *Cellco Partnership v. FCC*, 357 F.3d 88, 96 (D.C. Cir. 2004) (taking judicial notice of agency report); *Redfern v. Napolitano*, 727 F.3d 77, 83 n. 4 (1st Cir. 2013) (taking judicial notice of proposed-rulemaking notice manifesting agency's intent to discontinue challenged practice).

Although plaintiff questions the veracity of the *Path-Forward* Report (Br. 16), it is undisputed that the then-head of the IRS publicly

declared that the agency had changed its procedures and was

implementing the TIGTA's recommended reforms. Moreover, these

reforms have now been incorporated in the Internal Revenue Manual.

*See* I.R.M. 7.20. The court properly accepted at face value this formally

announced policy change by a co-equal branch of government. Indeed,

"it would seem inappropriate for the courts" to "impute such

manipulative conduct to a coordinate branch of government." *Clarke*,

915 F.2d at 705. As the Fifth Circuit has explained:

> [G]overnment actors in their sovereign capacity and in the
> exercise of their official duties are accorded a presumption of
> good faith because they are public servants, not self-
> interested private parties. Without evidence to the contrary,
> we assume that formally announced changes to official
> governmental policy are not mere litigation posturing.

*Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009).

Moreover, the veracity of the *Path-Forward* Report has been confirmed

by the TIGTA, an independent source endorsed in plaintiff's complaint.

*See* 2015 TIGTA Report 5 (finding that the IRS's "current procedures

address our original concern").

 2. Plaintiff also contends (Br. 17) that a recent report released by

the U.S. Government Accountability Office (GAO) refutes the District

Court's mootness determination. This contention lacks merit. The

report by no means refutes the undisputed fact that the IRS has

changed its application-review procedures.  It does not even address

those procedures.  Rather, as its title indicates, and the GAO expressly

acknowledges, the report "does not cover [IRS's] process for

organizations applying for tax exempt status; it only covers

examination selection of existing exempt organizations."  *IRS*

*Examination Selection:  Internal Controls for Exempt Organization*

*Selection Should Be Strengthened*, GAO-15-514 at 2 n.3 (2015).  In any

event, the report does not demonstrate existing "viewpoint

discrimination," as plaintiff contends.  (Br. 17.)  Rather, the report

concludes that some IRS internal controls "serve as tools to help [the

IRS] meet [its] mission of applying the tax law with integrity and

fairness," whereas "other controls were deficient," increasing "the risk"

that it "could" select organizations for examination "in an unfair

manner."  *Id.* at 28.  Moreover, the report states that the IRS plans to

"implement the [report's] recommendations" for improvement.  *Id.* at

52-54.

    3.  Finally, plaintiff contends (Br. 17-18) that the District Court

"erroneously equated the *alleged* suspension of the BOLO list with the

*actual* suspension of the *entire* Targeting Scheme." We disagree. The court recognized that the alleged "targeting scheme" was broader than a "BOLO list," and included "substantial delays" and "unnecessary information requests." (JA202.) Moreover, the "remedial steps" cited by the court (JA208 n.7) go well beyond eliminating the BOLO list: they include adopting all nine TIGTA recommendations. *See* www.irs.gov/uac/Newsroom/IRS-Charts-a-Path-Forward-with-Immediate-Actions. The court thus accepted the plaintiff's factual allegations as "true" (Br. 19), but determined — based on reports that included some cited in plaintiff's own complaint — that plaintiff was no longer affected by the alleged targeting scheme because it had been discontinued.

### D.    Plaintiff's speculation about potential future injury is beyond the scope of its amended complaint and is otherwise nonactionable for lack of standing

Plaintiff contends (Br. 20) that a "live controversy remains" based on the "ability of the IRS to subject [it] to future disparate treatment through heightened surveillance, punishment of its donors, potential audits, and even the threat of future revocation." The District Court correctly rejected plaintiff's "speculative" future-harm argument, both

because it was "different" than the harm "identified in the complaint" and because plaintiff lacked "standing" to make the argument. (JA210-211 & nn.10-11.)

1.  Plaintiff's future-harm argument is beyond the scope of the complaint. The "wrong at issue for mootness purposes is defined by the plaintiff's theory set forth in the complaint," *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 323 (D.C. Cir. 2009), not a new theory set forth in a brief after the complaint's theory has become moot. As this Court has explained, "where plaintiffs are resisting a mootness claim we think they must be estopped to assert a broader notion of their injury than the one on which they originally sought relief." *Clarke*, 915 F.2d at 703.

Plaintiff should be estopped from asserting an injury beyond its own experience in the application-review process. Plaintiff's complaint focused exclusively on the IRS's "processing of its Application."[3] (JA23, 27, 30-46, 50-54, 60-63.) As the complaint asserts in its opening

---

[3] The TIGTA Report that the complaint relies on similarly focuses exclusively on the IRS's processing of "Tax-Exempt Applications." (JA38, 41, 131-184.)

paragraph, "[t]his action arises out of the IRS Defendants' wrongful acts and omissions *concerning the application* of [plaintiff] to the IRS for recognition as a tax-exempt educational and charitable organization." (JA21 (emphasis added).)  Indeed, plaintiff rests its demand for damages on the allegation that the IRS "delayed the processing of [its] application."  (JA62-63.)

2.  As the District Court correctly determined (JA211 n.11), but plaintiff ignores (Br. 14-24), even if plaintiff had properly pleaded its future-harm argument (which it did not), it still would lack standing to pursue it.  Standing, like mootness, derives directly from the "cases" or "controversies" requirement of Article III of the Constitution, and requires the plaintiff to "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  *Allen v. Wright*, 468 U.S. 737, 750-752 (1984).  The injury must be "'concrete,'" "'particularized,'" and "'actual or imminent, not conjectural or hypothetical.'"  *Chamber of Commerce v. EPA*, 642 F.3d 192, 200 (D.C. Cir. 2011) (citation omitted).  The Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible*

future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (citation omitted) (denying standing based on future-harm allegations).  Notably, in *Worth v. Jackson*, 451 F.3d 854, 860 (D.C. Cir. 2006), a plaintiff lacked standing to assert a reverse-discrimination claim based on a likely future injury where he "challenge[d] no statute, regulation, or written policy committing [the agency] to favoring minorities or women, resting his claim instead on speculation, untethered to any written directive, about how [the agency] is likely to make future employment decisions."  Similarly, in *Entergy Servs., Inc. v. FERC*, 391 F.3d 1240, 1246 (D.C. Cir. 2004), the plaintiffs lacked standing to challenge an agency policy "until they are confronted with it in a matter before the [agency]."  Until that time, the plaintiff suffered no "actual injury in fact."  *Id.*

So, too here, as in *Clapper*, *Worth*, and *Entergy*, there is no certainly impending threat to plaintiff.  The fact that the IRS has "the ability" to "subject [plaintiff] to future disparate treatment" (Br. 20) does not mean that any such injury is certainly impending.  As in *Munsell v. Dep't of Agriculture*, 509 F.3d 572, 581 (D.C. Cir. 2007), "even if [plaintiff] could establish that agency officials violated his First

-25-

Amendment rights by retaliating against him in the past," he failed to "demonstrate[ ] a real and immediate threat that [he] would be subject to the same conduct in the future."  Plaintiff here, likewise, has "no standing to seek declaratory and injunctive relief" against agency officials who merely had the ability "to retaliate against [it] in the future."  *Id.*

Plaintiff misplaces its reliance (Br. 19-20) on *Clark v. Library of Congress*, 750 F.2d 89 (D.C. Cir. 1984).  There, the Court acknowledged that a prior allegedly unconstitutional investigation may have injured the plaintiff.  *Id.* at 93.  It nevertheless held that a request for an "injunction against further investigations" was "premature" because the "potential injury is too speculative."  *Id.* at 94 n.5.  Plaintiff's future-injury claim here is likewise too dependent upon speculation, and an injunction should "'not issue to prevent injuries neither extant nor presently threatened, but merely feared.'"  *Id.* (citation omitted).  Regardless of any merit in now-moot claims regarding flaws alleged in the IRS's application-review process, plaintiff lacks standing to litigate any claim regarding hypothetical future discriminatory audits and other feared injuries.

13576463.1

-26-

**E.    No continuing controversy is presented by the IRS's possession of documents alleged to have been unnecessary for considering plaintiff's application**

Plaintiff contends (Br. 20-24) that the IRS's possession of documents alleged to be unnecessary for processing its tax-exempt application "constitutes an ongoing injury." That contention is incorrect.

First, this alleged harm was not pleaded in the complaint. Consequently, the District Court correctly concluded (JA210 n.9) that it cannot be relied on to stave off mootness. *See Clarke*, 915 F.2d at 703. Although the complaint alleges that the IRS had requested unnecessary information and that doing so delayed the processing of plaintiff's application (JA50), it does not allege that plaintiff was injured by the IRS's possession of that information. Nor could it. The IRS expressly advised plaintiff that, if the application were approved, the IRS "will be required by law to make" the "information that you submit in response to this letter available for public inspection." (JA115, 126.) Plaintiff still submitted the information to the IRS to support its application, knowing that if it were granted, the information would be subject to public inspection pursuant to § 6104. *See*, below, Addendum.

Second, plaintiff's argument is predicated on its inaccurate claim that it was "forced to comply" (Br. 21) with the information requests. To the contrary, "[u]nder the comprehensive scheme provided by Congress, a taxpayer may resist an improper request for information by the IRS by refusing to produce the information or records." *Hudson Valley Black Press v. IRS*, 409 F.3d 106, 111 (2d Cir. 2005). If plaintiff believed that public disclosure of any requested information could cause it injury, it could have refused to disclose the information. If such a refusal had caused the IRS to deny its application, plaintiff could then have challenged that denial, and the underlying information request, in a declaratory-judgment action under § 7428(a). *See Exploratory Research, Inc. v. Commissioner*, T.C. Memo. 2008-89, 2008 WL 941710 (2008) (considering whether an organization had described its activities in sufficient detail to exhaust its administrative remedies).

Plaintiff's reliance (Br. 21-22) on *Church of Scientology v. United States*, 506 U.S. 9 (1992), is misplaced. The taxpayer there was "forced" to provide privileged information to the IRS because (unlike the situation here) a court had ordered it to comply with a summons.

Plaintiff, for its part, made no attempt to protect the requested information, but submitted it to the IRS.

## II

### The District Court correctly dismissed plaintiff's § 7431 count for failure to state a claim

#### A.    Introduction

Section § 7431 allows suits for damages against the Government for the unauthorized inspection or disclosure of taxpayer-return information in violation of § 6103.  Section 6103(a) establishes the general rule that "return information shall be confidential."  "[R]eturn information" includes documents that the IRS "receives or creates during the initial investigation of an organization seeking tax-exempt status."  *Lehrfeld v. Richardson*, 132 F.3d 1463, 1467 (D.C. Cir. 1998).

Certain inspections of return information, however, are authorized by § 6103.  Section 6103(h)(1) provides that "return information shall, without written request, be open to inspection by" Treasury Department employees "whose official duties require such inspection or disclosure for tax administration purposes."  Under § 6103(b)(4)(A)(i), "tax administration" broadly covers all aspects of tax enforcement, including "the administration, management, conduct,

-29-

direction, and supervision of the execution and application of the internal revenue laws," which obviously extends to the processing of applications for exemption under §§ 501(c)(3) and 501(c)(4). Section 6103(h)(1) therefore authorizes IRS employees responsible for evaluating an organization's application for exemption to inspect that organization's return information.

Plaintiff's complaint alleges that the IRS violated § 6103, and was therefore liable for damages under § 7431, because the IRS defendants "inspected" information submitted by plaintiff in support of its application for exemption that allegedly was unconstitutionally requested and "unnecessary to its determination of [plaintiff's] tax-exempt status." (JA56-58.) As demonstrated below, the District Court correctly dismissed that claim.

## B. The inspections at issue, which were made in the context of tax administration and at plaintiff's request, are not actionable under § 7431

1. The District Court correctly dismissed plaintiff's claim for damages under § 7431 because the inspections at issue were authorized by § 6103(h)(1). The complaint's allegations describe conduct that fits squarely within the statute's exception for tax-administration activity.

In this regard, the complaint states that the information requests about

which plaintiff complains were made by IRS employees "who oversaw

the processing of [plaintiff's] application" (JA32, 34-35), and that the

information was "inspected" by "the IRS agents to whom the

information was addressed" (JA58).

Similarly, the TIGTA Report attached to the complaint also

describes conduct that fits squarely within § 6103(h)(1).  The Report

describes how the "unnecessary information requests" about which

plaintiff complains (JA38) were made by the IRS component

"responsible for reviewing applications" for tax-exempt status in the

context of "processing applications."  (JA137, 151, 154-156.)  Although

the Report found that unnecessary requests had been made "because of

a lack of managerial review" and a lack of knowledge regarding the

requirements of § 501(c), there is no suggestion whatsoever that the

information implicated § 6103 or was used for anything other than

"processing applications."  (*Id*.)  Plaintiff's assertion (Br. 21) that the

"IRS admitted, and TIGTA confirmed," that the requests were

propounded "solely" because of plaintiff's "viewpoints" is not supported

by its citation (JA37-38) and conflicts with the TIGTA Report (JA154, 180).  *See Kaempe*, 367 F.3d at 963.

The District Court correctly rejected the complaint's legal conclusion that an inspection of "unnecessary" information does not qualify as an inspection for "'for tax administration purposes'" within the meaning of § 6103(h)(1).  (JA57.)  As we explained above (pp. 28-29), "tax administration" includes the processing of applications for exemption.  Once plaintiff submitted the information to the IRS to support its application, IRS employees responsible for processing that application were authorized to inspect the information.  Without an allegation that information was inspected by personnel other than those assigned to review plaintiff's application, no claim lies under § 7431.

2.  Even if the complained-of inspections were not authorized by § 6103(h)(1), plaintiff's § 7431 claim nevertheless fails as a matter of law because it is barred by § 7431(b)(2).  Section 7431(b)(2) provides that "[n]o liability shall arise" with "respect to any inspection" "which is requested by the taxpayer."  Plaintiff requested the inspections here because it admittedly "furnished" the information to the IRS to support its "consideration" of its then-pending application.  (JA35.)  Plaintiff

may not have invited any allegedly "unconstitutional" conduct (JA58), but it did request the employees to which it sent the information to inspect the information.  To hold otherwise would assume that plaintiff sent information to the IRS with the expectation that *no one* there would examine it.  Such an assumption is unfounded.  The information was "furnished" to the IRS so that the employees reviewing plaintiff's application would inspect the information and approve the application. (JA35.)  The complaint does not allege that it was sent for any other reason.

The complaint asserts that the "inspections were not requested by [plaintiff]" within the meaning of § 7431(b)(2).  (JA58.)  That legal conclusion, however, conflicts with the complaint's factual allegations, including plaintiff's admission that it "furnished" the information to the very employees whose official duties included "processing [plaintiff's] application."  (JA32, 35, 58.)  Having requested those employees to inspect its information, plaintiff is precluded as a matter of law from seeking damages for that inspection.

## C.    Sections 6103 and 7431 do not regulate the acquisition of information by the IRS

The District Court correctly determined that plaintiff's § 7431 claim was predicated on the alleged impropriety of the IRS's information requests, and that § 7431 does not provide damages for such conduct.  (JA218.)  The complaint alleges that the IRS "knowingly requested information from [plaintiff] that was and is unnecessary to its determination of [plaintiff's] tax-exempt status" and that any "inspection" of that information therefore violated §§ 6103 and 7431. (JA56-58.)  By their terms, however, those provisions regulate only the "inspection" or "disclosure" of taxpayer information, and not IRS "request[s]" for taxpayer information (JA56-58).

Sections 6103 and 7431 are not designed to regulate all types of IRS conduct.  Rather, they are designed for a specific purpose:  to "'guarantee[ ] that the sometimes sensitive or otherwise personal information in a return will be guarded from persons not directly engaged in processing or inspecting the return for tax administration purposes.'"  *Gardner v. United States*, 213 F.3d 735, 738 (D.C. Cir. 2000) (citation omitted).  Accordingly, their intended "'purpose'" is "'limiting access to tax filings,'" *Tax Analysts v. IRS*, 117 F.3d 607, 611 (D.C. Cir.

1997) (citation omitted), not precluding information from being obtained by way of tax filings.

Section 7431 is a "waiver" of "sovereign immunity," and, as such, must be "construed narrowly." *Brown v. Secretary of the Army*, 78 F.3d 645, 649-650 (D.C. Cir. 1996). Nothing in the statute's history supports plaintiff's attempt to expand its text to cover the conduct complained of here. As originally enacted, § 7431 provided a damages remedy against the Government only for unauthorized "disclosures." Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, § 357, 96 Stat. 324, 645. In 1997, § 7431 was amended by the Taxpayer Browsing Protection Act, Pub. L. No. 105-35, § 3, 111 Stat. 1104, 1105-1106, to provide a damages remedy for unauthorized "inspections" as well. As the title suggests, the amendment responded to concerns about "[w]idespread indications of browsing" at the IRS, H.R. Rep. No. 105-51, at 3 (1997), of the files of "celebrities, friends, and enemies," Sen. Hearings No. 105-260, at 3 (1997). The legislation was specifically designed to "combat unauthorized access to taxpayer records" by prohibiting IRS employees from "look[ing] at anything other than an official case to which they have been assigned." *Id*. at 14, 66. Thus,

§ 7431, as amended in 1997, is designed to deter employees from improperly inspecting existing tax records.  It has nothing to do with how those records are obtained.

In an analogous context, courts have held that taxpayers cannot predicate a § 7431 unauthorized-disclosure claim on the fact that activities authorized by § 6103 were performed unlawfully.  For example, in *Venen v. United States*, 38 F.3d 100 (3d Cir. 1994), the taxpayer sued for damages under § 7431 for the unauthorized disclosure of taxpayer-return information during a levy.  The court held that the claim failed as a matter of law because § 6103(k) authorized disclosures during collection activity.  The court rejected the taxpayer's argument that the disclosure was not authorized by § 6103 because the "underlying levies were unlawful," holding that the "propriety" of the levy was "irrelevant" to whether the disclosure was authorized.  *Id*. at 104-106.  As the court explained, § 6103 does not "authorize the court to consider whether the collection activity itself is proper."  *Id*. at 106. *Accord Mann v. United States*, 204 F.3d 1012, 1020 (10th Cir. 2000); *Wilkerson v. United States*, 67 F.3d 112, 116 (5th Cir. 1995); *Huff v.*

*United States*, 10 F.3d 1440, 1447 (9th Cir. 1993); *but see Rorex v. Traynor*, 771 F.2d 383, 386 (8th Cir. 1985).[4]

   *Venen* and its progeny establish that plaintiff's § 7431 claim is untenable. Just as "Sections 6103 and 7431 address improper disclosure [and inspection] of tax return information and not improper collection activity," *Mann*, 204 F.3d at 1020, likewise beyond their purview are claims involving improper tax administration, including unnecessary information requests. These statutes are designed to maintain the confidentiality of taxpayer information once it is obtained by the IRS. They simply do not regulate how the IRS obtains information. If a taxpayer provides unnecessary information to the IRS, or the IRS requests and obtains unnecessary information from the taxpayer, the information is treated the same as all other taxpayer-return information for purposes of §§ 6103 and 7431. As relevant here,

---

   [4] Plaintiff's reliance (Br. 37) on *Chandler v. United States*, 687 F. Supp. 1515 (D. Utah 1988), *aff'd*, 887 F.2d 1397 (10th Cir. 1989), is misplaced. The court there did not "address[ ] the argument that the propriety of the levy was irrelevant to the determination of whether the disclosures were authorized." *Mann*, 204 F.3d at 1019 n.10.

it may be inspected by those IRS employees whose official duties include processing the taxpayer's return information.

### D.    Plaintiff's arguments lack merit

Plaintiff contends (Br. 33) that the District Court "misunderstood" its § 7431 claim and "erroneously recast [its] complaint as challenging the IRS's 'acquisition' of [its] application material." That contention lacks merit. The court understood that plaintiff pleaded an "inspection" challenge (JA216), but further understood — correctly — that this inspection challenge was "predicate[d]" on plaintiff's allegations that the information inspected should never have been acquired by the IRS (JA217-218 & n.16). What matters is that there is no allegation in the complaint that anyone other than employees who were authorized to process plaintiff's application inspected the information. To the contrary, the complaint acknowledges that the information in question was "inspected" by "the IRS agents to whom the information was addressed" (JA58), that is, the IRS employees who admittedly "oversaw the processing of [plaintiff's] application for tax-exempt status" (JA32). As explained above, employees involved in the processing of plaintiff's application were authorized under § 6103(h)(1) to inspect *any*

information submitted by plaintiff to support its application, including any information allegedly known to be unnecessary.  The allegations cited by plaintiff (Br. 34) miss the mark, because they address how the information was procured — as being allegedly "unnecessary" and "in furtherance" of an allegedly "unconstitutional Targeting Scheme" — rather than whether the official reviewing it was authorized to review it once obtained.

Nor did the District Court dismiss the § 7431 claim because plaintiff failed to "describe every illegal inspection."  (Br. 40.)  Rather, the court dismissed that claim because the complaint failed to describe "any" illegal inspection (JA217 n.16), but described only inspections that plaintiff had requested and that were performed by employees responsible for processing its return information.

Plaintiff's reliance (Br. 34-35) on *NorCal Tea Party Patriots v. IRS*, 2014 WL 3547369 (S.D. Ohio 2014), is misplaced.  Although the District Court there held (incorrectly in our view) that discovery was required to determine whether the inspections at issue were requested by the applicants for exemption and were conducted for tax-administration purposes, no such discovery is required here.  As

explained above, plaintiff's complaint (including the attached TIGTA Report) acknowledges that the information was furnished to the IRS employees responsible for processing plaintiff's application.  (JA32, 58.) There is no unauthorized inspection — and no liability for that inspection — when IRS employees are conducting the inspections as part of their official duties or at a taxpayer's request.  *See Schroeder v. United States*, 2013 WL 3832445, at *3 (D. Nev. 2013) (dismissing § 7431 claim under Rule 12(b)(6) where, as "alleged in the complaint, the Service's inspection occurred in the context of tax administration"), *aff'd*, 608 Fed. Appx. 545 (9th Cir. 2015).

In sum, the IRS inspected plaintiff's return information at its request and in the context of processing its application for exemption. Consequently, the IRS has not violated § 6103, and it is not liable for damages under § 7431.

# CONCLUSION

The District Court's order dismissing the complaint against the Government should be affirmed.

Respectfully submitted,

CAROLINE D. CIRAOLO
  *Acting Assistant Attorney General*

DIANA L. ERBSEN
  *Deputy Assistant Attorney General*

/s/ Judith A. Hagley

GILBERT S. ROTHENBERG
TERESA E. MCLAUGHLIN
JUDITH A. HAGLEY
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

# CERTIFICATE OF COMPLIANCE

With Type-Volume Limitation, Typeface Requirements, and Type

Style Requirements of Federal Rule of Appellate Procedure 32(a)

Case No.   14-5316

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), as modified by this Court's order dated September 23, 2015, because:

    [X]  this brief contains  6,975  words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [ ]  this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

    [X]  this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Century Schoolbook, *or*

    [ ]  this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

(s)   /s/ Judith A. Hagley

Attorney for  Appellees United States & IRS

Dated:     February 5, 2016

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on February 5, 2016.  Counsel for appellant and for the individual appellees were served electronically by the Notice of Docket Activity transmitted by the CM/ECF system.

 /s/ Judith A. Hagley
JUDITH A. HAGLEY
 *Attorney for the United States & IRS*

# STATUTORY ADDENDUM

| Section of the Internal Revenue Code (26 U.S.C.) | Page |
|---|---|
| § 6103 (excerpts) | 44 |
| § 6104 (excerpts) | 47 |
| § 7431 | 48 |

13576463.1

-44-

## 26 U.S.C. § 6103.  Confidentiality and disclosure of returns and return information

(a) <u>General rule</u>.--Returns and return information shall be confidential, and except as authorized by this title--

(1) no officer or employee of the United States,

(2) no officer or employee of any State, any local law enforcement agency receiving information under subsection (i)(7)(A), any local child support enforcement agency, or any local agency administering a program listed in subsection (l)(7)(D) who has or had access to returns or return information under this section or section 6104(c), and

(3) no other person (or officer or employee thereof) who has or had access to returns or return information under subsection (e)(1)(D)(iii), subsection (k)(10), paragraph (6), (10), (12), (16), (19), (20), or (21) of subsection (l), paragraph (2) or (4)(B) of subsection (m), or subsection (n),

shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section. For purposes of this subsection, the term "officer or employee" includes a former officer or employee.

(b) <u>Definitions</u>.--For purposes of this section--

(1) <u>Return</u>.-- The term "return" means any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed.

(2) <u>Return information</u>.--The term "return information" means--

(A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld,

13576463.1

deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense,

(B) any part of any written determination or any background file document relating to such written determination (as such terms are defined in section 6110(b)) which is not open to public inspection under section 6110,

(C) any advance pricing agreement entered into by a taxpayer and the Secretary and any background information related to such agreement or any application for an advance pricing agreement, and

(D) any agreement under section 7121, and any similar agreement, and any background information related to such an agreement or request for such an agreement,

but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer. Nothing in the preceding sentence, or in any other provision of law, shall be construed to require the disclosure of standards used or to be used for the selection of returns for examination, or data used or to be used for determining such standards, if the Secretary determines that such disclosure will seriously impair assessment, collection, or enforcement under the internal revenue laws.

(3) Taxpayer return information.--The term "taxpayer return information" means return information as defined in paragraph (2) which is filed with, or furnished to, the Secretary by or on behalf of the taxpayer to whom such return information relates.

(4) Tax administration.--The term "tax administration"--

(A) means--

     (i) the administration, management, conduct, direction, and supervision of the execution and application of the internal revenue laws or related statutes (or equivalent laws and statutes of a State) and tax conventions to which the United States is a party, and

     (ii) the development and formulation of Federal tax policy relating to existing or proposed internal revenue laws, related statutes, and tax conventions, and

(B) includes assessment, collection, enforcement, litigation, publication, and statistical gathering functions under such laws, statutes, or conventions.

*   *   *

     (7) <u>Inspection</u>.--The terms "inspected" and "inspection" mean any examination of a return or return information.

     (8) <u>Disclosure</u>.--The term "disclosure" means the making known to any person in any manner whatever a return or return information.

*   *   *

(h) <u>Disclosure to certain Federal officers and employees for purposes of tax administration, etc</u>.--

     (1) <u>Department of the Treasury</u>.--Returns and return information shall, without written request, be open to inspection by or disclosure to officers and employees of the Department of the Treasury whose official duties require such inspection or disclosure for tax administration purposes.

*   *   *

## 26 U.S.C. § 6104.  Publicity of information required from certain exempt organizations and certain trusts

(a) Inspection of applications for tax exemption or notice of status.--

(1) Public inspection.--

(A) Organizations described in section 501 or 527.--If an organization described in section 501(c) or (d) is exempt from taxation under section 501(a) for any taxable year or a political organization is exempt from taxation under section 527 for any taxable year, the application filed by the organization with respect to which the Secretary made his determination that such organization was entitled to exemption under section 501(a) or notice of status filed by the organization under section 527(i), together with any papers submitted in support of such application or notice, and any letter or other document issued by the Internal Revenue Service with respect to such application or notice shall be open to public inspection at the national office of the Internal Revenue Service. In the case of any application or notice filed after the date of the enactment of this subparagraph, a copy of such application or notice and such letter or document shall be open to public inspection at the appropriate field office of the Internal Revenue Service (determined under regulations prescribed by the Secretary). Any inspection under this subparagraph may be made at such times, and in such manner, as the Secretary shall by regulations prescribe. After the application of any organization for exemption from taxation under section 501(a) has been opened to public inspection under this subparagraph, the Secretary shall, on the request of any person with respect to such organization, furnish a statement indicating the subsection and paragraph of section 501 which it has been determined describes such organization.

\*      \*      \*

(D) Withholding of certain other information.--Upon request of the organization submitting any supporting papers described in subparagraph (A) or (B), the Secretary shall withhold from public

-48-

inspection any information contained therein which he determines relates to any trade secret, patent, process, style of work, or apparatus, of the organization, if he determines that public disclosure of such information would adversely affect the organization. The Secretary shall withhold from public inspection any information contained in supporting papers described in subparagraph (A) or (B) the public disclosure of which he determines would adversely affect the national defense.

\*      \*      \*

## 26 U.S.C. § 7431. Civil damages for unauthorized inspection or disclosure of returns and return information

(a) <u>In general</u>.--

(1) <u>Inspection or disclosure by employee of United States</u>.--If any officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

(2) <u>Inspection or disclosure by a person who is not an employee of United States</u>.--If any person who is not an officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103 or in violation of section 6104(c), such taxpayer may bring a civil action for damages against such person in a district court of the United States.

(b) <u>Exceptions</u>.--No liability shall arise under this section with respect to any inspection or disclosure--

(1) which results from a good faith, but erroneous, interpretation of section 6103, or

(2) which is requested by the taxpayer.

-49-

(c) <u>Damages</u>.--In any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the sum of--

(1) the greater of--

(A) $1,000 for each act of unauthorized inspection or disclosure of a return or return information with respect to which such defendant is found liable, or

(B) the sum of--

(i) the actual damages sustained by the plaintiff as a result of such unauthorized inspection or disclosure, plus

(ii) in the case of a willful inspection or disclosure or an inspection or disclosure which is the result of gross negligence, punitive damages, plus

(2) the costs of the action, plus

(3) in the case of a plaintiff which is described in section 7430(c)(4)(A)(ii), reasonable attorneys fees, except that if the defendant is the United States, reasonable attorneys fees may be awarded only if the plaintiff is the prevailing party (as determined under section 7430(c)(4)).

(d) <u>Period for bringing action</u>.--Notwithstanding any other provision of law, an action to enforce any liability created under this section may be brought, without regard to the amount in controversy, at any time within 2 years after the date of discovery by the plaintiff of the unauthorized inspection or disclosure.

(e) <u>Notification of unlawful inspection and disclosure</u>.--If any person is criminally charged by indictment or information with inspection or disclosure of a taxpayer's return or return information in violation of--

(1) paragraph (1) or (2) of section 7213(a),

(2) section 7213A(a), or

13576463.1

(3) subparagraph (B) of section 1030(a)(2) of Title 18, United States Code,

the Secretary shall notify such taxpayer as soon as practicable of such inspection or disclosure.

(f) Definitions.--For purposes of this section, the terms "inspect", "inspection", "return", and "return information" have the respective meanings given such terms by section 6103(b).

(g) Extension to information obtained under section 3406.--For purposes of this section--

(1) any information obtained under section 3406 (including information with respect to any payee certification failure under subsection (d) thereof) shall be treated as return information, and

(2) any inspection or use of such information other than for purposes of meeting any requirement under section 3406 or (subject to the safeguards set forth in section 6103) for purposes permitted under section 6103 shall be treated as a violation of section 6103.

For purposes of subsection (b), the reference to section 6103 shall be treated as including a reference to section 3406.

(h) Special rule for information obtained under section 6103(k)(9).--For purposes of this section, any reference to section 6103 shall be treated as including a reference to section 6311(e).

13576463.1