SCHEDULED FOR ORAL ARGUMENT ON APRIL 14, 2016

No. 14-5316

_____

# In the United States Court of Appeals for the District of Columbia Circuit

_____

TRUE THE VOTE, Inc.,

*Plaintiff-Appellant*,

v.

INTERNAL REVENUE SERVICE, *et al*.,

*Defendants-Appellees*.

_____

On Appeal from the United States District Court for the District of Columbia in
Case No. 1:13-CV-00734-RBW (The Honorable Reggie B. Walton, Judge)

_____

## BRIEF FOR THE INDIVIDUAL DEFENDANTS-APPELLEES
_____

Brigida Benitez
  *Counsel of Record*
Catherine Cockerham
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 (telephone)
(202) 429-3902 (facsimile)
bbenitez@steptoe.com

*Counsel for Defendants-Appellees
Steven Grodnitzky, Lois Lerner, Steven
Miller, Holly Paz, David Fish, Michael
Seto, Douglas Shulman, Cindy Thomas
and William Wilkins*

Jeffrey A. Lamken
  *Counsel of Record*
Eric R. Nitz
MOLOLAMKEN LLP
The Watergate, Suite 660
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2000 (telephone)
(202) 556-2001 (facsimile)
jlamken@mololamken.com

*Counsel for Defendants-Appellees
Ronald Bell, Faye Ng, Janine L. Estes,
and Susan Maloney*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### I.  PARTIES AND AMICI

All parties, intervenors, and amici appearing before the district court and in this Court are listed in the Brief for Plaintiff-Appellant.

### II. RULINGS UNDER REVIEW

The ruling under review is the final order and memorandum opinion granting the Defendants' motions to dismiss entered in case 1:13-cv-00734-RBW on October 23, 2014 at district court docket numbers 102 and 103.  JA-197-221. *See True the Vote, Inc. v. IRS*, 71 F. Supp. 3d 219 (D.D.C. 2014).

### III.  RELATED CASES

This case has not previously been before this Court or any court other than the district court.  *Linchpins of Liberty v. United States*, No. 1:13-cv-00777-RBW (D.D.C), is a related case, and is currently pending in this Court as No. 15-5013 (D.C. Cir. filed Jan. 15, 2015).  Like this case, *Linchpins* challenges the dismissal of a complaint seeking damages for allegedly discriminatory treatment of certain applications for tax-exempt status.  Both cases were dismissed in relevant part because *Bivens* does not extend to this context.  *See also Linchpins of Liberty v. United States*, 71 F. Supp. 3d 236 (D.D.C. 2014).

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

    **I.**    Parties and Amici ......................................................................i

    **II.**   Rulings Under Review ...............................................................i

   **III.**   Related Cases ............................................................................i

TABLE OF AUTHORITIES .............................................................iv

GLOSSARY OF ABBREVIATIONS ..................................................x

JURISDICTIONAL STATEMENT ....................................................1

ISSUE PRESENTED FOR REVIEW .................................................1

STATUTES AND REGULATIONS....................................................1

STATEMENT OF THE CASE............................................................1

    **I.**    Statutory and Regulatory Background ...................................1

        A.    Tax Exemption Under §501(c)(3) .................................1

        B.    Tax Exemption Applications and Judicial Review....................2

    **II.**   Proceedings Below .................................................................4

        A.    True the Vote's Allegations .........................................4

        B.    The District Court's Decision ......................................5

SUMMARY OF ARGUMENT .........................................................6

STANDARD OF REVIEW ..............................................................9

ARGUMENT ................................................................................9

    **I.**    Special Factors Counsel Against Extending *Bivens* to This New Context ..............................................................10

        A.    The Internal Revenue Code Is a Comprehensive Remedial Scheme That Counsels Hesitation ............................10

        B.    True the Vote's Efforts To Avoid *Kim* and the Statutory Scheme Are Unavailing .....................................16

        C.    True the Vote's Reliance on Legislative History Similarly Fails.................................................................21

D.    The Relevant Considerations Uniformly Counsel Hesitation ..................................................................25

**II.**    Additional Defenses Must Be Resolved on Remand .........................30

CONCLUSION .................................................................................30

CERTIFICATE OF SERVICE ..........................................................32

CERTIFICATE OF COMPLIANCE ..................................................32

# TABLE OF AUTHORITIES[*]

**Page(s)**

CASES

*Adams v. Johnson*,
    355 F.3d 1179 (9th Cir. 2004) ...........................................................15

*Airlie Found. v. IRS*,
    283 F. Supp. 2d 58 (D.D.C. 2003).......................................................2

*Arar v. Ashcroft*,
    585 F.3d 559 (2d Cir. 2009) ........................................................10, 26

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................9

*Baddour, Inc. v. United States*,
    802 F.2d 801 (5th Cir. 1986) ...........................................................15

*Banks v. Chesapeake & Potomac Tel. Co.*,
    802 F.2d 1416 (D.C. Cir. 1986).......................................................13

*Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*,
    403 U.S. 388 (1971)......................................................................1, 4

*\*Bush v. Lucas*,
    462 U.S. 367 (1983)..............................................9, 16, 19, 26, 27, 29

*Cameron v. IRS*,
    773 F.2d 126 (7th Cir. 1985) .....................................................13, 15

*City of Rancho Palos Verdes v. Abrams*,
    544 U.S. 113 (2005)........................................................................13

*Cohen v. United States*,
    650 F.3d 717 (D.C. Cir. 2011).........................................................3

*Corr. Servs. Corp. v. Malesko*,
    534 U.S. 61 (2001).....................................................................9, 21

---

[*] Authorities upon which the Individual Defendants-Appellees chiefly rely are marked with asterisks.

iv

*Crawford-El v. Britton*,
    93 F.3d 813 (D.C. Cir. 1996)..............................................................29

*Dahn v. United States*,
    127 F.3d 1249 (10th Cir. 1997) ........................................................15

*Davis v. Billington*,
    681 F.3d 377 (D.C. Cir. 2012)...........................................................19

*Fishburn v. Brown*,
    125 F.3d 979 (6th Cir. 1997) ............................................................15

*\*Hudson Valley Black Press v. IRS*,
    409 F.3d 106 (2d Cir. 2005) ................................................14, 15, 22

*Indep. Bankers Ass'n of Am. v. Farm Credit Admin.*,
    164 F.3d 661 (D.C. Cir. 1999)...........................................................23

*\*Judicial Watch, Inc. v. Rossotti*,
    317 F.3d 401 (4th Cir. 2003) ...............................................14, 15, 22

*\*Kim v. United States*,
    632 F.3d 713 (D.C. Cir. 2011)........................ 5, 6, 7, 9, 11, 14, 16, 17

*Klay v. Panetta*,
    758 F.3d 369 (D.C. Cir. 2014)...........................................................12

*Lebron v. Rumsfeld*,
    670 F.3d 540 (4th Cir. 2012) ............................................................26

*McCarthy v. Madigan*,
    503 U.S. 140 (1992)...........................................................................13

*McMillen v. U.S. Dep't of Treasury*,
    960 F.2d 187 (1st Cir. 1991).............................................................15

*\*Meshal v. Higgenbotham*,
    804 F.3d 417 (D.C. Cir. 2015)..................................................9, 25, 26

*Nat'l Commodity & Barter Ass'n v. Archer*,
    31 F.3d 1521 (10th Cir. 1994) ..........................................................15

*Nat'l Commodity & Barter Ass'n v. Gibbs*,
    886 F.2d 1240 (10th Cir. 1989) ........................................................15

*NorCal Tea Party Patriots v. IRS*,
    No. 13-cv-341, 2014 WL 3547369 (S.D. Ohio July 17, 2014) ..........15

*Polm Family Found., Inc. v. United States*,
    644 F.3d 406 (D.C. Cir. 2011) ............................................................2

*Regan v. Taxation with Representation of Wash.*,
    461 U.S. 540 (1983) ............................................................................2

*Reichle v. Howards*,
    132 S. Ct. 2088 (2012) ........................................................................9

*Schweiker v. Chilicky*,
    487 U.S. 412 (1988) ........................................ 9, 12, 16, 17, 18, 20, 27

*Shreiber v. Mastrogiovanni*,
    214 F.3d 148 (3d Cir. 2000) ..............................................................15

*South Carolina v. Regan*,
    465 U.S. 367 (1984) ..........................................................................21

*Spagnola v. Mathis*,
    859 F.2d 223 (D.C. Cir. 1988) ..............................................19, 20, 23

*United States v. Stanley*,
    483 U.S. 669 (1987) ..........................................................................17

*Vennes v. Unknown Number of Unidentified Agents of the U.S.*,
    26 F.3d 1448 (8th Cir. 1994) ............................................................15

*W. Radio Servs. Co. v. U.S. Forest Serv.*,
    578 F.3d 1116 (9th Cir. 2009) ..........................................................21

*Wages v. IRS*,
    915 F.2d 1230 (9th Cir. 1990) ..........................................................15

*Watkins v. Blinzinger*,
    789 F.2d 474 (7th Cir. 1986) ............................................................23

*Wilkie v. Robbins,
    551 U.S. 537 (2007).........................................................9, 10, 25, 27

*Wilson v. Libby,
    535 F.3d 697 (D.C. Cir. 2008)................................7, 10, 18, 19, 20

Z St. v. Koskinen,
    791 F.3d 24 (D.C. Cir. 2015).............................................................21


**CONSTITUTIONAL PROVISIONS, STATUTES, RULES, AND REGULATIONS**

U.S. Const. amend. I ........................................... 4, 5, 9, 15, 18, 19, 24, 29

U.S. Const. amend. IV ........................................................................15

U.S. Const. amend. V ..........................................................................6

5 U.S.C. §552a..................................................................................19

5 U.S.C. §701 ..............................................................................3, 12

*5 U.S.C. §702 ............................................................................3, 12

5 U.S.C. §703 ..............................................................................3, 12

*5 U.S.C. §704 ............................................................................3, 12

5 U.S.C. §705 ..............................................................................3, 12

5 U.S.C. §706 .........................................................................3, 12, 21

*26 U.S.C. §501 ........................................... 1, 2, 3, 8, 11, 20, 27, 28, 29

26 U.S.C. §508 ...................................................................................2

26 U.S.C. §6103 .................................................................................5

*26 U.S.C. §6213 .............................................................................12

*26 U.S.C. §7422 ........................................................................11, 12

26 U.S.C. §7426 ...............................................................................11

*26 U.S.C. §7428 .......................................... 3, 5, 11, 12, 17, 20, 28

26 U.S.C. § 7429 ..................................................................................11

26 U.S.C. § 7431 ..................................................................................11

26 U.S.C. § 7432 ..................................................................................11

*26 U.S.C. § 7433 ...........................................................3, 11, 12, 14, 22, 23

26 U.S.C. § 7433A ................................................................................11

26 U.S.C. § 7434 ..................................................................................11

26 U.S.C. § 7435 ..................................................................................11

42 U.S.C. § 1983 ..................................................................................13

Consolidated Appropriations Act, 2016,
    Pub. L. No. 114-113, 129 Stat. 2242 (2015) ....................................12

Fed. R. Civ. P. 12(b)(6)...........................................................................9

26 C.F.R. § 1.501(c)(3)-1 ....................................................................2, 28

## OTHER AUTHORITIES

134 Cong. Rec. 29,273 (1988) .................................................................24

Foundation Group, *How Long Does It Take for the IRS To Approve*
    *501(c)(3) Status?*, https://www.501c3.org/frequently-asked-
    questions/how-long-does-it-take-for-the-irs-to-approve-501c3-status/
    (last visited Jan. 29, 2016) ...............................................................29

Hearing on S. 579 and S. 604,
    S. Hrg. 100-131, pt. 1, 100th Cong. (1987)......................................24

H.R. Rep. 100-1104 (1988)...............................................................14, 22

Internal Revenue Service, *2014 Data Book* (2014), *available at*
    https://www.irs.gov/pub/irs-soi/14databk.pdf ...................................29

Patricia Cohen, *I.R.S. Shortcut to Tax-Exempt Status Is Under Fire*,
    N.Y. Times, Apr. 8, 2015, *available at*
    http://www.nytimes.com/2015/04/09/business/irs-shortcut-to-tax-exempt-
    status-is-under-fire.html?_r=0 ...........................................................................28

S. 579, 100th Cong., 1st Sess., § 3(a) (1987) ....................................................22, 23

S. 2223, 100th Cong., 2d Sess., § 123 (1988) ............................................14, 22, 23

## <u>GLOSSARY OF ABBREVIATIONS</u>

**APA:** Administrative Procedure Act

**IRS:** Internal Revenue Service

**JA:** Joint Appendix

**TTV:** True the Vote

## JURISDICTIONAL STATEMENT

True the Vote's jurisdictional statement is complete and accurate.

## ISSUE PRESENTED FOR REVIEW

Whether the cause of action recognized in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), should be extended to claims arising out of the submission and handling of applications for tax-exempt status filed with the Internal Revenue Service.

## STATUTES AND REGULATIONS

The Addendum contains the text of pertinent statutes and regulations.

## STATEMENT OF THE CASE

This case arises out of True the Vote's application for tax-exempt status under the Internal Revenue Code, 26 U.S.C. § 501(c)(3), filed on July 15, 2010. JA-33. After this action was filed (on May 21, 2013), the IRS granted True the Vote's application for tax-exempt status (on September 26, 2013). *See* Dist. Ct. Dkt. No. 65-1. True the Vote seeks damages under *Bivens* from individual IRS employees for alleged misconduct in connection with that application.

## I.  STATUTORY AND REGULATORY BACKGROUND

### A. Tax Exemption Under § 501(c)(3)

Section 501(c)(3) of the Internal Revenue Code exempts certain charitable, educational, and other not-for-profit organizations from taxation.  26 U.S.C. § 501(c)(3).  Contributions to such organizations are also deductible from the

donor's income taxes, estate taxes, and gift taxes. *Polm Family Found., Inc. v. United States*, 644 F.3d 406, 407-08 (D.C. Cir. 2011). Tax-exempt status is a benefit; it is not constitutionally required. *See Regan v. Taxation with Representation of Wash.*, 461 U.S. 540, 545 (1983).

To qualify under § 501(c)(3), an organization must be "organized and operated exclusively for [exempt] purposes." *Polm Family Found.*, 644 F.3d at 407-08. Under IRS regulations, the organization can engage in insubstantial or incidental non-exempt activities. 26 C.F.R. § 1.501(c)(3)-1(c)(1). But "the 'presence of a single [non-exempt] purpose, if substantial in nature, will destroy the exemption, regardless of the number or importance of truly [exempt] purposes.'" *Airlie Found. v. IRS*, 283 F. Supp. 2d 58, 62-63 (D.D.C. 2003) (citation omitted).

Political and lobbying activities are non-exempt activities. *See* 26 C.F.R. § 1.501(c)(3)-1(c)(3)(ii)-(iii). "'[I]f substantial in nature,'" such activities render the applicant ineligible for § 501(c)(3) status. *Airlie Found.*, 283 F. Supp. 2d at 62-63 (citation omitted). The organization's earnings, moreover, may not inure to the benefit of any shareholder or individual. *Polm Family Found.*, 644 F.3d at 407-08.

### B. Tax Exemption Applications and Judicial Review

Organizations seeking § 501(c)(3) tax-exempt status may apply with the IRS. *See* 26 U.S.C. § 508(a). Congress provided an express statutory mechanism for

2

judicial review:  The applicant may pursue a declaratory judgment if the IRS denies it tax-exempt status, 26 U.S.C. § 7428(a)(1)(A), or if the IRS has not acted on the application within 270 days and the organization has acted reasonably to perfect its application, *id.* § 7428(b)(2).  Congress imposed a 90-day limitations period for such actions.  *Id.* § 7428(b)(3).  It also imposed an exhaustion requirement, together with exceptions to ensure flexibility.  *Id.* § 7428(b)(2).

The Internal Revenue Code includes a wealth of other remedial provisions, each carefully defined and calibrated to particular actions.  For example, the Code provides a different process for organizations seeking an exemption under § 501(c)(4) rather than § 501(c)(3).[1]  Taxpayers may seek review of other IRS actions under the APA, 5 U.S.C. §§ 701-706.  *See, e.g.*, *Cohen v. United States*, 650 F.3d 717, 723 (D.C. Cir. 2011).

The Internal Revenue Code also includes a damages provision.  If an IRS official intentionally, recklessly, or negligently disregards any provision of the Internal Revenue Code or IRS regulations in connection with the *collection* of a federal tax, the injured taxpayer may seek damages from the United States.  26 U.S.C. § 7433.

---

[1] An organization seeking tax-exemption under § 501(c)(4) need not apply to the IRS.  Instead, it can claim exempt status when filing its return.  If the IRS rejects that claim, administrative review is available in Tax Court, and aggrieved parties can seek judicial review of adverse Tax Court determinations.  *See* Brief for the Individual Defendants-Appellees in *Linchpins of Liberty v. United States*, at 2-5, No. 15-5013 (D.C. Cir. filed Feb. 5, 2016) ("Individual Defs. Linchpins Br.").

## II. PROCEEDINGS BELOW

### A. True the Vote's Allegations

True the Vote asserts that it "is a not-for-profit Texas corporation" with a "mission" of "promot[ing] and improv[ing] the integrity of the voting process in the United States."  JA-21.  In 2013, True the Vote filed this action against the United States, the IRS (the "Government"), unknown IRS employees, and 13 former or current IRS employees (the "Individual Defendants") to challenge the IRS's handling of its 2010 application, as well as an allegedly unconstitutional policy underlying the IRS's actions.  *Id.* at 17-196.

True the Vote alleges that, beginning in 2010, the IRS began identifying applications for tax exemption "filed by organizations whose names, purpose(s), or mission(s) . . . indicated a conservative philosophical viewpoint or a viewpoint supported by 'Tea Party' organizations."  JA-36-37.  True the Vote alleges that it, along with other organizations, was "subjected to additional review and scrutiny, and deliberate delays in processing."  *Id.*  Count III—the sole count against the Individual Defendants—asserts a damages claim under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for their alleged roles in the alleged "targeting scheme," which True the Vote contends violated its First Amendment rights to free speech and association.  JA-54-55.

4

True the Vote also sought a declaration under 26 U.S.C. § 7428 granting its tax-exemption application (Count I) (JA-51-52), a declaration that the "IRS [t]argeting [s]cheme" violated True the Vote's First Amendment rights, and injunctive relief to prevent additional violations (Count II) (JA-52-54). True the Vote also sought monetary damages against the Government for violations of 26 U.S.C. § 6103 relating to the alleged unlawful inspection of tax-return information (Count IV) (JA-55-58), together with related requests for declaratory and injunctive relief under the APA (Count V) (JA-59-62).

## B. The District Court's Decision

The district court dismissed the complaint. It entered an order and memorandum opinion dismissing the *Bivens* claim (Count III) on October 23, 2014. JA-197-221. As in *Linchpins of Liberty v. United States* (a related case pending on appeal as No. 15-5013),[2] the district court relied on *Kim v. United States*, 632 F.3d 713 (D.C. Cir. 2011), to conclude that Circuit precedent "does not permit [it] to create a *Bivens* remedy for the plaintiff against the individual IRS defendants." JA-212; *see* Individual Defs. Linchpins Br. 7-8.

---

[2] Because *Linchpins* involves similar *Bivens* claims, there is overlap between the arguments in the two cases. The Individual Defendants have attempted to avoid repeating the arguments made in *Linchpins*, focusing on arguments specific to True the Vote. Some repetition is necessary, however, to place responses and arguments in context.

In *Kim*, 632 F.3d at 717-18, this Court found that special factors precluded *Bivens*' expansion to Fifth Amendment suits against IRS employees because the Internal Revenue Code provided its own "comprehensive remedial scheme." JA-212-14. The district court held that, as in *Kim*, Congress's provision of detailed remedial provisions precludes judicial creation of a *Bivens* remedy against individual IRS employees. *Id.* The district court also observed that "[i]t would make the collection of taxes chaotic if a taxpayer could bypass the remedies provided by Congress simply by bringing a damage action against [IRS] employees." *Id.* at 215 (citation omitted). In light of the unavailability of a *Bivens* remedy, the district court determined that it need not address the Individual Defendants' qualified immunity or personal jurisdiction defenses. *Id.* at 212.

The district court also granted the Government's motion to dismiss and denied the Plaintiff's Motion to Stay Agency Action as moot. JA-197-221. This appeal followed. *Id.* at 222.

## SUMMARY OF ARGUMENT

For more than three decades, the Supreme Court has refused to expand the "disfavored" *Bivens* cause of action to any new contexts. The district court properly concluded that, under *Kim v. United States*, 632 F.3d 713 (D.C. Cir. 2011), it could not extend *Bivens* to this new context either. No court of appeals has ever extended *Bivens* to claims arising out of the IRS's handling of

applications or other requests or filings.  Instead, as *Kim* and other decisions hold, the Internal Revenue Code provides a comprehensive remedial scheme that counsels hesitation, foreclosing judicial creation of an extra-statutory damages action.

True the Vote's only response is to argue that the Internal Revenue Code affords it no remedy for the constitutional violation it asserts, and that the circumstances in *Kim* are different than those here.  But a comprehensive remedial scheme counsels hesitation against implying a *Bivens* remedy even when the statutory scheme provides the plaintiff with no remedy for the particular right at issue.  *Wilson v. Libby*, 535 F.3d 697, 709 (D.C. Cir. 2008).  Here, moreover, the Code does provide a remedy—a specialized declaratory judgment suit, subject to calibrated requirements, that applicants can invoke to obtain the tax-exempt status determination wrongfully delayed or denied.  True the Vote's effort to distinguish *Kim* falls flat.  None of the differences between *Kim* and this case alters the fact that the Internal Revenue Code comes with its own comprehensive set of remedies that should not be supplemented—or upended—by the judicial creation of a *Bivens* damages remedy against individual employees.

True the Vote maintains that the legislative history of the Internal Revenue Code suggests otherwise, pointing to a staff summary and hearing statements of the then-IRS Commissioner.  But Congress *twice* explicitly rejected creating a

7

damages remedy for the injuries True the Vote alleges. And nothing in the legislative record suggests Congress ever believed there should be a *Bivens* action for the IRS's allegedly unconstitutional handling of applications, forms, or filings.

While True the Vote urges that courts should balance the reasons for and against *Bivens'* expansion, the presence of a comprehensive remedial scheme counsels dispositive hesitation. Whether such a scheme should be supplemented with a damages remedy is a decision Congress, not the courts, must make. And any balance here tilts decidedly against judicial innovation; True the Vote identifies no factors that would justify expanding the disfavored *Bivens* remedy over the remedies Congress itself provided.

If individual IRS employees are to confront legal exposure for that potentially expansive category—with the threat of a lawsuit behind each form they process—Congress, not the courts, should make that determination. That is especially so given the highly discretionary judgments required to determine an organization's eligibility for tax-exempt status. If exercising that judgment might trigger *Bivens* liability, IRS employees may under-enforce the requirements of §501(c)(3). Whether any benefits from individual monetary liability and associated litigation outweigh the effect of suppressed enforcement is an issue that Congress rather than the courts should resolve.

8

## STANDARD OF REVIEW

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is reviewed de novo. *Kim v. United States*, 632 F.3d 713, 715 (D.C. Cir. 2011).

## ARGUMENT

The Supreme Court has, for the past 35 years, "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001). Such judicially implied causes of action are "disfavored," *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009), because "'Congress is in a far better position than a court to evaluate the impact of a new species of litigation' against those who act on the public's behalf," *Wilkie v. Robbins*, 551 U.S. 537, 562 (2007) (quoting *Bush v. Lucas*, 462 U.S. 367, 389 (1983)); *see also Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988); *Meshal v. Higgenbotham*, 804 F.3d 417, 421 (D.C. Cir. 2015).

True the Vote essentially concedes, as it must, that it seeks to extend *Bivens* to a new context. *See* TTV Br. 24-25. The Supreme Court has "never held that *Bivens* extends to First Amendment claims" of any sort. *Reichle v. Howards*, 132 S. Ct. 2088, 2093 n.4 (2012). Nor has this Court extended *Bivens* to claims against the IRS for actions taken in connection with applications, much less applications seeking the benefit of tax-exempt status. Such an extension is foreclosed by

9

precedent, by special factors counseling hesitation, and by common sense.   If

*Bivens* is to be extended to this new context, Congress should make that decision.

## I.   SPECIAL FACTORS COUNSEL AGAINST EXTENDING *BIVENS* TO THIS NEW CONTEXT

*Bivens* cannot be extended to a new context if "'special factors counsel[]

hesitation before authorizing a new kind of federal litigation.'"   *Wilkie*, 551 U.S. at

550 (citation omitted).   That "remarkably low" threshold, *Arar v. Ashcroft*, 585

F.3d 559, 601 (2d Cir. 2009) (en banc), is amply met in this case.   The relevant

factors do not merely "counsel hesitation"; they all but foreclose *Bivens'* extension.

The Internal Revenue Code creates a highly calibrated, comprehensive

scheme for judicial review of IRS actions, and of IRS actions in connection with

applications for tax-exemption in particular.   Superimposing a *Bivens* action over

that comprehensive regime, moreover, would undermine if not destroy the careful

requirements Congress established.   Further, the nature of the activity—passing on

applications for a benefit—and the highly discretionary judgments employees must

make also favor against *Bivens'* expansion.

### A.   The Internal Revenue Code Is a Comprehensive Remedial Scheme That Counsels Hesitation

As explained in greater detail in the Brief of the Individual Defendants-

Appellees in *Linchpins* (at 13-19), the existence of a "comprehensive remedial

scheme" counsels hesitation.   *See Wilson v. Libby*, 535 F.3d 697, 705 (D.C. Cir.

2008).  Here, the Internal Revenue Code provides precisely such a "comprehensive remedial scheme."  For that reason, in *Kim v. United States*, 632 F.3d 713 (D.C. Cir. 2011), the Court concluded that "no *Bivens* remedy was available in light of the comprehensive remedial scheme set forth by the Internal Revenue Code."  *Id.* at 717.

1.    *Kim* controls this case.  The Internal Revenue Code provides specific, calibrated mechanisms for review of tax-exemption decisions and the timing thereof—as well as many other specific actions IRS employees may take when administering the tax code.  For example, §501(c)(3) applicants like True the Vote can pursue a declaratory judgment if their applications are denied or delayed more than 270 days.  26 U.S.C. §7428; pp. 2-3, *supra*.  Congress, moreover, carefully calibrated that mechanism.  Section 501(c)(3) applicants must make reasonable efforts to exhaust administrative remedies before filing a suit for a declaratory judgment.  *Id.* §7428(b)(2).  Section 7428, moreover, imposes a *90-day* statute of limitations.  *Id.* §7428(b)(3).

The Internal Revenue Code provides a host of other causes of action relating to administration of the tax code.  *See* 26 U.S.C. §§7422, 7426, 7429, 7431-7435. For example, applicants seeking tax-exempt status under §501(c)(4), as opposed to §501(c)(3), have a different pathway to judicial review:  They can simply claim the exemption on their taxes and challenge, through the Tax Court and judicial review

11

of Tax Court decisions, any IRS determination rejecting such a claim. *See id.* §§ 6213, 7422; Individual Defs. Linchpins Br. 4-5.[3]  Other IRS actions are subject to judicial review under the APA, 5 U.S.C. §§ 701-706. *See* p. 3, *supra*.

Congress also created an express cause of action *for damages* where IRS employees negligently or recklessly violate the Internal Revenue Code or IRS regulations in connection with the *collection* of federal tax.  26 U.S.C. § 7433. That comprehensive and calibrated regime reflects a considered congressional judgment.  "Given that Congress is extensively engaged with" potential wrongs arising from the IRS's administration of the tax code, "but has chosen not to create" a damages remedy against individual IRS employees, this Court should "decline to imply" that remedy under *Bivens* here.  *Klay v. Panetta*, 758 F.3d 369, 376 (D.C. Cir. 2014); *see also Schweiker*, 487 U.S. at 424-34.

2.    Recognizing a *Bivens* remedy in this context, moreover, would directly contravene Congress's remedial choices in at least two respects.  First, as True the Vote recognizes (at 27), the Internal Revenue Code provides mechanisms for judicial review in § 6213(a) and § 7428(b)(3), but couples them with exhaustion requirements and short, 90-day limitations periods.  *See* 26 U.S.C. §§ 6213(a), 7428(b)(3); pp. 2-3, *supra*.  By contrast, *Bivens* does not require exhaustion, and its

---

[3]  Recently, Congress made § 7428 available to § 501(c)(4) applicants too. Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, § 406, 129 Stat. 2242 (2015).

limitations period is far lengthier—spanning years not days. *See McCarthy v. Madigan*, 503 U.S. 140 (1992); *Banks v. Chesapeake & Potomac Tel. Co.*, 802 F.2d 1416, 1428-29 (D.C. Cir. 1986). Allowing organizations to "bypass the remedies provided by Congress simply by bringing a damage action" under *Bivens* would destroy those preconditions to suit. *Cameron v. IRS*, 773 F.2d 126, 129 (7th Cir. 1985). Confronted with conflicting requirements in the context of claims under 42 U.S.C. § 1983, courts will not allow plaintiffs to pursue that express *statutory* damages action if Congress has provided another comprehensive remedial regime with different requirements. *See City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 121-23 (2005) (no cause of action under 42 U.S.C. § 1983 where cause would conflict with "express, private means of redress," including a shorter limitations period). *A fortiori*, courts should not *create* that sort of conflict by *judicially implying* a damages action with inconsistent prerequisites—different limitations periods and different exhaustion requirements—atop the comprehensive regime Congress itself provided. *See* Individual Defs. Linchpins Br. 13-17; *see also* JA-214-15 (district court observing that allowing a taxpayer to "'bypass the remedies provided by Congress'" by bringing a *Bivens* remedy could wreak "'havoc . . . [on] the federal tax system'") (citations omitted).

Second, Congress has provided a damages remedy in the Internal Revenue Code—allowing damages against the government—but it specifically excluded the

13

sorts of claims at issue here. Under 26 U.S.C. § 7433, taxpayers may bring a damages action against the United States for violations of the Internal Revenue Code or IRS regulations "in connection with any *collection* of Federal tax." *Id.* (emphasis added). That provision originally was more expansive: It would have allowed damages for violations of *federal* law in connection with the *determination or collection* of tax. S. 2223, 100th Cong., 2d Sess., § 123 (1988). But Congress deliberately restricted that provision by, among other things, limiting it to actions taken in connection with tax "collection." *See* H.R. Rep. 100-1104, pt. 2, at 229 (1988) (Conf. Rep.); *see* Individual Defs. Linchpins Br. 25-27. By asking this Court to create a damages remedy here—in the context of a tax determination— True the Vote asks this Court to create a damages remedy that Congress explicitly considered and rejected. "Congress expressly considered broader remedies— including civil suits relating to tax assessment and for violations of any federal laws—before rejecting them." *Hudson Valley Black Press v. IRS*, 409 F.3d 106, 112 (2d Cir. 2005); *see also Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401, 411-12 (4th Cir. 2003).

3.    Courts across the country have agreed with *Kim* and refused to extend *Bivens* to the context of alleged constitutional violations by IRS employees in the

14

course of administering the Internal Revenue Code.[4]   Like the plaintiffs in *Linchpins*, True the Vote largely ignores that wall of precedent, which spans the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Circuits.  Instead, True the Vote mistakenly invokes the Tenth Circuit's decision in *National Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240 (10th Cir. 1989). TTV Br. 30.  Apart from the fact that *Gibbs* has been criticized and rejected by other circuits, *see Judicial Watch*, 317 F.3d at 412-13, *Gibbs* simply cannot support—and Tenth Circuit precedent rejects—extending *Bivens* to this context.

Most critically, *Gibbs* involved tax *collection* activity—claims that IRS employees violated the First and Fourth Amendments when they *searched* the plaintiffs/tax-protesters' headquarters.  *See* 886 F.2d at 1248.  Even the Tenth Circuit has refused to extend *Bivens* beyond tax collection to "allegations of wrongful jeopardy *assessments*."  *Nat'l Commodity & Barter Ass'n v. Archer*, 31 F.3d 1521, 1532 (10th Cir. 1994); *see also Dahn v. United States*, 127 F.3d 1249, 1254 (10th Cir. 1997) ("[I]n light of the comprehensive administrative scheme

---

[4] *See Hudson Valley Black Press*, 409 F.3d at 113-14; *Adams v. Johnson*, 355 F.3d 1179, 1185-86 (9th Cir. 2004); *Judicial Watch,* 317 F.3d at 410-13; *Shreiber v. Mastrogiovanni*, 214 F.3d 148, 152-53 (3d Cir. 2000); *Fishburn v. Brown*, 125 F.3d 979, 982-83 (6th Cir. 1997); *Vennes v. Unknown Number of Unidentified Agents of the U.S.*, 26 F.3d 1448, 1453-54 (8th Cir. 1994); *Dahn v. United States*, 127 F.3d 1249, 1254 (10th Cir. 1997); *McMillen v. U.S. Dep't of Treasury*, 960 F.2d 187, 190-91 (1st Cir. 1991); *Wages v. IRS*, 915 F.2d 1230, 1235 (9th Cir. 1990); *Baddour, Inc. v. United States*, 802 F.2d 801, 807-09 (5th Cir. 1986); *Cameron*, 773 F.2d at 128-29; *NorCal Tea Party Patriots v. IRS*, No. 13-cv-341, 2014 WL 3547369, at *8 (S.D. Ohio July 17, 2014).

created by Congress to resolve tax-related disputes, individual [IRS employees] are also not subject to *Bivens* actions.").  Here, True the Vote's allegations do not arise out of tax-collection activities.   They arise out of the IRS's determination process—in particular, its handling of applications for the benefit of tax-exempt status.   No circuit has extended *Bivens* to create potentially sprawling liability based on the actions IRS employees take in connection with the myriad applications, forms, and requests the IRS receives and processes.  *See* Individual Defs. Linchpins Br. 17-19.

### B. True the Vote's Efforts To Avoid *Kim* and the Statutory Scheme Are Unavailing

1.     True the Vote's efforts to avoid *Kim* are unsuccessful.  According to True the Vote, *Kim* involved "'tax protesters' who filed a 'boilerplate' complaint." TTV Br. 28-29.  That "factual situation," True the Vote asserts, "is a far cry from the Targeting Scheme here."  TTV Br. 29.

Whether to extend *Bivens*, however, does not depend on the substantive merits of the complaint.  It depends instead on whether Congress's provision of a remedial scheme counsels hesitation.  The Supreme Court's analysis thus has *never* turned on the nature of the challenged conduct.  Rather, when analyzing whether to extend *Bivens*, it has focused on the remedial scheme itself.  *See, e.g.*, *Schweiker*, 487 U.S. at 424-27 (focusing on Social Security Act); *Bush*, 462 U.S. at 381-89 (focusing on Civil Service Reform Act).

16

Indeed, the Supreme Court has refused to imply a *Bivens* remedy for conduct far more offensive than that which True the Vote alleges here. That includes not merely trauma imposed on the disabled, but the use of U.S. citizens as unwitting guinea pigs in human experimentation. *See Schweiker*, 487 U.S. at 428-29 (no *Bivens* remedy despite "trauma ... go[ing] beyond what anyone of normal sensibilities would wish to see imposed on innocent disabled citizens"); *United States v. Stanley*, 483 U.S. 669, 671, 681-83 (1987) (no *Bivens* remedy for unauthorized and unknowing administration of LSD as part of "plan to study the effects of the drug on human subjects").

True the Vote similarly argues that the "legal claims" in *Kim* are "highly distinguishable," involving a "direct challenge to the IRS's core function." TTV Br. 29. But Congress did not limit its comprehensive scheme "to resolve run-of-the-mill tax disputes." *Id.* Just like the remedial scheme in *Schweiker*, it made that remedial scheme available to address all wrongful denials of tax-exempt status (and delays beyond 270 days) regardless of the reason. *See* 26 U.S.C. § 7428. Indeed, as explained below, Congress *did* consider constitutional injuries of the sort True the Vote alleges when it "designed" the Internal Revenue Code. But it chose not to create a damages action for those injuries, specifically excluding claims based on IRS actions in connection with tax determination, as opposed to tax-collection activities. *See* pp. 21-22, *infra*. Supreme Court precedent is clear

17

that, "[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur *in the course of its administration*, courts have not created additional *Bivens* remedies." *Schweiker*, 487 U.S. at 423 (emphasis added). True the Vote cannot credibly claim that its alleged constitutional violation did not "occur in the course of [the Internal Revenue Code's] administration."

2.     True the Vote also argues (at 25-27) that it has no adequate, alternative remedy. But that is not the question. Congress provided a remedy by which True the Vote can obtain any benefits wrongfully denied; no special remedy for particular constitutional claims is required. *See Schweiker*, 487 U.S. at 427. The "special factors analysis does not turn on whether the statute provides a remedy to the particular plaintiff for the particular claim he or she wishes to pursue." *Wilson v. Libby*, 535 F.3d 697, 709 (D.C. Cir. 2008). Indeed, both the Supreme Court and this Court have repeatedly refused to extend *Bivens* where the comprehensive remedial scheme provides an incomplete remedy—or no remedy at all.

In *Wilson*, for example, one plaintiff, Joseph Wilson, sought damages under *Bivens* for claims that Executive Branch officials had retaliated against him in violation of the First Amendment by exposing his wife as a covert CIA operative.

18

535 F.3d at 707.  Mr. Wilson argued the Privacy Act, 5 U.S.C. § 552a, did not

counsel hesitation because it provided him no remedy for that retaliatory effort.

*Wilson*, 535 F.3d at 709.  Because his wife's "record," not his own, had been

disclosed, he had not suffered a violation of the Privacy Act.  *See* 5 U.S.C.

§ 552a(a)(4), (g)(1).  This Court held that, even though it provided Mr. Wilson no

remedy, the Privacy Act's comprehensive remedial scheme counseled hesitation,

foreclosing *Bivens'* expansion.  *Wilson*, 535 F.3d at 708-09.

      The Supreme Court reached a similar conclusion in *Bush v. Lucas*.  There,

the plaintiff argued that he lacked an "effective" remedy that "fully

compensate[d]" him for the harms he suffered as a result of retaliatory discharge in

violation of the First Amendment because the Civil Service Reform Act did not

"provide for punitive damages" and left "uncompensated [the] emotional and

dignitary harms" he suffered.  462 U.S. at 372 & nn.8-9.  The Supreme Court

nonetheless concluded that the comprehensive nature of the remedial scheme

counseled hesitation.  *Id.* at 387-89; *see also Davis v. Billington*, 681 F.3d 377,

387-88 (D.C. Cir. 2012) (no *Bivens* remedy because the Civil Service Reform Act

is a comprehensive remedial scheme, even though plaintiff was not entitled to a

remedy); *Spagnola v. Mathis*, 859 F.2d 223, 227 (D.C. Cir. 1988) (en banc) (per

curiam) (similar).  Similarly, in *Schweiker*, the remedial scheme provided for the

restoration of benefits wrongfully denied, but it did not compensate the plaintiffs

19

for the emotional trauma they suffered when their benefits were unconstitutionally delayed or denied. *Schweiker*, 487 U.S. at 427-28. The Court held the existence of the remedial scheme foreclosed *Bivens*' expansion nonetheless. *Id.*

Those cases apply squarely here. The Internal Revenue Code may not remedy the precise harm that True the Vote alleges it suffered—unwarranted delay and unjustified intrusion in the processing of its tax-exemption application. But, as the district court correctly observed, "the plaintiff's dissatisfaction with the remedies available to it is not a legally sufficient reason for the Court to create a *Bivens* remedy." JA-215 n.14 (citing *Spagnola*, 859 F.2d at 227).

3.    True the Vote, moreover, does have available remedies; it is not "*Bivens* or nothing." When the IRS's delay exceeds 270 days, a §501(c)(3) applicant may sue for a declaratory judgment under §7428 and have a court determine its entitlement to tax-exempt status. *See* pp. 2-3, *supra*. Even before that deadline, the applicant may be able to challenge the delay itself in a suit for declaratory and injunctive relief. *See Z St. v. Koskinen*, 791 F.3d 24, 31-32 (D.C. Cir. 2015).[5]    To the extent an applicant has no remedy at all, Congress has

---

[5] *Z Street* also concluded that the Internal Revenue Code did not provide a specific remedy for the plaintiff in that case, who alleged that the IRS had engaged in viewpoint discrimination by delaying consideration of certain §501(c)(3) tax-exemption applications. 791 F.3d at 31-32. But that does not mean the Internal Revenue Code does not counsel hesitation. Unlike the applicability of the Anti-Injunction Act—which was at issue in *Z Street*—whether to extend *Bivens* does not turn on whether the plaintiff can "'utilize any statutory procedure to contest the

determined that the APA—which among other things authorizes suits to "compel agency action," 5 U.S.C. §706(1)—should fill that void, not a damages action under *Bivens*. As explained more fully in the Brief of the Individual Defendants-Appellees in *Linchpins* (at 24-25), that, too, counsels hesitation because the "design" of the APA "raises the inference that Congress 'expected the Judiciary to stay its *Bivens* hand.'" *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1123 (9th Cir. 2009) (citation omitted). Ultimately, the Supreme Court "ha[s] never considered [the *Bivens* remedy] a proper vehicle for altering an entity's policy." *Malesko*, 534 U.S. at 74. By contrast, "injunctive relief"—like that available under *Z Street* or the APA—"has long been recognized as the proper means for preventing entities from acting unconstitutionally." *Id.*

## C. True the Vote's Reliance on Legislative History Similarly Fails

The Internal Revenue Code's history reinforces that the Code is a comprehensive remedial scheme that counsels hesitation. As explained in the Brief of the Individual Defendants-Appellees in *Linchpins* (at 25-27), Congress *twice* considered—*and rejected*—a damages remedy for precisely the conduct that True the Vote alleges here. In 1987, Congress considered authorizing personal

---

constitutionality'" of the action. It turns on whether there are factors counseling hesitation. And hesitation is warranted whenever there is a comprehensive remedial regime, whether it addresses plaintiffs' specific harms or not. *Compare Z St.*, 791 F.3d at 31 (citing *South Carolina v. Regan*, 465 U.S. 367, 380 (1984)), *with Wilson*, 535 F.3d at 709-10 (special factors analysis does not turn on whether comprehensive regime provides statutory remedy).

damages against any "officer or employee of the [IRS] who . . . subjects . . . any citizen . . . to the deprivation of any rights, privileges, or immunities secured by *the Constitution* and laws" of the United States. S. 579, 100th Cong., 1st Sess., § 3(a) (1987) (emphasis added). That bill never passed.

The next year, Congress considered another bill that, as initially written, would have authorized a damages action against the United States for violations of "Federal law" in connection with the "determination or collection" of tax. S. 2223, 100th Cong., 2d Sess., § 123 (1988). The Conference Committee, however, removed the references to "Federal law" and "determination . . . of Federal tax." H.R. Rep. 100-1104, pt. 2, at 229 (1988) (Conf. Rep.). Consequently, the enacted bill, which ultimately became 26 U.S.C. § 7433, authorized damages only for violations of the *Internal Revenue Code or IRS regulations* (not constitutional violations) that occurred in connection with the *collection* (not determination) of a tax. *See Hudson Valley Black Press*, 409 F.3d at 112; *Judicial Watch*, 317 F.3d at 411-12. By asking this Court to create a damages remedy that extends beyond tax *collection* activities (and beyond statutory and regulatory violations), True the Vote seeks to overrule Congress's deliberate choices.

True the Vote thus errs when it insists that "Congress intended the [Internal Revenue Code's] remedies to complement, not preempt, *Bivens* remedies." TTV Br. 30. Because it would provide relief Congress rejected, for conduct Congress

22

excluded, without the express timing and other limits Congress mandated, imposing a *Bivens* remedy would not "complement" congressional choices; it would reverse them.

Nor is it true, as True the Vote insists, that the comments of then-IRS Commissioner Lawrence Gibbs on S. 579, and a congressional staff summary of the original version of S. 2223, show that Congress rejected a statutory remedy only because it had an "explicit understanding that taxpayers already enjoyed a remedy for such injuries under *Bivens*."  TTV Br. 32 (emphasis omitted).  For one thing, one witness's testimony and a staff summary cannot "plainly express" the intent *of Congress*.  *See Indep. Bankers Ass'n of Am. v. Farm Credit Admin.*, 164 F.3d 661, 668 (D.C. Cir. 1999) ("The court has previously avoided giving undue weight to the testimony of witnesses at congressional hearings because their views may not reflect those of the legislators who actually voted on the bill."); *Watkins v. Blinzinger*, 789 F.2d 474, 479 (7th Cir. 1986) (rejecting reliance on staff summaries and noting "the words of the staff are not the equivalent of statements in committee reports").

For another, Congress could not have "plainly expressed" an intention to preserve *Bivens* remedies in this context, *Spagnola*, 859 F.2d at 228, because there were no such remedies to preserve.  When Congress created a statutory damages remedy in § 7433, and refused to extend that remedy beyond tax collection

23

activities, *Bivens* had not been extended to claims arising from tax determinations, much less First Amendment claims in connection with tax-exemption applications. Congress cannot "preserve" a remedy in a context where there was no such remedy in place. *See* Individual Defs. Linchpins Br. 27-29.[6]

Besides, both Commissioner Gibbs' testimony and the staff summary undermine True the Vote's argument. For example, Commissioner Gibbs noted that, while many *Bivens* suits "were filed against Service employees" between 1980 and 1986, "*none* of these suits has been ultimately successful." Hearing on S. 579 and S. 604, S. Hrg. 100-131, pt. 1, 100th Cong. 243 (1987) (emphasis added). He voiced "concerns" that the remedy would "chill[ ]" the IRS's "ability to recruit and retain quality people" and might "inhibit proper enforcement of the tax laws by Service employees." *Id.* at 251. In other words, Commissioner Gibbs identified precisely the sorts of special factors that counsel hesitation. The staff summary, too, recognized that *Bivens* suits against IRS employees were rarely successful, noting that such suits can "entail substantial social costs." 134 Cong. Rec. 29,273. Indeed, it went on at length about the fact that *courts had refused* to "expand" *Bivens* because special factors often counseled hesitation. *See* Individual Defs. Linchpins Br. 28. It is hard to see how a staff summary and testimony

---

[6] Although the staff summary identified a number of *Bivens* cases against IRS employees, not one involved a tax determination, much less a determination of tax-exempt status. *See* 134 Cong. Rec. 29,273-74 (1988).

discussing the courts' *refusal* to extend *Bivens* could be read to preserve the *Bivens*' extension the courts were rejecting.  And not one of the cases discussed or cited in the testimony concerned the IRS's handling of an application, much less an application for the benefit of tax-exempt status.  *See id.* at 29 n.7.  Even if there were ambiguity about that history—and there is none—"the thumb is heavy on the scale against recognizing a *Bivens* remedy."  *Meshal*, 804 F.3d at 428.  As a result, "uncertain interpretations of what Congress did . . . cannot overcome the weight of authority against expanding *Bivens*."  *Id.*

### D. The Relevant Considerations Uniformly Counsel Hesitation

True the Vote complains that the district court failed to consider "whether any 'special factors' weigh in favor of a creation of a *Bivens* remedy."  TTV Br. 28 (citing *Wilkie*, 551 U.S. at 554) (emphasis omitted).  But that plea is misplaced.  When courts "weigh[] reasons for and against the creation of a new cause of action," *Wilkie*, 551 U.S. at 554, they must "pay[] particular heed . . . to any special factors counseling hesitation," *id.* at 550.  And when special factors exist, that precludes *Bivens*' expansion without regard to factors favoring its expansion.  "While special factors should be substantial enough to justify the absence of a damages remedy for a wrong, no account is taken of countervailing factors that might counsel alacrity or activism, and none has ever been cited by the Supreme

Court as a reason for affording a *Bivens* remedy where it would not otherwise exist." *Arar*, 585 F.3d at 573-74.

That makes sense. A conclusion that "special factors" counsel hesitation before expanding *Bivens* to a new context reflects a determination that *Congress*, rather than the courts, should determine the existence and scope of the remedy. "That judgment is focused not on 'the merits of the particular remedy that was sought' but, rather, on '*who should decide* whether such a remedy should be provided,' specifically, Congress or the courts." *Lebron v. Rumsfeld*, 670 F.3d 540, 547-48 (4th Cir. 2012) (quoting *Bush*, 462 U.S. at 380) (citation omitted) (emphasis added). Where special factors counsel that Congress should make the decision, courts ought not exercise that authority nonetheless because they believe a "balance" of factors weighs in favor of the remedy's creation.

This Court, in any event, need not resolve that issue, because True the Vote identifies no consideration favoring *Bivens'* expansion, much less anything so substantial as to outweigh the special factors that counsel hesitation here. Those include not just the comprehensive remedial scheme, and *Bivens'* inconsistency with the judgments Congress made, *see* pp. 10-16, *supra*, but also the "'nature of the suit and the consequences flowing from it.'" *Meshal*, 804 F.3d at 427 (citation omitted).

26

Here, the allegations arise in the context of *applications* for tax-exempt status—the handling of some of the tens of millions of forms, requests, and applications filed with the IRS each year.   Tax-exemption applications are governed by intricate statutory and regulatory provisions *requiring* IRS employees to analyze constitutionally protected activity—lobbying and other political activity. *See* 26 U.S.C. § 501(c)(3); 26 C.F.R. § 1.501(c)(3)-1.   Thus, extending *Bivens* to this context would present an unusually high risk that IRS employees would frequently be the target of allegations like those True the Vote asserts.   As explained in the individual defendants' brief in *Linchpins* (at 29-30), IRS employees may under-enforce the requirements of § 501(c) if the alternative is exposure to potential personal damages liability.   *See* Individual Defs. Linchpins Br. 29-30.   The Supreme Court has repeatedly invoked similar concerns when declining to expand *Bivens*.   *See Bush*, 462 U.S. at 389 (finding it "quite probable" that "the added risk of personal liability" would "deter[ ]" managers "from imposing discipline in future cases"); *Wilkie*, 551 U.S. at 561 (refusing to expand *Bivens* where doing so "would invite claims in every sphere of legitimate governmental action"); *Schweiker*, 487 U.S. at 425 ("The prospect of personal liability for official acts, moreover, would undoubtedly lead to new difficulties and expense in recruiting administrators for the programs Congress has established."). This Court should do likewise.

27

True the Vote's own application reveals the potential risk. On its tax-exemption application, True the Vote stated that it "attempt[s] to influence legislation," JA-77—lobbying activity that is disqualifying if substantial. 26 C.F.R. §1.501(c)(3)-1(c)(3). True the Vote's application also suggested potential involvement in disqualifying electioneering activity. JA-85. The same is true of many plaintiffs in *Linchpins*. *See, e.g.*, C.A. App. in *Linchpins of Liberty v. United States*, No. 15-5013, at App.153, App.172, App.174, App.181 (D.C. Cir. filed Dec. 7, 2015). To be clear, none of those statements is facially disqualifying. But they are precisely the types of statements that should prompt closer scrutiny from an IRS employee determining an applicant's eligibility for tax-exempt status. An IRS employee fearful of personal liability may simply choose to look the other way. *Cf.* Patricia Cohen, *I.R.S. Shortcut to Tax-Exempt Status Is Under Fire*, N.Y. Times, Apr. 8, 2015.[7]

True the Vote identifies no consideration favoring *Bivens*' expansion, and its interest in any such remedy is highly attenuated. It had a statutory remedy, and it has now received tax-exempt status. *See* p. 1, *supra*. Any organization in True the Vote's position can invoke that same remedy. It need wait only 270 days (or less) before it can ask a court to determine its eligibility for tax-exempt status. *See* 26 U.S.C. §7428. Indeed, because "IRS 501(c)(3) approval" ordinarily "takes

---

[7] *Available at* http://www.nytimes.com/2015/04/09/business/irs-shortcut-to-tax-exempt-status-is-under-fire.html?_r=0 (last visited Jan. 29, 2016).

between 2 and 12 months" in any event,[8] any *Bivens* remedy would at most offer a few months' damages.  Besides, it is difficult to believe that delays in granting applications will often impose actual constitutional injury—chilling those of ordinary firmness from speaking.[9]

Whether such highly speculative benefits justify the costs of imposing personal liability on IRS employees is a decision for Congress, not the courts. *Bush*, 462 U.S. at 388-89.  That is especially true given the enormous number of lawsuits that could result.  IRS agents process tens of millions of applications, forms, and other submissions every year.  Indeed, in 2014 alone, the IRS ruled on over 100,000 applications for § 501(c)(3) status.  Internal Revenue Service, *2014*

---

[8] Foundation Group, *How Long Does It Take for the IRS To Approve 501(c)(3) Status?*, https://www.501c3.org/frequently-asked-questions/how-long-does-it-take-for-the-irs-to-approve-501c3-status/ (last visited Jan. 29, 2016).

[9] A constitutional tort action for viewpoint discrimination requires some "showing" of "non-de minimis . . . injury."  *Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C. Cir. 1996), *rev'd on other grounds*, 523 U.S. 574 (1998).  Unless the alleged acts would "chill or silence a 'person of ordinary firmness' from future First Amendment activities," the claim must be dismissed.  *Id.* (citation omitted). Merely delaying consideration of an application by a few months would not have a chilling effect.  Even True the Vote does not claim that the IRS, or any individual IRS employee, *directly* interfered with the exercise of its First Amendment rights. It does not claim the alleged conduct muffled its speech in any way.  True the Vote's allegations on this topic are tellingly general, devoid of factual specificity; indeed, they say nothing about *True the Vote*'s speech at all.  *See* JA-22(¶6), JA-50-51(¶¶134, 138), JA-53(¶¶153-154).

*Data Book* 54 (2014).[10]  If each such submission is to be converted into a potential

damages action for personal liability, it should be Congress—not the courts—that

makes that decision.  Twice, Congress concluded the "costs and benefits" did not

justify a cause of action for the type of conduct True the Vote alleges.  *See* pp. 21-

22, *supra*.  This Court should not second-guess that judgment.

## II. ADDITIONAL DEFENSES MUST BE RESOLVED ON REMAND

Like the individual defendants in *Linchpins*, the Individual Defendants in

this case asserted a qualified immunity defense before the district court, *see* Dist.

Ct. Dkt. No. 63 at 13-19; Dist. Ct. Dkt. No. 64 at 33-44, that the district court did

not reach, JA-212.  To the extent the Court extends *Bivens*, the issue of immunity

should be addressed on remand.  *See* Individual Defs. Linchpins Br. 31.

Similarly, Individual Defendants Ronald Bell, Faye Ng, Janine L. Estes,

Susan Maloney, and Cindy Thomas also moved to dismiss for lack of personal

jurisdiction.  *See* Dist. Ct. Dkt. No. 64 at 11-15; Dist. Ct. Dkt. No. 63 at 6-8.  The

district court did not rule on that question, JA-212, so that defense should be

addressed on remand as well.

## <u>CONCLUSION</u>

The Court should affirm.

---

[10]  *Available at* https://www.irs.gov/pub/irs-soi/14databk.pdf (last visited Jan. 29,
2016).

30

February 5, 2016

Respectfully submitted,

/s/ Brigida Benitez
Brigida Benitez
   *Counsel of Record*
Catherine Cockerham
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 429-3000 (telephone)
(202) 429-3902 (facsimile)
bbenitez@steptoe.com

/s/ Jeffrey A. Lamken
Jeffrey A. Lamken
   *Counsel of Record*
Eric R. Nitz
MOLOLAMKEN LLP
The Watergate, Suite 660
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
(202) 556-2000 (telephone)
(202) 556-2001 (facsimile)
jlamken@mololamken.com

*Counsel for Defendants-Appellees
Steven Grodnitzky, Lois Lerner, Steven
Miller, Holly Paz, David Fish, Michael
Seto, Douglas Shulman, Cindy Thomas,
and William Wilkins*

*Counsel for Defendants-Appellees
Ronald Bell, Faye Ng, Janine L. Estes,
and Susan Maloney*

31

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), and the word limit established by this Court's Order of September 23, 2015 (Doc. No. 1574490) because this brief contains 7,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and D.C. Cir. R. 32(e)(1).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

/s/ Jeffrey A. Lamken
Jeffrey A. Lamken
MOLOLAMKEN LLP
The Watergate, Suite 660
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2000 (telephone)
(202) 556-2001 (facsimile)
jlamken@mololamken.com

*Counsel for Defendants-Appellees*
*Ronald Bell, Faye Ng, Janine L.*
*Estes, and Susan Maloney*

32

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 5, 2016, I electronically filed the foregoing Brief for the Individual Defendants-Appellees with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the CM/ECF System.  The following counsel for the Appellant and the Government Appellees will receive email notice of such filing via the CM/ECF System and/or have been served a copy of the brief by email:

Cleta Mitchell
Michael J. Lockerby
Foley & Lardner, LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C.  20007
(202) 672-5300 (telephone)
(202) 672-5399 (facsimile)
cmitchell@foley.com
mlockerby@foley.com

William E. Davis
Matthew D. Gutierrez
Foley & Lardner, LLP
One Biscayne Boulevard, Suite 1900
Miami, FL  33131
(305) 482-8404 (telephone)
(305) 482-8600 (facsimile)
wdavis@foley.com
mgutierrez@foley.com

Kaylan L. Phillips
Noel H. Johnson
Public Interest Legal Foundation
209 West Main Street
Plainfield, IN  46168
(317) 203-5599 (telephone)
(888) 815-5641 (facsimile)
kphillips@publicinterestlegal.org
njohnson@publicinterestlegal.org

John C. Eastman
Center for Constitutional Jurisprudence
Chapman University Fowler School of Law
One University Drive
Orange, CA  92866
(877) 855-3330 (telephone)
(714) 844-4817 (facsimile)
jeastman@chapman.edu

*Counsel for True the Vote*

Judith A. Hagley
Teresa E. McLaughlin
Gilbert S. Rothernberg
U.S. Department of Justice
Tax Division, Appellate Section
P.O. Box 502
Washington, D.C.  20044
(202) 514-8126 (telephone)
(202) 514-8456 (facsimile)
Judith.a.hagley@usdoj.gov
Teresa.e.mclaughlin@usdoj.gov
Gilbert.s.rothenberg@usdoj.gov

*Counsel for Appellees United States of America
and Internal Revenue Service*

34

/s/ Jeffrey A. Lamken
Jeffrey A. Lamken
MOLOLAMKEN LLP
The Watergate, Suite 660
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
(202) 556-2000 (telephone)
(202) 556-2001 (facsimile)
jlamken@mololamken.com

*Counsel for Defendants-Appellees
Ronald Bell, Faye Ng, Janine L.
Estes, and Susan Maloney*

35