**SCHEDULED FOR ORAL ARGUMENT ON APRIL 14, 2016**

**No. 14-5316**

_____

# 𝕴𝖓 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘 𝖋𝖔𝖗 𝖙𝖍𝖊 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙 𝖔𝖋 𝕮𝖔𝖑𝖚𝖒𝖇𝖎𝖆 𝕮𝖎𝖗𝖈𝖚𝖎𝖙

_____

TRUE THE VOTE, Inc.,

*Plaintiff-Appellant*,

v.

INTERNAL REVENUE SERVICE, *et al.*,

*Defendants-Appellees*.

_____

On Appeal from the United States District Court for the District of Columbia in Case No. 1:13-CV-00737-RBW (The Honorable Reggie B. Walton, Judge)

_____

## ADDENDUM TO BRIEF FOR THE INDIVIDUAL DEFENDANTS-APPELLEES

_____

Brigida Benitez
   *Counsel of Record*
Catherine Cockerham
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 429-3000 (telephone)
(202) 429-3902 (facsimile)
bbenitez@steptoe.com

*Counsel for Defendants-Appellees
Steven Grodnitzky, Lois Lerner, Steven Miller, Holly Paz, David Fish, Michael Seto, Douglas Shulman, Cindy Thomas and William Wilkins*

Jeffrey A. Lamken
   *Counsel of Record*
Eric R. Nitz
MOLOLAMKEN LLP
The Watergate, Suite 660
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
(202) 556-2000 (telephone)
(202) 556-2001 (facsimile)
jlamken@mololamken.com

*Counsel for Defendant-Appellee
Ronald Bell, Faye Ng, Janine L. Estes, and Susan Maloney*

# TABLE OF CONTENTS

**Statute**                                                                                    **Page**

U.S. Const. amend. I ...................................................................................1a

U.S. Const. amend. V ..................................................................................1a

5 U.S.C. § 701 ...........................................................................................2a

5 U.S.C. § 702 ...........................................................................................3a

5 U.S.C. § 703 ...........................................................................................3a

5 U.S.C. § 704 ...........................................................................................3a

5 U.S.C. § 705 ...........................................................................................4a

5 U.S.C. § 706 ...........................................................................................4a

26 U.S.C. § 501 .........................................................................................6a

26 U.S.C. § 508 .........................................................................................7a

26 U.S.C. § 6212 .......................................................................................9a

26 U.S.C. § 6213 .......................................................................................11a

26 U.S.C. § 7422 .......................................................................................17a

26 U.S.C. § 7426 .......................................................................................21a

26 U.S.C. § 7428 .......................................................................................25a

26 U.S.C. § 7429 .......................................................................................27a

26 U.S.C. § 7431 .......................................................................................31a

26 U.S.C. § 7432 .......................................................................................33a

26 U.S.C. § 7433 .......................................................................................34a

26 U.S.C. § 7433A .....................................................................................36a

26 U.S.C. § 7434 .......................................................................................36a

i

26 U.S.C. § 7435 ...................................................................37a

26 C.F.R. § 1.501(c)(3)-1 ...................................................39a

26 C.F.R. § 1.501(c)(4)-1 ...................................................58a

1.     The United States Constitution provides in relevant part as follows:

**Amendment I. Freedom of Religion, Speech and Press; Peaceful Assemblage; Petition of Grievances**

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

**Amendment V. Grand Jury Indictment for Capital Crimes; Double Jeopardy; Self-Incrimination; Due Process of Law; Takings without Just Compensation**

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

2.    Title 5 of the United States Code, Government Organization and Employees, provides in relevant part as follows:

## §701. Applications; definitions

(a) This chapter applies, according to the provisions thereof, except to the extent that—

(1) statutes preclude judicial review; or

(2) agency action is committed to agency discretion by law.

(b) For the purpose of this chapter—

(1) "agency" means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include—

(A) the Congress;

(B) the courts of the United States;

(C) the governments of the territories or possessions of the United States;

(D) the government of the District of Columbia;

(E) agencies composed of representatives of the parties or of representatives of organizations of the parties to the disputes determined by them;

(F) courts martial and military commissions;

(G) military authority exercised in the field in time of war or in occupied territory; or

(H) functions conferred by sections 1738, 1739, 1743, and 1744 of title 12; subchapter II of chapter 471 of title 49; or sections 1884, 1891-1902, and former section 1641(b)(2), of title 50, appendix; and

(2) "person", "rule", "order", "license", "sanction", "relief", and "agency action" have the meanings given them by section 551 of this title.

2a

## § 702. Right of review

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

## § 703. Form and venue of proceeding

The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction. If no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer. Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement.

## § 704. Actions reviewable

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless

the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

## § 705. Relief pending review

When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

## § 706. Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

4a

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

3.      Title 26 of the United States Code, Internal Revenue Code, provides in relevant part as follows:

**§ 501. Exemption from tax on corporations, certain trusts, etc.**

(a) EXEMPTION FROM TAXATION.—An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503.

(b) TAX ON UNRELATED BUSINESS INCOME AND CERTAIN OTHER ACTIVITIES.— An organization exempt from taxation under subsection (a) shall be subject to tax to the extent provided in parts II, III, and VI of this subchapter, but (notwithstanding parts II, III, and VI of this subchapter) shall be considered an organization exempt from income taxes for the purpose of any law which refers to organizations exempt from income taxes.

(c) LIST OF EXEMPT ORGANIZATIONS.—The following organizations are referred to in subsection (a):

* * *

(3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office.

(4)(A) Civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare, or local associations of employees, the membership of which is limited to the employees of a designated person or persons in a particular municipality, and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes.

(B) Subparagraph (A) shall not apply to an entity unless no part of the net earnings of such entity inures to the benefit of any private shareholder or individual.

## §508. Special rules with respect to section 501(c)(3) organization

(a) NEW ORGANIZATIONS MUST NOTIFY SECRETARY THAT THEY ARE APPLYING FOR RECOGNITION OF SECTION 501(C)(3) STATUS.—Except as provided in subsection (c), an organization organized after October 9, 1969, shall not be treated as an organization described in section 501(c)(3)—

(1) unless it has given notice to the Secretary, in such manner as the Secretary may by regulations prescribe, that it is applying for recognition of such status, or

(2) for any period before the giving of such notice, if such notice is given after the time prescribed by the Secretary by regulations for giving notice under this subsection.

(b) PRESUMPTION THAT ORGANIZATIONS ARE PRIVATE FOUNDATIONS.— Except as provided in subsection (c), any organization (including an organization in existence on October 9, 1969) which is described in section 501(c)(3) and which does not notify the Secretary, at such time and in such manner as the Secretary may by regulations prescribe, that it is not a private foundation shall be presumed to be a private foundation.

(c) EXCEPTIONS.—

(1) MANDATORY EXCEPTIONS.—Subsections (a) and (b) shall not apply to—

(A) churches, their integrated auxiliaries, and conventions or associations of churches, or

(B) any organization which is not a private foundation (as defined in section 509(a)) and the gross receipts of which in each taxable year are normally not more than $5,000.

(2) EXCEPTIONS BY REGULATIONS.—The Secretary may by regulations exempt (to the extent and subject to such conditions as may be prescribed in such regulations) from the provisions of subsection (a) or (b) or both—

(A) educational organizations described in section 170(b)(1)(A)(ii), and

(B) any other class of organizations with respect to which the Secretary determines that full compliance with the provisions of subsections (a) and (b) is not necessary to the efficient administration of the provisions of this title relating to private foundations.

(d) DISALLOWANCE OF CERTAIN CHARITABLE, ETC., DEDUCTIONS.—

(1) GIFT OR BEQUEST TO ORGANIZATIONS SUBJECT TO SECTION 507(C) TAX.—No gift or bequest made to an organization upon which the tax provided by section 507(c) has been imposed shall be allowed as a deduction under section 170, 545(b)(2), 642(c), 2055, 2106(a)(2), or 2522, if such gift or bequest is made—

(A) by any person after notification is made under section 507(a), or

(B) by a substantial contributor (as defined in section 507(d)(2)) in his taxable year which includes the first day on which action is taken by such organization which culminates in the imposition of tax under section 507(c) and any subsequent taxable year.

(2) GIFT OR BEQUEST TO TAXABLE PRIVATE FOUNDATION, SECTION 4947 TRUST, ETC.—No gift or bequest made to an organization shall be allowed as a deduction under section 170, 545(b)(2), 642(c), 2055, 2106(a)(2), or 2522, if such gift or bequest is made—

(A) to a private foundation or a trust described in section 4947 in a taxable year for which it fails to meet the requirements of subsection (e) (determined without regard to subsection (e)(2)), or

(B) to any organization in a period for which it is not treated as an organization described in section 501(c)(3) by reason of subsection (a).

(3) EXCEPTION.—Paragraph (1) shall not apply if the entire amount of the unpaid portion of the tax imposed by section 507(c) is abated by the Secretary under section 507(g).

(e) GOVERNING INSTRUMENTS.—

8a

(1) GENERAL RULE.—A private foundation shall not be exempt from taxation under section 501(a) unless its governing instrument includes provisions the effects of which are—

(A) to require its income for each taxable year to be distributed at such time and in such manner as not to subject the foundation to tax under section 4942, and

(B) to prohibit the foundation from engaging in any act of self-dealing (as defined in section 4941(d)), from retaining any excess business holdings (as defined in section 4943(c)), from making any investments in such manner as to subject the foundation to tax under section 4944, and from making any taxable expenditures (as defined in section 4945(d)).

(2) SPECIAL RULES FOR EXISTING PRIVATE FOUNDATIONS.—In the case of any organization organized before January 1, 1970, paragraph (1) shall not apply—

(A) to any period after December 31, 1971, during the pendency of any judicial proceeding begun before January 1, 1972, by the private foundation which is necessary to reform, or to excuse such foundation from compliance with, its governing instrument or any other instrument in order to meet the requirements of paragraph (1), and

(B) to any period after the termination of any judicial proceeding described in subparagraph (A) during which its governing instrument or any other instrument does not permit it to meet the requirements of paragraph (1).

(f) ADDITIONAL PROVISIONS RELATING TO SPONSORING ORGANIZATIONS.—A sponsoring organization (as defined in section 4966(d)(1)) shall give notice to the Secretary (in such manner as the Secretary may provide) whether such organization maintains or intends to maintain donor advised funds (as defined in section 4966(d)(2)) and the manner in which such organization plans to operate such funds.

## §6212. Notice of deficiency

(a) IN GENERAL.—If the Secretary determines that there is a deficiency in respect of any tax imposed by subtitles A or B or chapter 41, 42, 43, or 44, he is

authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail. Such notice shall include a notice to the taxpayer of the taxpayer's right to contact a local office of the taxpayer advocate and the location and phone number of the appropriate office.

(b) ADDRESS FOR NOTICE OF DEFICIENCY.—

(1) Income and gift taxes and certain excise taxes.—In the absence of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, notice of a deficiency in respect of a tax imposed by subtitle A, chapter 12, chapter 41, chapter 42, chapter 43, or chapter 44, if mailed to the taxpayer at his last known address, shall be sufficient for purposes of subtitle A, chapter 12, chapter 41, chapter 42, chapter 43, chapter 44, and this chapter even if such taxpayer is deceased, or is under a legal disability, or, in the case of a corporation, has terminated its existence.

(2) JOINT INCOME TAX RETURN.—In the case of a joint income tax return filed by husband and wife, such notice of deficiency may be a single joint notice, except that if the Secretary has been notified by either spouse that separate residences have been established, then, in lieu of the single joint notice, a duplicate original of the joint notice shall be sent by certified mail or registered mail to each spouse at his last known address.

(3) ESTATE TAX.—In the absence of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, notice of a deficiency in respect of a tax imposed by chapter 11, if addressed in the name of the decedent or other person subject to liability and mailed to his last known address, shall be sufficient for purposes of chapter 11 and of this chapter.

(c) FURTHER DEFICIENCY LETTERS RESTRICTED.—

(1) GENERAL RULE.—If the Secretary has mailed to the taxpayer a notice of deficiency as provided in subsection (a), and the taxpayer files a petition with the Tax Court within the time prescribed in section 6213(a), the Secretary shall have no right to determine any additional deficiency of income tax for the same taxable year, of gift tax for the same calendar year, of estate tax in respect of the taxable estate of the same decedent, of chapter 41 tax for the same taxable year, of chapter 43 tax for the same taxable year, of chapter 44 tax for the same taxable year, of section 4940 tax for the same taxable year, or of chapter 42 tax (other than under section 4940) with

respect to any act (or failure to act) to which such petition relates, except in the case of fraud, and except as provided in section 6214(a) (relating to assertion of greater deficiencies before the Tax Court), in section 6213(b)(1) (relating to mathematical or clerical errors), in section 6851 or 6852 (relating to termination assessments), or in section 6861(c) (relating to the making of jeopardy assessments).

  (2) CROSS REFERENCES.—

    For assessment as a deficiency notwithstanding the prohibition of further deficiency letters, in the case of—

    (A) Deficiency attributable to change of treatment with respect to itemized deductions, see section 63(e)(3).

    (B) Deficiency attributable to gain on involuntary conversion, see section 1033(a)(2)(C) and (D).

    (C) Deficiency attributable to activities not engaged in for profit, see section 183(e)(4).

    For provisions allowing determination of tax in Title 11 cases, see section 505(a) of Title 11 of the United States Code.

 (d) AUTHORITY TO RESCIND NOTICE OF DEFICIENCY WITH TAXPAYER'S CONSENT.—The Secretary may, with the consent of the taxpayer, rescind any notice of deficiency mailed to the taxpayer. Any notice so rescinded shall not be treated as a notice of deficiency for purposes of subsection (c)(1) (relating to further deficiency letters restricted), section 6213(a) (relating to restrictions applicable to deficiencies; petition to Tax Court), and section 6512(a) (relating to limitations in case of petition to Tax Court), and the taxpayer shall have no right to file a petition with the Tax Court based on such notice. Nothing in this subsection shall affect any suspension of the running of any period of limitations during any period during which the rescinded notice was outstanding.

## § 6213. Restrictions applicable to deficiencies; petition to Tax Court

 (a) TIME FOR FILING PETITION AND RESTRICTION ON ASSESSMENT.—Within 90 days, or 150 days if the notice is addressed to a person outside the United States, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the

deficiency. Except as otherwise provided in section 6851, 6852 or 6861, no assessment of a deficiency in respect of any tax imposed by subtitle A, or B, chapter 41, 42, 43, or 44 and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 7421(a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court, including the Tax Court, and a refund may be ordered by such court of any amount collected within the period during which the Secretary is prohibited from collecting by levy or through a proceeding in court under the provisions of this subsection. The Tax Court shall have no jurisdiction to enjoin any action or proceeding or order any refund under this subsection unless a timely petition for a redetermination of the deficiency has been filed and then only in respect of the deficiency that is the subject of such petition. Any petition filed with the Tax Court on or before the last date specified for filing such petition by the Secretary in the notice of deficiency shall be treated as timely filed.

(b) EXCEPTIONS TO RESTRICTIONS ON ASSESSMENT.—

(1) ASSESSMENTS ARISING OUT OF MATHEMATICAL OR CLERICAL ERRORS.—If the taxpayer is notified that, on account of a mathematical or clerical error appearing on the return, an amount of tax in excess of that shown on the return is due, and that an assessment of the tax has been or will be made on the basis of what would have been the correct amount of tax but for the mathematical or clerical error, such notice shall not be considered as a notice of deficiency for the purposes of subsection (a) (prohibiting assessment and collection until notice of the deficiency has been mailed), or of section 6212(c)(1) (restricting further deficiency letters), or of section 6512(a) (prohibiting credits or refunds after petition to the Tax Court), and the taxpayer shall have no right to file a petition with the Tax Court based on such notice, nor shall such assessment or collection be prohibited by the provisions of subsection (a) of this section. Each notice under this paragraph shall set forth the error alleged and an explanation thereof.

(2) ABATEMENT OF ASSESSMENT OF MATHEMATICAL OR CLERICAL ERRORS.—

(A) REQUEST FOR ABATEMENT.—Notwithstanding section 6404(b), a taxpayer may file with the Secretary within 60 days after

notice is sent under paragraph (1) a request for an abatement of any assessment specified in such notice, and upon receipt of such request, the Secretary shall abate the assessment. Any reassessment of the tax with respect to which an abatement is made under this subparagraph shall be subject to the deficiency procedures prescribed by this subchapter.

(B) STAY OF COLLECTION.—In the case of any assessment referred to in paragraph (1), notwithstanding paragraph (1), no levy or proceeding in court for the collection of such assessment shall be made, begun, or prosecuted during the period in which such assessment may be abated under this paragraph.

(3) ASSESSMENTS ARISING OUT OF TENTATIVE CARRYBACK OR REFUND ADJUSTMENTS.—If the Secretary determines that the amount applied, credited, or refunded under section 6411 is in excess of the overassessment attributable to the carryback or the amount described in section 1341(b)(1) with respect to which such amount was applied, credited, or refunded, he may assess without regard to the provisions of paragraph (2) the amount of the excess as a deficiency as if it were due to a mathematical or clerical error appearing on the return.

(4) ASSESSMENT OF AMOUNT PAID.—Any amount paid as a tax or in respect of a tax may be assessed upon the receipt of such payment notwithstanding the provisions of subsection (a). In any case where such amount is paid after the mailing of a notice of deficiency under section 6212, such payment shall not deprive the Tax Court of jurisdiction over such deficiency determined under section 6211 without regard to such assessment.

(5) CERTAIN ORDERS OF CRIMINAL RESTITUTION.—If the taxpayer is notified that an assessment has been or will be made pursuant to section 6201(a)(4)—

(A) such notice shall not be considered as a notice of deficiency for the purposes of subsection (a) (prohibiting assessment and collection until notice of the deficiency has been mailed), section 6212(c)(1) (restricting further deficiency letters), or section 6512(a) (prohibiting credits or refunds after petition to the Tax Court), and

(B) subsection (a) shall not apply with respect to the amount of such assessment.

(c) FAILURE TO FILE PETITION.—If the taxpayer does not file a petition with the Tax Court within the time prescribed in subsection (a), the deficiency, notice of which has been mailed to the taxpayer, shall be assessed, and shall be paid upon notice and demand from the Secretary.

(d) WAIVER OF RESTRICTIONS.—The taxpayer shall at any time (whether or not a notice of deficiency has been issued) have the right, by a signed notice in writing filed with the Secretary, to waive the restrictions provided in subsection (a) on the assessment and collection of the whole or any part of the deficiency.

(e) SUSPENSION OF FILING PERIOD FOR CERTAIN EXCISE TAXES.—The running of the time prescribed by subsection (a) for filing a petition in the Tax Court with respect to the taxes imposed by section 4941 (relating to taxes on self-dealing), 4942 (relating to taxes on failure to distribute income), 4943 (relating to taxes on excess business holdings), 4944 (relating to investments which jeopardize charitable purpose), 4945 (relating to taxes on taxable expenditures), 4951 (relating to taxes on self-dealing), or 4952 (relating to taxes on taxable expenditures), 4955 (relating to taxes on political expenditures), 4958 (relating to private excess benefit), 4971 (relating to excise taxes on failure to meet minimum funding standard), 4975 (relating to excise taxes on prohibited transactions) shall be suspended for any period during which the Secretary has extended the time allowed for making correction under section 4963(e).

(f) COORDINATION WITH TITLE 11.—

(1) SUSPENSION OF RUNNING OF PERIOD FOR FILING PETITION IN TITLE 11 CASES.—In any case under Title 11 of the United States Code, the running of the time prescribed by subsection (a) for filing a petition in the Tax Court with respect to any deficiency shall be suspended for the period during which the debtor is prohibited by reason of such case from filing a petition in the Tax Court with respect to such deficiency, and for 60 days thereafter.

(2) CERTAIN ACTION NOT TAKEN INTO ACCOUNT.—For purposes of the second and third sentences of subsection (a), the filing of a proof of claim or request for payment (or the taking of any other action) in a case under Title 11 of the United States Code shall not be treated as action prohibited by such second sentence.

(g) DEFINITIONS.—For purposes of this section—

(1) RETURN.—The term "return" includes any return, statement, schedule, or list, and any amendment or supplement thereto, filed with respect to any tax imposed by subtitle A or B, or chapter 41, 42, 43, or 44.

(2) MATHEMATICAL OR CLERICAL ERROR.—The term "mathematical or clerical error" means—

(A) an error in addition, subtraction, multiplication, or division shown on any return,

(B) an incorrect use of any table provided by the Internal Revenue Service with respect to any return if such incorrect use is apparent from the existence of other information on the return,

(C) an entry on a return of an item which is inconsistent with another entry of the same or another item on such return,

(D) an omission of information which is required to be supplied on the return to substantiate an entry on the return,

(E) an entry on a return of a deduction or credit in an amount which exceeds a statutory limit imposed by subtitle A or B, or chapter 41, 42, 43, or 44, if such limit is expressed—

(i) as a specified monetary amount, or

(ii) as a percentage, ratio, or fraction, and if the items entering into the application of such limit appear on such return,

(F) an omission of a correct taxpayer identification number required under section 32 (relating to the earned income credit) to be included on a return,

(G) an entry on a return claiming the credit under section 32 with respect to net earnings from self-employment described in section 32(c)(2)(A) to the extent the tax imposed by section 1401 (relating to self-employment tax) on such net earnings has not been paid,

(H) an omission of a correct TIN required under section 21 (relating to expenses for household and dependent care services

necessary for gainful employment) or section 151 (relating to allowance of deductions for personal exemptions),

(I) an omission of a correct TIN required under section 24(e) (relating to child tax credit) to be included on a return,

(J) an omission of a correct TIN required under section 25A(g)(1) (relating to higher education tuition and related expenses) to be included on a return,

(K) an omission of information required by section 32(k)(2) (relating to taxpayers making improper prior claims of earned income credit),

(L) the inclusion on a return of a TIN required to be included on the return under section 21, 24, or 32 if—

(i) such TIN is of an individual whose age affects the amount of the credit under such section, and

(ii) the computation of the credit on the return reflects the treatment of such individual as being of an age different from the individual's age based on such TIN,

(M) the entry on the return claiming the credit under section 32 with respect to a child if, according to the Federal Case Registry of Child Support Orders established under section 453(h) of the Social Security Act, the taxpayer is a noncustodial parent of such child, and

(N) an omission of any increase required under section 36(f) with respect to the recapture of a credit allowed under section 36.

[(O) Redesignated (N)]

[(P) Repealed. Pub.L. 113-295, Div. A, Title II, §221(a)(4), Dec. 19, 2014, 128 Stat. 4037]

[(Q) Repealed. Pub.L. 113-295, Div. A, Title II, §221(a)(112)(C), Dec. 19, 2014, 128 Stat. 4054]

A taxpayer shall be treated as having omitted a correct TIN for purposes of the preceding sentence if information provided by the taxpayer

on the return with respect to the individual whose TIN was provided differs from the information the Secretary obtains from the person issuing the TIN.

(h) CROSS REFERENCES.—

(1) For assessment as if a mathematical error on the return, in the case of erroneous claims for income tax prepayment credits, see section 6201(a)(3).

(2) For assessments without regard to restrictions imposed by this section in the case of—

(A) Recovery of foreign income taxes, see section 905(c).

(B) Recovery of foreign estate tax, see section 2016.

(3) For provisions relating to application of this subchapter in the case of certain partnership items, etc., see section 6230(a).

## § 7422. Civil actions for refund

(a) NO SUIT PRIOR TO FILING CLAIM FOR REFUND.—No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

(b) PROTEST OR DURESS.—Such suit or proceeding may be maintained whether or not such tax, penalty, or sum has been paid under protest or duress.

(c) SUITS AGAINST COLLECTION OFFICER A BAR.—A suit against any officer or employee of the United States (or former officer or employee) or his personal representative for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected shall be treated as if the United States had been a party to such suit in applying the doctrine of res judicata in all suits in respect of any internal revenue tax, and in all proceedings in the Tax Court and on review of decisions of the Tax Court.

(d) CREDIT TREATED AS PAYMENT.—The credit of an overpayment of any tax in satisfaction of any tax liability shall, for the purpose of any suit for refund of such tax liability so satisfied, be deemed to be a payment in respect of such tax liability at the time such credit is allowed.

(e) STAY OF PROCEEDINGS.—If the Secretary prior to the hearing of a suit brought by a taxpayer in a district court or the United States Court of Federal Claims for the recovery of any income tax, estate tax, gift tax, or tax imposed by chapter 41, 42, 43, or 44 (or any penalty relating to such taxes) mails to the taxpayer a notice that a deficiency has been determined in respect of the tax which is the subject matter of taxpayer's suit, the proceedings in taxpayer's suit shall be stayed during the period of time in which the taxpayer may file a petition with the Tax Court for a redetermination of the asserted deficiency, and for 60 days thereafter. If the taxpayer files a petition with the Tax Court, the district court or the United States Court of Federal Claims, as the case may be, shall lose jurisdiction of taxpayer's suit to whatever extent jurisdiction is acquired by the Tax Court of the subject matter of taxpayer's suit for refund. If the taxpayer does not file a petition with the Tax Court for a redetermination of the asserted deficiency, the United States may counterclaim in the taxpayer's suit, or intervene in the event of a suit as described in subsection (c) (relating to suits against officers or employees of the United States), within the period of the stay of proceedings notwithstanding that the time for such pleading may have otherwise expired. The taxpayer shall have the burden of proof with respect to the issues raised by such counterclaim or intervention of the United States except as to the issue of whether the taxpayer has been guilty of fraud with intent to evade tax. This subsection shall not apply to a suit by a taxpayer which, prior to the date of enactment of this title, is commenced, instituted, or pending in a district court or the United States Court of Federal Claims for the recovery of any income tax, estate tax, or gift tax (or any penalty relating to such taxes).

(f) LIMITATION ON RIGHT OF ACTION FOR REFUND.—

(1) GENERAL RULE.—A suit or proceeding referred to in subsection (a) may be maintained only against the United States and not against any officer or employee of the United States (or former officer or employee) or his personal representative. Such suit or proceeding may be maintained against the United States notwithstanding the provisions of section 2502 of Title 28 of the United States Code (relating to aliens' privilege to sue) and notwithstanding the provisions of section 1502 of such Title 28 (relating to certain treaty cases).

18a

(2) MISJOINDER AND CHANGE OF VENUE.—If a suit or proceeding brought in a United States district court against an officer or employee of the United States (or former officer or employee) or his personal representative is improperly brought solely by virtue of paragraph (1), the court shall order, upon such terms as are just, that the pleadings be amended to substitute the United States as a party for such officer or employee as of the time such action commenced, upon proper service of process on the United States. Such suit or proceeding shall upon request by the United States be transferred to the district or division where it should have been brought if such action initially had been brought against the United States.

(g) SPECIAL RULES FOR CERTAIN EXCISE TAXES IMPOSED BY CHAPTER 42 OR 43.—

(1) RIGHT TO BRING ACTIONS.—

(A) IN GENERAL.—With respect to any taxable event, payment of the full amount of the first tier tax shall constitute sufficient payment in order to maintain an action under this section with respect to the second tier tax.

(B) DEFINITIONS.—For purposes of subparagraph (A), the terms "taxable event", "first tier tax", and "second tier tax" have the respective meanings given to such terms by section 4963.

(2) LIMITATION ON SUIT FOR REFUND.—No suit may be maintained under this section for the credit or refund of any tax imposed under section 4941, 4942, 4943, 4944, 4945, 4951, 4952, 4955, 4958, 4971, or 4975 with respect to any act (or failure to act) giving rise to liability for tax under such sections, unless no other suit has been maintained for credit or refund of, and no petition has been filed in the Tax Court with respect to a deficiency in, any other tax imposed by such sections with respect to such act (or failure to act).

(3) FINAL DETERMINATION OF ISSUES.—For purposes of this section, any suit for the credit or refund of any tax imposed under section 4941, 4942, 4943, 4944, 4945, 4951, 4952, 4955, 4958, 4971, or 4975 with respect to any act (or failure to act) giving rise to liability for tax under such sections, shall constitute a suit to determine all questions with respect to any other tax imposed with respect to such act (or failure to act) under such

sections, and failure by the parties to such suit to bring any such question before the Court shall constitute a bar to such question.

(h) SPECIAL RULE FOR ACTIONS WITH RESPECT TO PARTNERSHIP ITEMS.—No action may be brought for a refund attributable to partnership items (as defined in section 6231(a)(3)) except as provided in section 6228(b) or section 6230(c).

(i) SPECIAL RULE FOR ACTIONS WITH RESPECT TO TAX SHELTER PROMOTER AND UNDERSTATEMENT PENALTIES.—No action or proceeding may be brought in the United States Court of Federal Claims for any refund or credit of a penalty imposed by section 6700 (relating to penalty for promoting abusive tax shelters, etc.) or section 6701 (relating to penalties for aiding and abetting understatement of tax liability).

(j) SPECIAL RULE FOR ACTIONS WITH RESPECT TO ESTATES FOR WHICH AN ELECTION UNDER SECTION 6166 IS MADE.—

(1) IN GENERAL.—The district courts of the United States and the United States Court of Federal Claims shall not fail to have jurisdiction over any action brought by the representative of an estate to which this subsection applies to determine the correct amount of the estate tax liability of such estate (or for any refund with respect thereto) solely because the full amount of such liability has not been paid by reason of an election under section 6166 with respect to such estate.

(2) ESTATES TO WHICH SUBSECTION APPLIES.—This subsection shall apply to any estate if, as of the date the action is filed—

(A) no portion of the installments payable under section 6166 have been accelerated;

(B) all such installments the due date for which is on or before the date the action is filed have been paid;

(C) there is no case pending in the Tax Court with respect to the tax imposed by section 2001 on the estate and, if a notice of deficiency under section 6212 with respect to such tax has been issued, the time for filing a petition with the Tax Court with respect to such notice has expired; and

(D) no proceeding for declaratory judgment under section 7479 is pending.

(3) PROHIBITION ON COLLECTION OF DISALLOWED LIABILITY.—If the court redetermines under paragraph (1) the estate tax liability of an estate, no part of such liability which is disallowed by a decision of such court which has become final may be collected by the Secretary, and amounts paid in excess of the installments determined by the court as currently due and payable shall be refunded.

(k) CROSS REFERENCES.—

(1) For provisions relating generally to claims for refund or credit, see chapter 65 (relating to abatements, credit, and refund) and chapter 66 (relating to limitations).

(2) For duty of United States attorneys to defend suits, see section 507 of Title 28 of the United States Code.

(3) For jurisdiction of United States district courts, see section 1346 of Title 28 of the United States Code.

(4) For payment by the Treasury of judgments against internal revenue officers or employees, upon certificate of probable cause, see section 2006 of Title 28 of the United States Code.

## §7426. Civil actions by persons other than taxpayers

(a) ACTIONS PERMITTED.—

(1) WRONGFUL LEVY.—If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary.

(2) SURPLUS PROCEEDS.—If property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property junior to that of the United States and to be legally entitled to the surplus proceeds of such sale may bring a civil action against the United States in a district court of the United States.

(3) SUBSTITUTED SALE PROCEEDS.—If property has been sold pursuant to an agreement described in section 6325(b)(3) (relating to substitution of proceeds of sale), any person who claims to be legally entitled to all or any part of the amount held as a fund pursuant to such agreement may bring a civil action against the United States in a district court of the United States.

(4) SUBSTITUTION OF VALUE.—If a certificate of discharge is issued to any person under section 6325(b)(4) with respect to any property, such person may, within 120 days after the day on which such certificate is issued, bring a civil action against the United States in a district court of the United States for a determination of whether the value of the interest of the United States (if any) in such property is less than the value determined by the Secretary. No other action may be brought by such person for such a determination.

(b) ADJUDICATION.—The district court shall have jurisdiction to grant only such of the following forms of relief as may be appropriate in the circumstances:

(1) INJUNCTION.—If a levy or sale would irreparably injure rights in property which the court determines to be superior to rights of the United States in such property, the court may grant an injunction to prohibit the enforcement of such levy or to prohibit such sale.

(2) RECOVERY OF PROPERTY.—If the court determines that such property has been wrongfully levied upon, the court may—

(A) order the return of specific property if the United States is in possession of such property;

(B) grant a judgment for the amount of money levied upon; or

(C) if such property was sold, grant a judgment for an amount not exceeding the greater of—

(i) the amount received by the United States from the sale of such property, or

(ii) the fair market value of such property immediately before the levy.

For the purposes of subparagraph (C), if the property was declared purchased by the United States at a sale pursuant to section

6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(3) SURPLUS PROCEEDS.—If the court determines that the interest or lien of any party to an action under this section was transferred to the proceeds of a sale of such property, the court may grant a judgment in an amount equal to all or any part of the amount of the surplus proceeds of such sale.

(4) SUBSTITUTED SALE PROCEEDS.—If the court determines that a party has an interest in or lien on the amount held as a fund pursuant to an agreement described in section 6325(b)(3) (relating to substitution of proceeds of sale), the court may grant a judgment in an amount equal to all or any part of the amount of such fund.

(5) SUBSTITUTION OF VALUE.—If the court determines that the Secretary's determination of the value of the interest of the United States in the property for purposes of section 6325(b)(4) exceeds the actual value of such interest, the court shall grant a judgment ordering a refund of the amount deposited, and a release of the bond, to the extent that the aggregate of the amounts thereof exceeds such value determined by the court.

(c) VALIDITY OF ASSESSMENT.—For purposes of an adjudication under this section, the assessment of tax upon which the interest or lien of the United States is based shall be conclusively presumed to be valid.

(d) LIMITATION ON RIGHTS OF ACTION.—No action may be maintained against any officer or employee of the United States (or former officer or employee) or his personal representative with respect to any acts for which an action could be maintained under this section.

(e) SUBSTITUTION OF UNITED STATES AS PARTY.—If an action, which could be brought against the United States under this section, is improperly brought against any officer or employee of the United States (or former officer or employee) or his personal representative, the court shall order, upon such terms as are just, that the pleadings be amended to substitute the United States as a party for such officer or employee as of the time such action was commenced upon proper service of process on the United States.

23a

(f) PROVISION INAPPLICABLE.—The provisions of section 7422(a) (relating to prohibition of suit prior to filing claim for refund) shall not apply to actions under this section.

(g) INTEREST.—Interest shall be allowed at the overpayment rate established under section 6621—

(1) in the case of a judgment pursuant to subsection (b)(2)(B), from the date the Secretary receives the money wrongfully levied upon to the date of payment of such judgment;

(2) in the case of a judgment pursuant to subsection (b)(2)(C), from the date of the sale of the property wrongfully levied upon to the date of payment of such judgment; and

(3) in the case of a judgment pursuant to subsection (b)(5) which orders a refund of any amount, from the date the Secretary received such amount to the date of payment of such judgment.

(h) RECOVERY OF DAMAGES PERMITTED IN CERTAIN CASES.—

(1) IN GENERAL.—Notwithstanding subsection (b), if, in any action brought under this section, there is a finding that any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregarded any provision of this title the defendant shall be liable to the plaintiff in an amount equal to the lesser of $1,000,000 ($100,000 in the case of negligence) or the sum of—

(A) actual, direct economic damages sustained by the plaintiff as a proximate result of the reckless or intentional or negligent disregard of any provision of this title by the officer or employee (reduced by any amount of such damages awarded under subsection (b)); and

(B) the costs of the action.

(2) REQUIREMENT THAT ADMINISTRATIVE REMEDIES BE EXHAUSTED; MITIGATION; PERIOD.—The rules of section 7433(d) shall apply for purposes of this subsection.

(3) PAYMENT AUTHORITY.—Claims pursuant to this section shall be payable out of funds appropriated under section 1304 of title 31, United States Code.

(i) CROSS REFERENCE.—

For period of limitation, see section 6532(c).

## §7428. Declaratory judgments relating to status and classification of organizations under section 501(c)(3), etc.

(a) CREATION OF REMEDY.—In a case of actual controversy involving—

(1) a determination by the Secretary—

(A) with respect to the initial qualification or continuing qualification of an organization as an organization described in section 501(c)(3) which is exempt from tax under section 501(a) or as an organization described in section 170(c)(2),

(B) with respect to the initial classification or continuing classification of an organization as a private foundation (as defined in section 509(a)),

(C) with respect to the initial classification or continuing classification of an organization as a private operating foundation (as defined in section 4942(j)(3)), or

(D) with respect to the initial classification or continuing classification of a cooperative as an organization described in section 521(b) which is exempt from tax under section 521(a), or

(2) a failure by the Secretary to make a determination with respect to an issue referred to in paragraph (1),

upon the filing of an appropriate pleading, the United States Tax Court, the United States Court of Federal Claims, or the district court of the United States for the District of Columbia may make a declaration with respect to such initial qualification or continuing qualification or with respect to such initial classification or continuing classification. Any such declaration shall have the force and effect of a decision of the Tax Court or a final judgment or decree of the district court or the Court of Federal Claims, as the case may be, and shall be reviewable as such. For purposes of this section, a determination with respect to a continuing qualification

or continuing classification includes any revocation of or other change in a qualification or classification.

(b) LIMITATIONS.—

(1) PETITIONER.—A pleading may be filed under this section only by the organization the qualification or classification of which is at issue.

(2) EXHAUSTION OF ADMINISTRATIVE REMEDIES.—A declaratory judgment or decree under this section shall not be issued in any proceeding unless the Tax Court, the Court of Federal Claims, or the district court of the United States for the District of Columbia determines that the organization involved has exhausted administrative remedies available to it within the Internal Revenue Service. An organization requesting the determination of an issue referred to in subsection (a)(1) shall be deemed to have exhausted its administrative remedies with respect to a failure by the Secretary to make a determination with respect to such issue at the expiration of 270 days after the date on which the request for such determination was made if the organization has taken, in a timely manner, all reasonable steps to secure such determination.

(3) TIME FOR BRINGING ACTION.—If the Secretary sends by certified or registered mail notice of his determination with respect to an issue referred to in subsection (a)(1) to the organization referred to in paragraph (1), no proceeding may be initiated under this section by such organization unless the pleading is filed before the 91st day after the date of such mailing.

(4) NONAPPLICATION FOR CERTAIN REVOCATIONS.—No action may be brought under this section with respect to any revocation of status described in section 6033(j)(1).

(c) VALIDATION OF CERTAIN CONTRIBUTIONS MADE DURING PENDENCY OF PROCEEDINGS.—

(1) IN GENERAL.—If—

(A) the issue referred to in subsection (a)(1) involves the revocation of a determination that the organization is described in section 170(c)(2),

(B) a proceeding under this section is initiated within the time provided by subsection (b)(3), and

(C) either—

    (i) a decision of the Tax Court has become final (within the meaning of section 7481), or

    (ii) a judgment of the district court of the United States for the District of Columbia has been entered, or

    (iii) a judgment of the Court of Federal Claims has been entered,

and such decision or judgment, as the case may be, determines that the organization was not described in section 170(c)(2),

then, notwithstanding such decision or judgment, such organization shall be treated as having been described in section 170(c)(2) for purposes of section 170 for the period beginning on the date on which the notice of the revocation was published and ending on the date on which the court first determined in such proceeding that the organization was not described in section 170(c)(2).

(2) LIMITATION.—Paragraph (1) shall apply only—

    (A) with respect to individuals, and only to the extent that the aggregate of the contributions made by any individual to or for the use of the organization during the period specified in paragraph (1) does not exceed $1,000 (for this purpose treating a husband and wife as one contributor), and

    (B) with respect to organizations described in section 170(c)(2) which are exempt from tax under section 501(a) (for this purpose excluding any such organization with respect to which there is pending a proceeding to revoke the determination under section 170(c)(2)).

(3) EXCEPTION.—This subsection shall not apply to any individual who was responsible, in whole or in part, for the activities (or failures to act) on the part of the organization which were the basis for the revocation.

(d) SUBPOENA POWER FOR DISTRICT COURT FOR DISTRICT OF COLUMBIA.—In any action brought under this section in the district court of the United States for

the District of Columbia, a subpoena requiring the attendance of a witness at a trial or hearing may be served at any place in the United States.

### §7429. Review of jeopardy levy or assessment procedures

(a) ADMINISTRATIVE REVIEW

    (1) ADMINISTRATIVE REVIEW

        (A) PRIOR APPROVAL REQUIRED.—No assessment may be made under section 6851(a), 6852(a), 6861(a), or 6862, and no levy may be made under section 6331(a) less than 30 days after notice and demand for payment is made, unless the Chief Counsel for the Internal Revenue Service (or such Counsel's delegate) personally approves (in writing) such assessment or levy.

        (B) INFORMATION TO TAXPAYER.—Within 5 days after the day on which such an assessment or levy is made, the Secretary shall provide the taxpayer with a written statement of the information upon which the Secretary relied in making such assessment or levy.

    (2) REQUEST FOR REVIEW.—Within 30 days after the day on which the taxpayer is furnished the written statement described in paragraph (1), or within 30 days after the last day of the period within which such statement is required to be furnished, the taxpayer may request the Secretary to review the action taken.

    (3) REDETERMINATION BY SECRETARY.—After a request for review is made under paragraph (2), the Secretary shall determine—

        (A) whether or not—

            (i) the making of the assessment under section 6851, 6861, or 6862, as the case may be, is reasonable under the circumstances, and

            (ii) the amount so assessed or demanded as a result of the action taken under section 6851, 6861, or 6862 is appropriate under the circumstances, or

        (B) whether or not the levy described in subsection (a)(1) is reasonable under the circumstances.

(b) JUDICIAL REVIEW.—

(1) PROCEEDINGS PERMITTED.—Within 90 days after the earlier of—

(A) the day the Secretary notifies the taxpayer of the Secretary's determination described in subsection (a)(3), or

(B) the 16th day after the request described in subsection (a)(2) was made,

the taxpayer may bring a civil action against the United States for a determination under this subsection in the court with jurisdiction determined under paragraph (2).

(2) Jurisdiction for determination.—

(A) In general.—Except as provided in subparagraph (B), the district courts of the United States shall have exclusive jurisdiction over any civil action for a determination under this subsection.

(B) Tax Court.—If a petition for a redetermination of a deficiency under section 6213(a) has been timely filed with the Tax Court before the making of an assessment or levy that is subject to the review procedures of this section, and 1 or more of the taxes and taxable periods before the Tax Court because of such petition is also included in the written statement that is provided to the taxpayer under subsection (a), then the Tax Court also shall have jurisdiction over any civil action for a determination under this subsection with respect to all the taxes and taxable periods included in such written statement.

(3) DETERMINATION BY COURT.—Within 20 days after a proceeding is commenced under paragraph (1), the court shall determine—

(A) whether or not—

(i) the making of the assessment under section 6851, 6861, or 6862, as the case may be, is reasonable under the circumstances, and

(ii) the amount so assessed or demanded as a result of the action taken under section 6851, 6861, or 6862 is appropriate under the circumstances, or

29a

(B) whether or not the levy described in subsection (a)(1) is reasonable under the circumstances.

If the court determines that proper service was not made on the United States or on the Secretary, as may be appropriate, within 5 days after the date of the commencement of the proceeding, then the running of the 20-day period set forth in the preceding sentence shall not begin before the day on which proper service was made on the United States or on the Secretary, as may be appropriate.

(4) ORDER OF COURT.—If the court determines that the making of such levy is unreasonable, that the making of such assessment is unreasonable, or that the amount assessed or demanded is inappropriate, then the court may order the Secretary to release such levy, to abate such assessment, to redetermine (in whole or in part) the amount assessed or demanded, or to take such other action as the court finds appropriate.

(c) EXTENSION OF 20-DAY PERIOD WHERE TAXPAYER SO REQUESTS.—If the taxpayer requests an extension of the 20-day period set forth in subsection (b)(2) and establishes reasonable grounds why such extension should be granted, the court may grant an extension of not more than 40 additional days.

(d) COMPUTATION OF DAYS.—For purposes of this section, Saturday, Sunday, or a legal holiday in the District of Columbia shall not be counted as the last day of any period.

(e) VENUE.—

(1) DISTRICT COURT.—A civil action in a district court under subsection (b) shall be commenced only in the judicial district described in section 1402(a)(1) or (2) of Title 28, United States Code.

(2) TRANSFER OF ACTIONS.—If a civil action is filed under subsection (b) with the Tax Court and such court finds that there is want of jurisdiction because of the jurisdiction provisions of subsection (b)(2), then the Tax Court shall, if such court determines it is in the interest of justice, transfer the civil action to the district court in which the action could have been brought at the time such action was filed. Any civil action so transferred shall proceed as if such action had been filed in the district court to which such action is transferred on the date on which such action was actually filed in the Tax Court from which such action is transferred.

(f) FINALITY OF DETERMINATION.—Any determination made by a court under this section shall be final and conclusive and shall not be reviewed by any other court.

(g) BURDEN OF PROOF.—

(1) REASONABLENESS OF LEVY, TERMINATION, OR JEOPARDY ASSESSMENT.—In a proceeding under subsection (b) involving the issue of whether the making of a levy described in subsection (a)(1) or the making of an assessment under section 6851, 6852, 6861, or 6862 is reasonable under the circumstances, the burden of proof in respect to such issue shall be upon the Secretary.

(2) REASONABLENESS OF AMOUNT OF ASSESSMENT.—In a proceeding under subsection (b) involving the issue of whether an amount assessed or demanded as a result of action taken under section 6851, 6852, 6861, or 6862 is appropriate under the circumstances, the Secretary shall provide a written statement which contains any information with respect to which his determination of the amount assessed was based, but the burden of proof in respect of such issue shall be upon the taxpayer.

## §7431. Civil damages for unauthorized inspection or disclosure of returns and return information

(a) IN GENERAL.—

(1) INSPECTION OR DISCLOSURE BY EMPLOYEE OF UNITED STATES.—If any officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

(2) INSPECTION OR DISCLOSURE BY A PERSON WHO IS NOT AN EMPLOYEE OF UNITED STATES.—If any person who is not an officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103 or in violation of section 6104(c), such taxpayer may bring a civil action for damages against such person in a district court of the United States.

(b) EXCEPTIONS.—No liability shall arise under this section with respect to any inspection or disclosure—

    (1) which results from a good faith, but erroneous, interpretation of section 6103, or

    (2) which is requested by the taxpayer.

(c) DAMAGES.—In any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the sum of—

    (1) the greater of—

        (A) $1,000 for each act of unauthorized inspection or disclosure of a return or return information with respect to which such defendant is found liable, or

        (B) the sum of—

            (i) the actual damages sustained by the plaintiff as a result of such unauthorized inspection or disclosure, plus

            (ii) in the case of a willful inspection or disclosure or an inspection or disclosure which is the result of gross negligence, punitive damages, plus

    (2) the costs of the action, plus

    (3) in the case of a plaintiff which is described in section 7430(c)(4)(A)(ii), reasonable attorneys fees, except that if the defendant is the United States, reasonable attorneys fees may be awarded only if the plaintiff is the prevailing party (as determined under section 7430(c)(4)).

(d) PERIOD FOR BRINGING ACTION.—Notwithstanding any other provision of law, an action to enforce any liability created under this section may be brought, without regard to the amount in controversy, at any time within 2 years after the date of discovery by the plaintiff of the unauthorized inspection or disclosure.

(e) NOTIFICATION OF UNLAWFUL INSPECTION AND DISCLOSURE.—If any person is criminally charged by indictment or information with inspection or disclosure of a taxpayer's return or return information in violation of—

(1) paragraph (1) or (2) of section 7213(a),

(2) section 7213A(a), or

(3) subparagraph (B) of section 1030(a)(2) of Title 18, United States Code,

the Secretary shall notify such taxpayer as soon as practicable of such inspection or disclosure.

(f) DEFINITIONS.—For purposes of this section, the terms "inspect", "inspection", "return", and "return information" have the respective meanings given such terms by section 6103(b).

(g) EXTENSION TO INFORMATION OBTAINED UNDER SECTION 3406.—For purposes of this section—

(1) any information obtained under section 3406 (including information with respect to any payee certification failure under subsection (d) thereof) shall be treated as return information, and

(2) any inspection or use of such information other than for purposes of meeting any requirement under section 3406 or (subject to the safeguards set forth in section 6103) for purposes permitted under section 6103 shall be treated as a violation of section 6103.

For purposes of subsection (b), the reference to section 6103 shall be treated as including a reference to section 3406.

(h) SPECIAL RULE FOR INFORMATION OBTAINED UNDER SECTION 6103(K)(9).—For purposes of this section, any reference to section 6103 shall be treated as including a reference to section 6311(e).

## §7432. Civil damages for failure to release lien

(a) IN GENERAL.—If any officer or employee of the Internal Revenue Service knowingly, or by reason of negligence, fails to release a lien under section 6325 on property of the taxpayer, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

(b) DAMAGES.—In any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the sum of—

(1) actual, direct economic damages sustained by the plaintiff which, but for the actions of the defendant, would not have been sustained, plus

(2) the costs of the action.

(c) PAYMENT AUTHORITY.—Claims pursuant to this section shall be payable out of funds appropriated under section 1304 of Title 31, United States Code.

(d) LIMITATIONS.—

(1) REQUIREMENT THAT ADMINISTRATIVE REMEDIES BE EXHAUSTED.—A judgment for damages shall not be awarded under subsection (b) unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service.

(2) MITIGATION OF DAMAGES.—The amount of damages awarded under subsection (b)(1) shall be reduced by the amount of such damages which could have reasonably been mitigated by the plaintiff.

(3) PERIOD FOR BRINGING ACTION.—Notwithstanding any other provision of law, an action to enforce liability created under this section may be brought without regard to the amount in controversy and may be brought only within 2 years after the date the right of action accrues.

(e) NOTICE OF FAILURE TO RELEASE LIEN.—The Secretary shall by regulation prescribe reasonable procedures for a taxpayer to notify the Secretary of the failure to release a lien under section 6325 on property of the taxpayer.

## § 7433. Civil damages for certain unauthorized collection actions

(a) IN GENERAL.—If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States. Except as provided in section 7432, such civil action shall be the exclusive remedy for recovering damages resulting from such actions.

(b) DAMAGES.—In any action brought under subsection (a) or petition filed under subsection (e), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the lesser of $1,000,000 ($100,000, in the case of negligence) or the sum of—

(1) actual, direct economic damages sustained by the plaintiff as a proximate result of the reckless or intentional or negligent actions of the officer or employee, and

(2) the costs of the action.

(c) PAYMENT AUTHORITY.—Claims pursuant to this section shall be payable out of funds appropriated under section 1304 of Title 31, United States Code.

(d) LIMITATIONS.—

(1) REQUIREMENT THAT ADMINISTRATIVE REMEDIES BE EXHAUSTED.— A judgment for damages shall not be awarded under subsection (b) unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service.

(2) MITIGATION OF DAMAGES.—The amount of damages awarded under subsection (b)(1) shall be reduced by the amount of such damages which could have reasonably been mitigated by the plaintiff.

(3) PERIOD FOR BRINGING ACTION.—Notwithstanding any other provision of law, an action to enforce liability created under this section may be brought without regard to the amount in controversy and may be brought only within 2 years after the date the right of action accrues.

(e) ACTIONS FOR VIOLATIONS OF CERTAIN BANKRUPTCY PROCEDURES.—

(1) IN GENERAL.—If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service willfully violates any provision of section 362 (relating to automatic stay) or 524 (relating to effect of discharge) of Title 11, United States Code (or any successor provision), or any regulation promulgated under such provision, such taxpayer may petition the bankruptcy court to recover damages against the United States.

(2) REMEDY TO BE EXCLUSIVE.—

(A) IN GENERAL.—Except as provided in subparagraph (B), notwithstanding section 105 of such Title 11, such petition shall be the exclusive remedy for recovering damages resulting from such actions.

(B) CERTAIN OTHER ACTIONS PERMITTED.—Subparagraph (A) shall not apply to an action under section 362(h) of such Title 11 for a violation of a stay provided by section 362 of such title; except that—

(i) administrative and litigation costs in connection with such an action may only be awarded under section 7430; and

(ii) administrative costs may be awarded only if incurred on or after the date that the bankruptcy petition is filed.

## § 7433A. Civil damages for certain unauthorized collection actions by persons performing services under qualified tax collection contracts

(a) IN GENERAL.—Subject to the modifications provided by subsection (b), section 7433 shall apply to the acts and omissions of any person performing services under a qualified tax collection contract (as defined in section 6306(b)) to the same extent and in the same manner as if such person were an employee of the Internal Revenue Service.

(b) MODIFICATIONS.—For purposes of subsection (a):

(1) Any civil action brought under section 7433 by reason of this section shall be brought against the person who entered into the qualified tax collection contract with the Secretary and shall not be brought against the United States.

(2) Such person and not the United States shall be liable for any damages and costs determined in such civil action.

(3) Such civil action shall not be an exclusive remedy with respect to such person.

(4) Subsections (c), (d)(1), and (e) of section 7433 shall not apply.

## §7434. Civil damages for fraudulent filing of information returns

(a) IN GENERAL.—If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return.

(b) DAMAGES.—In any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the greater of $5,000 or the sum of—

(1) any actual damages sustained by the plaintiff as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such filing),

(2) the costs of the action, and

(3) in the court's discretion, reasonable attorneys' fees.

(c) PERIOD FOR BRINGING ACTION.—Notwithstanding any other provision of law, an action to enforce the liability created under this section may be brought without regard to the amount in controversy and may be brought only within the later of—

(1) 6 years after the date of the filing of the fraudulent information return, or

(2) 1 year after the date such fraudulent information return would have been discovered by exercise of reasonable care.

(d) COPY OF COMPLAINT FILED WITH IRS—Any person bringing an action under subsection (a) shall provide a copy of the complaint to the Internal Revenue Service upon the filing of such complaint with the court.

(e) FINDING OF COURT TO INCLUDE CORRECT AMOUNT OF PAYMENT.—The decision of the court awarding damages in an action brought under subsection (a) shall include a finding of the correct amount which should have been reported in the information return.

(f) INFORMATION RETURN.—For purposes of this section, the term "information return" means any statement described in section 6724(d)(1)(A).

## §7435. Civil damages for unauthorized enticement of information disclosure

(a) IN GENERAL.—If any officer or employee of the United States intentionally compromises the determination or collection of any tax due from an attorney, certified public accountant, or enrolled agent representing a taxpayer in exchange for information conveyed by the taxpayer to the attorney, certified public accountant, or enrolled agent for purposes of obtaining advice concerning the taxpayer's tax liability, such taxpayer may bring a civil action for damages against the United States in a district court of the United States. Such civil action shall be the exclusive remedy for recovering damages resulting from such actions.

(b) DAMAGES.—In any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the lesser of $500,000 or the sum of—

(1) actual, direct economic damages sustained by the plaintiff as a proximate result of the information disclosure, and

(2) the costs of the action.

Damages shall not include the taxpayer's liability for any civil or criminal penalties, or other losses attributable to incarceration or the imposition of other criminal sanctions.

(c) PAYMENT AUTHORITY.—Claims pursuant to this section shall be payable out of funds appropriated under section 1304 of Title 31, United States Code.

(d) PERIOD FOR BRINGING ACTION.—Notwithstanding any other provision of law, an action to enforce liability created under this section may be brought without regard to the amount in controversy and may be brought only within 2 years after the date the actions creating such liability would have been discovered by exercise of reasonable care.

(e) MANDATORY STAY.—Upon a certification by the Commissioner or the Commissioner's delegate that there is an ongoing investigation or prosecution of the taxpayer, the district court before which an action under this section is pending shall stay all proceedings with respect to such action pending the conclusion of the investigation or prosecution.

(f) CRIME-FRAUD EXCEPTION.—Subsection (a) shall not apply to information conveyed to an attorney, certified public accountant, or enrolled agent for the purpose of perpetrating a fraud or crime.

4.    Title 26 of the Code of Federal Regulations, Internal Revenue, provides in relevant part as follows:

**§ 1.501(c)(3)-1 Organizations organized and operated for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or for the prevention of cruelty to children or animals.**

(a) ORGANIZATIONAL AND OPERATIONAL TESTS. (1) In order to be exempt as an organization described in section 501(c)(3), an organization must be both organized and operated exclusively for one or more of the purposes specified in such section. If an organization fails to meet either the organizational test or the operational test, it is not exempt.

(2) The term exempt purpose or purposes, as used in this section, means any purpose or purposes specified in section 501(c)(3), as defined and elaborated in paragraph (d) of this section.

(b) ORGANIZATIONAL TEST—(1) IN GENERAL. (i) An organization is organized exclusively for one or more exempt purposes only if its articles of organization (referred to in this section as its articles) as defined in subparagraph (2) of this paragraph:

(a) Limit the purposes of such organization to one or more exempt purposes; and

(b) Do not expressly empower the organization to engage, otherwise than as an insubstantial part of its activities, in activities which in themselves are not in furtherance of one or more exempt purposes.

(ii) In meeting the organizational test, the organization's purposes, as stated in its articles, may be as broad as, or more specific than, the purposes stated in section 501(c)(3). Therefore, an organization which, by the terms of its articles, is formed for literary and scientific purposes within the meaning of section 501(c)(3) of the Code shall, if it otherwise meets the requirements in this paragraph, be considered to have met the organizational test. Similarly, articles stating that the organization is created solely to receive contributions and pay them over to organizations which are described in section 501(c)(3) and exempt from taxation under section 501(a) are sufficient for purposes of the organizational test. Moreover, it is sufficient if the articles set for the purpose of the organization to be the operation of a school for adult education and describe in detail the manner of the operation

of such school. In addition, if the articles state that the organization is formed for charitable purposes, such articles ordinarily shall be sufficient for purposes of the organizational test (see subparagraph (5) of this paragraph for rules relating to construction of terms).

(iii) An organization is not organized exclusively for one or more exempt purposes if its articles expressly empower it to carry on, otherwise than as an insubstantial part of its activities, activities which are not in furtherance of one or more exempt purposes, even though such organization is, by the terms of such articles, created for a purpose that is no broader than the purposes specified in section 501(c)(3). Thus, an organization that is empowered by its articles to engage in a manufacturing business, or to engage in the operation of a social club does not meet the organizational test regardless of the fact that its articles may state that such organization is created for charitable purposes within the meaning of section 501(c)(3) of the Code.

(iv) In no case shall an organization be considered to be organized exclusively for one or more exempt purposes, if, by the terms of its articles, the purposes for which such organization is created are broader than the purposes specified in section 501(c)(3). The fact that the actual operations of such an organization have been exclusively in furtherance of one or more exempt purposes shall not be sufficient to permit the organization to meet the organizational test. Similarly, such an organization will not meet the organizational test as a result of statements or other evidence that the members thereof intend to operate only in furtherance of one or more exempt purposes.

(v) [Reserved]. For further guidance see § 1.501(c)(3)–1T(b)(1)(v).

(2) ARTICLES OF ORGANIZATION. For purposes of this section, the term articles of organization or articles includes the trust instrument, the corporate charter, the articles of association, or any other written instrument by which an organization is created.

(3) AUTHORIZATION OF LEGISLATIVE OR POLITICAL ACTIVITIES. An organization is not organized exclusively for one or more exempt purposes if its articles expressly empower it:

(i) To devote more than an insubstantial part of its activities to attempting to influence legislation by propaganda or otherwise; or

40a

(ii) Directly or indirectly to participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of or in opposition to any candidate for public office; or

(iii) To have objectives and to engage in activities which characterize it as an action organization as defined in paragraph (c)(3) of this section.

The terms used in subdivisions (i), (ii), and (iii) of this subparagraph shall have the meanings provided in paragraph (c)(3) of this section. An organization's articles will not violate the provisions of paragraph (b)(3)(i) of this section even though the organization's articles expressly empower it to make the election provided for in section 501(h) with respect to influencing legislation and, only if it so elects, to make lobbying or grass roots expenditures that do not normally exceed the ceiling amounts prescribed by section 501(h)(2)(B) and (D).

(4) DISTRIBUTION OF ASSETS ON DISSOLUTION. An organization is not organized exclusively for one or more exempt purposes unless its assets are dedicated to an exempt purpose. An organization's assets will be considered dedicated to an exempt purpose, for example, if, upon dissolution, such assets would, by reason of a provision in the organization's articles or by operation of law, be distributed for one or more exempt purposes, or to the Federal Government, or to a State or local government, for a public purpose, or would be distributed by a court to another organization to be used in such manner as in the judgment of the court will best accomplish the general purposes for which the dissolved organization was organized. However, an organization does not meet the organizational test if its articles or the law of the State in which it was created provide that its assets would, upon dissolution, be distributed to its members or shareholders.

(5) CONSTRUCTION OF TERMS. The law of the State in which an organization is created shall be controlling in construing the terms of its articles. However, any organization which contends that such terms have under State law a different meaning from their generally accepted meaning must establish such special meaning by clear and convincing reference to relevant court decisions, opinions of the State attorney-general, or other evidence of applicable State law.

(6) [Reserved]. For further guidance see § 1.501(c)(3)–1T(b)(6).

(c) OPERATIONAL TEST—(1) PRIMARY ACTIVITIES. An organization will be regarded as operated exclusively for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose.

(2) DISTRIBUTION OF EARNINGS. An organization is not operated exclusively for one or more exempt purposes if its net earnings inure in whole or in part to the benefit of private shareholders or individuals. For the definition of the words private shareholder or individual, see paragraph (c) of § 1.501(a)–1.

(3) ACTION ORGANIZATIONS. (i) An organization is not operated exclusively for one or more exempt purposes if it is an action organization as defined in subdivisions (ii), (iii), or (iv) of this subparagraph.

(ii) An organization is an action organization if a substantial part of its activities is attempting to influence legislation by propaganda or otherwise. For this purpose, an organization will be regarded as attempting to influence legislation if the organization:

(a) Contacts, or urges the public to contact, members of a legislative body for the purpose of proposing, supporting, or opposing legislation; or

(b) Advocates the adoption or rejection of legislation.

The term legislation, as used in this subdivision, includes action by the Congress, by any State legislature, by any local council or similar governing body, or by the public in a referendum, initiative, constitutional amendment, or similar procedure. An organization will not fail to meet the operational test merely because it advocates, as an insubstantial part of its activities, the adoption or rejection of legislation. An organization for which the expenditure test election of section 501(h) is in effect for a taxable year will not be considered an action organization by reason of this paragraph (c)(3)(ii) for that year if it is not denied exemption from taxation under section 501(a) by reason of section 501(h).

(iii) An organization is an action organization if it participates or intervenes, directly or indirectly, in any political campaign on behalf of or in opposition to any candidate for public office.

The term candidate for public office means an individual who offers himself, or is proposed by others, as a contestant for an elective public office, whether such office be national, State, or local. Activities which constitute participation or intervention in a political campaign on behalf of or in opposition to a candidate include, but are not limited to, the publication or distribution of written or printed statements or the making of oral statements on behalf of or in opposition to such a candidate.

(iv) An organization is an action organization if it has the following two characteristics: (a) Its main or primary objective or objectives (as distinguished from its incidental or secondary objectives) may be attained only by legislation or a defeat of proposed legislation; and (b) it advocates, or campaigns for, the attainment of such main or primary objective or objectives as distinguished from engaging in nonpartisan analysis, study, or research and making the results thereof available to the public. In determining whether an organization has such characteristics, all the surrounding facts and circumstances, including the articles and all activities of the organization, are to be considered.

(v) An action organization, described in subdivisions (ii) or (iv) of this subparagraph, though it cannot qualify under section 501(c)(3), may nevertheless qualify as a social welfare organization under section 501(c)(4) if it meets the requirements set out in paragraph (a) of § 1.501(c)(4)–1.

(d) EXEMPT PURPOSES—(1) IN GENERAL. (i) An organization may be exempt as an organization described in section 501(c)(3) if it is organized and operated exclusively for one or more of the following purposes:

(a) Religious,

(b) Charitable,

(c) Scientific,

(d) Testing for public safety,

(e) Literary,

(f) Educational, or

(g) Prevention of cruelty to children or animals.

(ii) An organization is not organized or operated exclusively for one or more of the purposes specified in subdivision (i) of this subparagraph unless it serves a public rather than a private interest. Thus, to meet the requirement of this subdivision, it is necessary for an organization to establish that it is not organized or operated for the benefit of private interests such as designated individuals, the creator or his family, shareholders of the organization, or persons controlled, directly or indirectly, by such private interests.

(iii) EXAMPLES. The following examples illustrate the requirement of paragraph (d)(1)(ii) of this section that an organization serve a public rather than a private interest:

EXAMPLE 1. (i) O is an educational organization the purpose of which is to study history and immigration. O's educational activities include sponsoring lectures and publishing a journal. The focus of O's historical studies is the genealogy of one family, tracing the descent of its present members. O actively solicits for membership only individuals who are members of that one family. O's research is directed toward publishing a history of that family that will document the pedigrees of family members. A major objective of O's research is to identify and locate living descendants of that family to enable those descendants to become acquainted with each other.

(ii) O's educational activities primarily serve the private interests of members of a single family rather than a public interest. Therefore, O is operated for the benefit of private interests in violation of the restriction on private benefit in paragraph (d)(1)(ii) of this section. Based on these facts and circumstances, O is not operated exclusively for exempt purposes and, therefore, is not described in section 501(c)(3).

EXAMPLE 2. (i) O is an art museum. O's principal activity is exhibiting art created by a group of unknown but promising local artists. O's activity, including organized tours of its art collection, promotes the arts. O is governed by a board of trustees unrelated to the artists whose work O exhibits. All of the art exhibited is offered for sale at prices set by the artist. Each artist whose work is exhibited has a consignment arrangement with O. Under this arrangement, when art is sold, the museum retains 10 percent of the selling price to cover the costs of operating the museum and gives the artist 90 percent.

(ii) The artists in this situation directly benefit from the exhibition and sale of their art. As a result, the principal activity of O serves the private interests of

these artists. Because O gives 90 percent of the proceeds from its sole activity to the individual artists, the direct benefits to the artists are substantial and O's provision of these benefits to the artists is more than incidental to its other purposes and activities. This arrangement causes O to be operated for the benefit of private interests in violation of the restriction on private benefit in paragraph (d)(1)(ii) of this section. Based on these facts and circumstances, O is not operated exclusively for exempt purposes and, therefore, is not described in section 501(c)(3).

EXAMPLE 3. (i) O is an educational organization the purpose of which is to train individuals in a program developed by P, O's president. The program is of interest to academics and professionals, representatives of whom serve on an advisory panel to O. All of the rights to the program are owned by Company K, a for-profit corporation owned by P. Prior to the existence of O, the teaching of the program was conducted by Company K. O licenses, from Company K, the right to conduct seminars and lectures on the program and to use the name of the program as part of O's name, in exchange for specified royalty payments. Under the license agreement, Company K provides O with the services of trainers and with course materials on the program. O may develop and copyright new course materials on the program but all such materials must be assigned to Company K without consideration if and when the license agreement is terminated. Company K sets the tuition for the seminars and lectures on the program conducted by O. O has agreed not to become involved in any activity resembling the program or its implementation for 2 years after the termination of O's license agreement.

(ii) O's sole activity is conducting seminars and lectures on the program. This arrangement causes O to be operated for the benefit of P and Company K in violation of the restriction on private benefit in paragraph (d)(1)(ii) of this section, regardless of whether the royalty payments from O to Company K for the right to teach the program are reasonable. Based on these facts and circumstances, O is not operated exclusively for exempt purposes and, therefore, is not described in section 501(c)(3).

(iv) Since each of the purposes specified in subdivision (i) of this subparagraph is an exempt purpose in itself, an organization may be exempt if it is organized and operated exclusively for any one or more of such purposes. If, in fact, an organization is organized and operated exclusively for an exempt purpose or purposes, exemption will be granted to such an organization regardless of the purpose or purposes specified in its application for exemption. For example, if an organization claims exemption

on the ground that it is educational, exemption will not be denied if, in fact, it is charitable.

(2) CHARITABLE DEFINED. The term charitable is used in section 501(c)(3) in its generally accepted legal sense and is, therefore, not to be construed as limited by the separate enumeration in section 501(c)(3) of other tax-exempt purposes which may fall within the broad outlines of charity as developed by judicial decisions. Such term includes: Relief of the poor and distressed or of the underprivileged; advancement of religion; advancement of education or science; erection or maintenance of public buildings, monuments, or works; lessening of the burdens of Government; and promotion of social welfare by organizations designed to accomplish any of the above purposes, or (i) to lessen neighborhood tensions; (ii) to eliminate prejudice and discrimination; (iii) to defend human and civil rights secured by law; or (iv) to combat community deterioration and juvenile delinquency. The fact that an organization which is organized and operated for the relief of indigent persons may receive voluntary contributions from the persons intended to be relieved will not necessarily prevent such organization from being exempt as an organization organized and operated exclusively for charitable purposes. The fact that an organization, in carrying out its primary purpose, advocates social or civic changes or presents opinion on controversial issues with the intention of molding public opinion or creating public sentiment to an acceptance of its views does not preclude such organization from qualifying under section 501(c)(3) so long as it is not an action organization of any one of the types described in paragraph (c)(3) of this section.

(3) EDUCATIONAL DEFINED—(i) IN GENERAL. The term educational, as used in section 501(c)(3), relates to:

(a) The instruction or training of the individual for the purpose of improving or developing his capabilities; or

(b) The instruction of the public on subjects useful to the individual and beneficial to the community.

An organization may be educational even though it advocates a particular position or viewpoint so long as it presents a sufficiently full and fair exposition of the pertinent facts as to permit an individual or the public to form an independent opinion or conclusion. On the other hand, an

organization is not educational if its principal function is the mere presentation of unsupported opinion.

(ii) EXAMPLES OF EDUCATIONAL ORGANIZATIONS. The following are examples of organizations which, if they otherwise meet the requirements of this section, are educational:

EXAMPLE 1. An organization, such as a primary or secondary school, a college, or a professional or trade school, which has a regularly scheduled curriculum, a regular faculty, and a regularly enrolled body of students in attendance at a place where the educational activities are regularly carried on.

EXAMPLE 2. An organization whose activities consist of presenting public discussion groups, forums, panels, lectures, or other similar programs. Such programs may be on radio or television.

EXAMPLE 3. An organization which presents a course of instruction by means of correspondence or through the utilization of television or radio.

EXAMPLE 4. Museums, zoos, planetariums, symphony orchestras, and other similar organizations.

(4) TESTING FOR PUBLIC SAFETY DEFINED. The term testing for public safety, as used in section 501(c)(3), includes the testing of consumer products, such as electrical products, to determine whether they are safe for use by the general public.

(5) SCIENTIFIC DEFINED. (i) Since an organization may meet the requirements of section 501(c)(3) only if it serves a public rather than a private interest, a scientific organization must be organized and operated in the public interest (see subparagraph (1)(ii) of this paragraph). Therefore, the term scientific, as used in section 501(c)(3), includes the carrying on of scientific research in the public interest. Research when taken alone is a word with various meanings; it is not synonymous with scientific; and the nature of particular research depends upon the purpose which it serves. For research to be scientific, within the meaning of section 501(c)(3), it must be carried on in furtherance of a scientific purpose. The determination as to whether research is scientific does not depend on whether such research is classified as fundamental or basic as contrasted with applied or practical. On the other hand, for purposes of the exclusion from unrelated business taxable income provided by section 512(b)(9), it is necessary to determine whether

the organization is operated primarily for purposes of carrying on fundamental, as contrasted with applied, research.

(ii) Scientific research does not include activities of a type ordinarily carried on as an incident to commercial or industrial operations, as, for example, the ordinary testing or inspection of materials or products or the designing or construction of equipment, buildings, etc.

(iii) Scientific research will be regarded as carried on in the public interest:

(a) If the results of such research (including any patents, copyrights, processes, or formulae resulting from such research) are made available to the public on a nondiscriminatory basis;

(b) If such research is performed for the United States, or any of its agencies or instrumentalities, or for a State or political subdivision thereof; or

(c) If such research is directed toward benefiting the public. The following are examples of scientific research which will be considered as directed toward benefiting the public, and, therefore, which will be regarded as carried on in the public interest: (1) Scientific research carried on for the purpose of aiding in the scientific education of college or university students; (2) scientific research carried on for the purpose of obtaining scientific information, which is published in a treatise, thesis, trade publication, or in any other form that is available to the interested public; (3) scientific research carried on for the purpose of discovering a cure for a disease; or (4) scientific research carried on for the purpose of aiding a community or geographical area by attracting new industry to the community or area or by encouraging the development of, or retention of, an industry in the community or area. Scientific research described in this subdivision will be regarded as carried on in the public interest even though such research is performed pursuant to a contract or agreement under which the sponsor or sponsors of the research have the right to obtain ownership or control of any patents, copyrights, processes, or formulae resulting from such research.

(iv) An organization will not be regarded as organized and operated for the purpose of carrying on scientific research in the public interest and,

consequently, will not qualify under section 501(c)(3) as a scientific organization, if:

(a) Such organization will perform research only for persons which are (directly or indirectly) its creators and which are not described in section 501(c)(3), or

(b) Such organization retains (directly or indirectly) the ownership or control of more than an insubstantial portion of the patents, copyrights, processes, or formulae resulting from its research and does not make such patents, copyrights, processes, or formulae available to the public. For purposes of this subdivision, a patent, copyright, process, or formula shall be considered as made available to the public if such patent, copyright, process, or formula is made available to the public on a nondiscriminatory basis. In addition, although one person is granted the exclusive right to the use of a patent, copyright, process, or formula, such patent, copyright, process, or formula shall be considered as made available to the public if the granting of such exclusive right is the only practicable manner in which the patent, copyright, process, or formula can be utilized to benefit the public. In such a case, however, the research from which the patent, copyright, process, or formula resulted will be regarded as carried on in the public interest (within the meaning of subdivision (iii) of this subparagraph) only if it is carried on for a person described in subdivision (iii)(b) of this subparagraph or if it is scientific research described in subdivision (iii)(c) of this subparagraph.

(v) The fact that any organization (including a college, university, or hospital) carries on research which is not in furtherance of an exempt purpose described in section 501(c)(3) will not preclude such organization from meeting the requirements of section 501(c)(3) so long as the organization meets the organizational test and is not operated for the primary purpose of carrying on such research (see paragraph (e) of this section, relating to organizations carrying on a trade or business). See paragraph (a)(5) of §1.513–2, with respect to research which constitutes an unrelated trade or business, and section 512(b)(7), (8), and (9), with respect to income derived from research which is excludable from the tax on unrelated business income.

(vi) The regulations in this subparagraph are applicable with respect to taxable years beginning after December 31, 1960.

49a

(e) Organizations carrying on trade or business—(1) In general. An organization may meet the requirements of section 501(c)(3) although it operates a trade or business as a substantial part of its activities, if the operation of such trade or business is in furtherance of the organization's exempt purpose or purposes and if the organization is not organized or operated for the primary purpose of carrying on an unrelated trade or business, as defined in section 513. In determining the existence or nonexistence of such primary purpose, all the circumstances must be considered, including the size and extent of the trade or business and the size and extent of the activities which are in furtherance of one or more exempt purposes. An organization which is organized and operated for the primary purpose of carrying on an unrelated trade or business is not exempt under section 501(c)(3) even though it has certain religious purposes, its property is held in common, and its profits do not inure to the benefit of individual members of the organization. See, however, section 501(d) and § 1.501(d)–1, relating to religious and apostolic organizations.

(2) Taxation of unrelated business income. For provisions relating to the taxation of unrelated business income of certain organizations described in section 501(c)(3), see sections 511 to 515, inclusive, and the regulations thereunder.

(f) Interaction with section 4958—(1) Application process. An organization that applies for recognition of exemption under section 501(a) as an organization described in section 501(c)(3) must establish its eligibility under this section. The Commissioner may deny an application for exemption for failure to establish any of section 501(c)(3)'s requirements for exemption. Section 4958 does not apply to transactions with an organization that has failed to establish that it satisfies all of the requirements for exemption under section 501(c)(3). See § 53.4958–2.

(2) Substantive requirements for exemption still apply to applicable tax-exempt organizations described in section 501(c)(3)— (i) In general. Regardless of whether a particular transaction is subject to excise taxes under section 4958, the substantive requirements for tax exemption under section 501(c)(3) still apply to an applicable tax-exempt organization (as defined in section 4958(e) and § 53.4958–2) described in section 501(c)(3) whose disqualified persons or organization managers are subject to excise taxes under section 4958. Accordingly, an organization will no longer meet the requirements for tax-exempt status under section 501(c)(3) if the organization fails to satisfy the requirements of paragraph (b), (c) or (d) of this section. See § 53.4958–8(a).

(ii) DETERMINATION OF WHETHER REVOCATION OF TAX-EXEMPT STATUS IS APPROPRIATE WHEN SECTION 4958 EXCISE TAXES ALSO APPLY. In determining whether to continue to recognize the tax-exempt status of an applicable tax-exempt organization (as defined in section 4958(e) and §53.4958–2) described in section 501(c)(3) that engages in one or more excess benefit transactions (as defined in section 4958(c) and §53.4958–4) that violate the prohibition on inurement under section 501(c)(3), the Commissioner will consider all relevant facts and circumstances, including, but not limited to, the following—

(A) The size and scope of the organization's regular and ongoing activities that further exempt purposes before and after the excess benefit transaction or transactions occurred;

(B) The size and scope of the excess benefit transaction or transactions (collectively, if more than one) in relation to the size and scope of the organization's regular and ongoing activities that further exempt purposes;

(C) Whether the organization has been involved in multiple excess benefit transactions with one or more persons;

(D) Whether the organization has implemented safeguards that are reasonably calculated to prevent excess benefit transactions; and

(E) Whether the excess benefit transaction has been corrected (within the meaning of section 4958(f)(6) and §53.4958–7), or the organization has made good faith efforts to seek correction from the disqualified person(s) who benefited from the excess benefit transaction.

(iii) All factors will be considered in combination with each other. Depending on the particular situation, the Commissioner may assign greater or lesser weight to some factors than to others. The factors listed in paragraphs (f)(2)(ii)(D) and (E) of this section will weigh more heavily in favor of continuing to recognize exemption where the organization discovers the excess benefit transaction or transactions and takes action before the Commissioner discovers the excess benefit transaction or transactions. Further, with respect to the factor listed in paragraph (f)(2)(ii)(E) of this section, correction after the excess benefit transaction or transactions are

discovered by the Commissioner, by itself, is never a sufficient basis for continuing to recognize exemption.

(iv) EXAMPLES. The following examples illustrate the principles of paragraph (f)(2)(ii) of this section. For purposes of each example, assume that O is an applicable tax-exempt organization (as defined in section 4958(e) and §53.4958–2) described in section 501(c)(3). The examples read as follows:

EXAMPLE 1. (i) O was created as a museum for the purpose of exhibiting art to the general public. In Years 1 and 2, O engages in fundraising and in selecting, leasing, and preparing an appropriate facility for a museum. In Year 3, a new board of trustees is elected. All of the new trustees are local art dealers. Beginning in Year 3 and continuing to the present, O uses a substantial portion of its revenues to purchase art solely from its trustees at prices that exceed fair market value. O exhibits and offers for sale all of the art it purchases. O's Form 1023, "Application for Recognition of Exemption," did not disclose the possibility that O would purchase art from its trustees.

(ii) O's purchases of art from its trustees at more than fair market value constitute excess benefit transactions between an applicable tax-exempt organization and disqualified persons under section 4958. Therefore, these transactions are subject to the applicable excise taxes provided in that section. In addition, O's purchases of art from its trustees at more than fair market value violate the proscription against inurement under section 501(c)(3) and paragraph (c)(2) of this section.

(iii) The application of the factors in paragraph (f)(2)(ii) of this section to these facts is as follows. Beginning in Year 3, O does not engage primarily in regular and ongoing activities that further exempt purposes because a substantial portion of O's activities consists of purchasing art from its trustees and dealing in such art in a manner similar to a commercial art gallery. The size and scope of the excess benefit transactions collectively are significant in relation to the size and scope of any of O's ongoing activities that further exempt purposes. O has been involved in multiple excess benefit transactions, namely, purchases of art from its trustees at more than fair market value. O has not implemented safeguards that are reasonably calculated to prevent such improper purchases in the future. The excess benefit transactions have not been corrected, nor has O made good faith efforts to seek correction from the disqualified persons who benefited from the excess benefit transactions (the trustees). The trustees continue to control O's Board.

Based on the application of the factors to these facts, O is no longer described in section 501(c)(3) effective in Year 3.

EXAMPLE 2. (i) The facts are the same as in Example 1, except that in Year 4, O's entire board of trustees resigns, and O no longer offers all exhibited art for sale. The former board is replaced with members of the community who are not in the business of buying or selling art and who have skills and experience running charitable and educational programs and institutions. O promptly discontinues the practice of purchasing art from current or former trustees, adopts a written conflicts of interest policy, adopts written art valuation guidelines, hires legal counsel to recover the excess amounts O had paid its former trustees, and implements a new program of activities to further the public's appreciation of the arts.

(ii) O's purchases of art from its former trustees at more than fair market value constitute excess benefit transactions between an applicable tax-exempt organization and disqualified persons under section 4958. Therefore, these transactions are subject to the applicable excise taxes provided in that section. In addition, O's purchases of art from its trustees at more than fair market value violate the proscription against inurement under section 501(c)(3) and paragraph (c)(2) of this section.

(iii) The application of the factors in paragraph (f)(2)(ii) of this section to these facts is as follows. In Year 3, O does not engage primarily in regular and ongoing activities that further exempt purposes. However, in Year 4, O elects a new board of trustees comprised of individuals who have skills and experience running charitable and educational programs and implements a new program of activities to further the public's appreciation of the arts. As a result of these actions, beginning in Year 4, O engages in regular and ongoing activities that further exempt purposes. The size and scope of the excess benefit transactions that occurred in Year 3, taken collectively, are significant in relation to the size and scope of O's regular and ongoing exempt function activities that were conducted in Year 3. Beginning in Year 4, however, as O's exempt function activities grow, the size and scope of the excess benefit transactions that occurred in Year 3 become less and less significant as compared to the size and scope of O's regular and ongoing exempt function activities. O was involved in multiple excess benefit transactions in Year 3. However, by discontinuing its practice of purchasing art from its current and former trustees, by replacing its former board with independent members of the community, and by adopting a conflicts of interest policy and art valuation guidelines, O has implemented safeguards that are reasonably calculated to prevent future violations. In addition, O has made a good faith effort to seek correction from the disqualified persons who benefited from the

excess benefit transactions (its former trustees). Based on the application of the factors to these facts, O continues to meet the requirements for tax exemption under section 501(c)(3).

EXAMPLE 3. (i) O conducts educational programs for the benefit of the general public. Since its formation, O has employed its founder, C, as its Chief Executive Officer. Beginning in Year 5 of O's operations and continuing to the present, C caused O to divert significant portions of O's funds to pay C's personal expenses. The diversions by C significantly reduced the funds available to conduct O's ongoing educational programs. The board of trustees never authorized C to cause O to pay C's personal expenses from O's funds. Certain members of the board were aware that O was paying C's personal expenses. However, the board did not terminate C's employment and did not take any action to seek repayment from C or to prevent C from continuing to divert O's funds to pay C's personal expenses. C claimed that O's payments of C's personal expenses represented loans from O to C. However, no contemporaneous loan documentation exists, and C never made any payments of principal or interest.

(ii) The diversions of O's funds to pay C's personal expenses constitute excess benefit transactions between an applicable tax-exempt organization and a disqualified person under section 4958. Therefore, these transactions are subject to the applicable excise taxes provided in that section. In addition, these transactions violate the proscription against inurement under section 501(c)(3) and paragraph (c)(2) of this section.

(iii) The application of the factors in paragraph (f)(2)(ii) of this section to these facts is as follows. O has engaged in regular and ongoing activities that further exempt purposes both before and after the excess benefit transactions occurred. However, the size and scope of the excess benefit transactions engaged in by O beginning in Year 5, collectively, are significant in relation to the size and scope of O's activities that further exempt purposes. Moreover, O has been involved in multiple excess benefit transactions. O has not implemented any safeguards that are reasonably calculated to prevent future diversions. The excess benefit transactions have not been corrected, nor has O made good faith efforts to seek correction from C, the disqualified person who benefited from the excess benefit transactions. Based on the application of the factors to these facts, O is no longer described in section 501(c)(3) effective in Year 5.

EXAMPLE 4. (i) O conducts activities that further exempt purposes. O uses several buildings in the conduct of its exempt activities. In Year 1, O sold one of the buildings to Company K for an amount that was substantially below fair market

value. The sale was a significant event in relation to O's other activities. C, O's Chief Executive Officer, owns all of the voting stock of Company K. When O's board of trustees approved the transaction with Company K, the board did not perform due diligence that could have made it aware that the price paid by Company K to acquire the building was below fair market value. Subsequently, but before the IRS commences an examination of O, O's board of trustees determines that Company K paid less than the fair market value for the building. Thus, O concludes that an excess benefit transaction occurred. After the board makes this determination, it promptly removes C as Chief Executive Officer, terminates C's employment with O, and hires legal counsel to recover the excess benefit from Company K. In addition, O promptly adopts a conflicts of interest policy and new contract review procedures designed to prevent future recurrences of this problem.

(ii) The sale of the building by O to Company K at less than fair market value constitutes an excess benefit transaction between an applicable tax-exempt organization and a disqualified person under section 4958 in Year 1. Therefore, this transaction is subject to the applicable excise taxes provided in that section. In addition, this transaction violates the proscription against inurement under section 501(c)(3) and paragraph (c)(2) of this section.

(iii) The application of the factors in paragraph (f)(2)(ii) of this section to these facts is as follows. O has engaged in regular and ongoing activities that further exempt purposes both before and after the excess benefit transaction occurred. Although the size and scope of the excess benefit transaction were significant in relation to the size and scope of O's activities that further exempt purposes, the transaction with Company K was a one-time occurrence. By adopting a conflicts of interest policy and new contract review procedures and by terminating C, O has implemented safeguards that are reasonably calculated to prevent future violations. Moreover, O took corrective actions before the IRS commenced an examination of O. In addition, O has made a good faith effort to seek correction from Company K, the disqualified person who benefited from the excess benefit transaction. Based on the application of the factors to these facts, O continues to be described in section 501(c)(3).

EXAMPLE 5. (i) O is a large organization with substantial assets and revenues. O conducts activities that further its exempt purposes. O employs C as its Chief Financial Officer. During Year 1, O pays $2,500 of C's personal expenses. O does not make these payments pursuant to an accountable plan, as described in §53.4958–4(a)(4)(ii). In addition, O does not report any of these payments on C's Form W–2, "Wage and Tax Statement," or on a Form 1099–MISC, "Miscellaneous Income," for C for Year 1, and O does not report these payments

as compensation on its Form 990, "Return of Organization Exempt From Income Tax," for Year 1. Moreover, none of these payments can be disregarded as nontaxable fringe benefits under § 53.4958–4(c)(2) and none consisted of fixed payments under an initial contract under § 53.4958–4(a)(3). C does not report the $2,500 of payments as income on his individual Federal income tax return for Year 1. O does not repeat this reporting omission in subsequent years and, instead, reports all payments of C's personal expenses not made under an accountable plan as income to C.

(ii) O's payment in Year 1 of $2,500 of C's personal expenses constitutes an excess benefit transaction between an applicable tax-exempt organization and a disqualified person under section 4958. Therefore, this transaction is subject to the applicable excise taxes provided in that section. In addition, this transaction violates the proscription against inurement in section 501(c)(3) and paragraph (c)(2) of this section.

(iii) The application of the factors in paragraph (f)(2)(ii) of this section to these facts is as follows. O engages in regular and ongoing activities that further exempt purposes. The payment of $2,500 of C's personal expenses represented only a de minimis portion of O's assets and revenues; thus, the size and scope of the excess benefit transaction were not significant in relation to the size and scope of O's activities that further exempt purposes. The reporting omission that resulted in the excess benefit transaction in Year 1 occurred only once and is not repeated in subsequent years. Based on the application of the factors to these facts, O continues to be described in section 501(c)(3).

EXAMPLE 6. (i) O is a large organization with substantial assets and revenues. O furthers its exempt purposes by providing social services to the population of a specific geographic area. O has a sizeable workforce of employees and volunteers to conduct its work. In Year 1, O's board of directors adopted written procedures for setting executive compensation at O. O's executive compensation procedures were modeled on the procedures for establishing a rebuttable presumption of reasonableness under § 53.4958–6. In accordance with these procedures, the board appointed a compensation committee to gather data on compensation levels paid by similarly situated organizations for functionally comparable positions. The members of the compensation committee were disinterested within the meaning of § 53.4958–6(c)(1)(iii). Based on its research, the compensation committee recommended a range of reasonable compensation for several of O's existing top executives (the Top Executives). On the basis of the committee's recommendations, the board approved new compensation packages for the Top Executives and timely documented the basis for its decision in board

minutes. The board members were all disinterested within the meaning of §53.4958–6(c)(1)(iii). The Top Executives were not involved in setting their own compensation. In Year 1, even though payroll expenses represented a significant portion of O's total operating expenses, the total compensation paid to O's Top Executives represented only an insubstantial portion of O's total payroll expenses. During a subsequent examination, the IRS found that the compensation committee relied exclusively on compensation data from organizations that perform similar social services to O. The IRS concluded, however, that the organizations were not similarly situated because they served substantially larger geographic regions with more diverse populations and were larger than O in terms of annual revenues, total operating budget, number of employees, and number of beneficiaries served. Accordingly, the IRS concluded that the compensation committee did not rely on "appropriate data as to comparability" within the meaning of §53.4958–6(c)(2) and, thus, failed to establish the rebuttable presumption of reasonableness under §53.4958–6. Taking O's size and the nature of the geographic area and population it serves into account, the IRS concluded that the Top Executives' compensation packages for Year 1 were excessive. As a result of the examination, O's board added new members to the compensation committee who have expertise in compensation matters and also amended its written procedures to require the compensation committee to evaluate a number of specific factors, including size, geographic area, and population covered by the organization, in assessing the comparability of compensation data. O's board renegotiated the Top Executives' contracts in accordance with the recommendations of the newly constituted compensation committee on a going forward basis. To avoid potential liability for damages under state contract law, O did not seek to void the Top Executives' employment contracts retroactively to Year 1 and did not seek correction of the excess benefit amounts from the Top Executives. O did not terminate any of the Top Executives.

(ii) O's payments of excessive compensation to the Top Executives in Year 1 constituted excess benefit transactions between an applicable tax-exempt organization and disqualified persons under section 4958. Therefore, these payments are subject to the applicable excise taxes provided under that section, including second-tier taxes if there is no correction by the disqualified persons. In addition, these payments violate the proscription against inurement under section 501(c)(3) and paragraph (c)(2) of this section.

(iii) The application of the factors in paragraph (f)(2)(ii) of this section to these facts is as follows. O has engaged in regular and ongoing activities that further exempt purposes both before and after the excess benefit transactions

occurred. The size and scope of the excess benefit transactions, in the aggregate, were not significant in relation to the size and scope of O's activities that further exempt purposes. O engaged in multiple excess benefit transactions. Nevertheless, prior to entering into these excess benefit transactions, O had implemented written procedures for setting the compensation of its top management that were reasonably calculated to prevent the occurrence of excess benefit transactions. O followed these written procedures in setting the compensation of the Top Executives for Year 1. Despite the board's failure to rely on appropriate comparability data, the fact that O implemented and followed these written procedures in setting the compensation of the Top Executives for Year 1 is a factor favoring continued exemption. The fact that O amended its written procedures to ensure the use of appropriate comparability data and renegotiated the Top Executives' compensation packages on a going-forward basis are also factors favoring continued exemption, even though O did not void the Top Executives' existing contracts and did not seek correction from the Top Executives. Based on the application of the factors to these facts, O continues to be described in section 501(c)(3).

(3) APPLICABILITY. The rules in paragraph (f) of this section will apply with respect to excess benefit transactions occurring after March 28, 2008.

(g) APPLICABILITY OF REGULATIONS IN THIS SECTION. The regulations in this section are, except as otherwise expressly provided, applicable with respect to taxable years beginning after July 26, 1959. For the rules applicable with respect to taxable years beginning before July 27, 1959, see 26 CFR (1939) 39.101(6)–1 (Regulations 118) as made applicable to the Code by Treasury Decision 6091, approved August 16, 1954 (19 FR 5167; C.B. 1954–2, 47).

(h) [Reserved]. For further guidance see § 1.501(c)(3)–1T(h).

## § 1.501(c)(4)-1 Civic organizations and local associations of employees.

(a) CIVIC ORGANIZATIONS—(1) IN GENERAL. A civic league or organization may be exempt as an organization described in section 501(c)(4) if—

(i) It is not organized or operated for profit; and

(ii) It is operated exclusively for the promotion of social welfare.

(2) PROMOTION OF SOCIAL WELFARE—(i) IN GENERAL. An organization is operated exclusively for the promotion of social welfare if it is primarily

engaged in promoting in some way the common good and general welfare of the people of the community. An organization embraced within this section is one which is operated primarily for the purpose of bringing about civic betterments and social improvements. A social welfare organization will qualify for exemption as a charitable organization if it falls within the definition of charitable set forth in paragraph (d)(2) of § 1.501(c)(3)–1 and is not an action organization as set forth in paragraph (c)(3) of § 1.501(c)(3)–1.

(ii) POLITICAL OR SOCIAL ACTIVITIES. The promotion of social welfare does not include direct or indirect participation or intervention in political campaigns on behalf of or in opposition to any candidate for public office. Nor is an organization operated primarily for the promotion of social welfare if its primary activity is operating a social club for the benefit, pleasure, or recreation of its members, or is carrying on a business with the general public in a manner similar to organizations which are operated for profit. See, however, section 501(c)(6) and § 1.501(c)(6)–1, relating to business leagues and similar organizations. A social welfare organization that is not, at any time after October 4, 1976, exempt from taxation as an organization described in section 501(c)(3) may qualify under section 501(c)(4) even though it is an action organization described in § 1.501(c)(3)–1(c)(3)(ii) or (iv), if it otherwise qualifies under this section. For rules relating to an organization that is, after October 4, 1976, exempt from taxation as an organization described in section 501(c)(3), see section 504 and § 1.504–1.

(b) LOCAL ASSOCIATIONS OF EMPLOYEES. Local associations of employees described in section 501(c)(4) are expressly entitled to exemption under section 501(a). As conditions to exemption, it is required (1) that the membership of such an association be limited to the employees of a designated person or persons in a particular municipality, and (2) that the net earnings of the association be devoted exclusively to charitable, educational, or recreational purposes. The word local is defined in paragraph (b) of § 1.501(c)(12)–1. See paragraph (d)(2) and (3) of § 1.501(c)(3)–1 with reference to the meaning of charitable and educational as used in this section.