**ORAL ARGUMENT SCHEDULED FOR 9:00 AM ON APRIL 14, 2016**

**No. 14-5316**

# In the United States Court of Appeals for the District of Columbia

**TRUE THE VOTE, INC.,**

*Plaintiff-Appellant*,

v.

**INTERNAL REVENUE SERVICE**, *et al*.

*Defendants-Appellees*,

On Appeal from the United States District Court for the District of Columbia

The Honorable Reggie B. Walton
United States District Court Judge
Case No. 1:13-cv-00734-RBW

**REPLY BRIEF FOR APPELLANT**

Cleta Mitchell
Michael J. Lockerby
FOLEY & LARDNER, LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, DC 20007
(202) 672-5300 (telephone)
(202) 672-5399 (fax)
mlockerby@foley.com
cmitchell@foley.com

Kaylan L. Phillips
Noel H. Johnson
PUBLIC INTEREST LEGAL FOUNDATION
209 West Main Street
Plainfield, IN 46168
(317) 203-5599 (telephone)
(888) 815-5641 (fax)
kphillips@publicinterestlegal.org
njohnson@publicinterestlegal.org

*Counsel for Plaintiff-Appellant (additional counsel listed inside front cover)*

*Additional Counsel:*

William E. Davis
Mathew D. Gutierrez
FOLEY & LARDNER, LLP
One Biscayne Tower
2 South Biscayne Boulevard
Suite 1900
Miami, FL 33131
(305) 482-8404 (telephone)
(305) 482-8600 (fax)
wdavis@foley.com
mgutierrez@foley.com

John C. Eastman
CENTER FOR CONST'L JURISPRUDENCE
c/o Chapman University Fowler School of Law
One University Drive
Orange, CA 92866
(877) 855-3330 x2 (telephone)
(714) 844-4817 (fax)
jeastman@chapman.edu

# Table of Contents

Table of Authorities ................................................................................. iv

SUMMARY OF THE ARGUMENT ....................................................................1

ARGUMENT ..........................................................................................1

I.  This Case is Not Moot. .......................................................................5

    A.  The District Court Erred By Taking Judicial Notice of
        Disputed Facts. .....................................................................7

    B.  The Government Has Failed to Satisfy the Formidable Burden of
        Demonstrating that Its Voluntary Cessation of the Challenged Conduct
        Mooted TTV's Claims. ..........................................................11

    C.  Current and Future Harm to TTV's Constitutional Rights is Not
        Speculative or Outside the Scope of the Complaint. ...........................17

    D.  TTV's Claims Regarding the Retention and Disclosure of TTV's
        Application Materials Are Actionable ...............................................18

II.  The IRS Cannot Both Admit the Existence of the Targeting Scheme and
     Insist that the Inspections of Materials Unnecessary to the Determination
     of TTV's Exempt Status were Conducted for a Tax Administration
     Purpose. ..........................................................................21

III.  TTV's *Bivens* Claims are Actionable. ......................................................24

    A.  This Court Recognizes *Bivens* Claims for First
        Amendment Violations. ..........................................................24

    B.  Section 7428 is Not an Adequate, Alternative Remedy Such that
        Would Preclude Reliance on *Bivens* ...........................................25

    C.  Congressional Intent to Preserve *Bivens* Remedies Is Sufficiently
        Clear. ................................................................................27

    D.  D.C. Circuit and Supreme Court Precedent Clearly Instruct that
        Whether a Comprehensive Remedial Scheme Precludes a *Bivens*
        Remedy Turns on the Claimant Before the Court. ..............................31

    E.  The Individuals' Concern that Providing a Remedy for TTV would
        Jeopardize Enforcement of the Law of Tax Exempt Organizations is

ii

      Severely Overblown and Undermined by *Bivens* and its Progeny. ......32

    F.    The Egregiousness of the IRS Targeting Scheme Weighs Heavily in Favor of a *Bivens* Remedy. ................................................................33

CONCLUSION .......................................................................................35

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements ................................................................37

CERTIFICATE OF SERVICE

iii

## Table of Authorities[1]

*Cases*

*Already, LLC v. Nike, Inc.*, 133 S. Ct. 721 (2013)............................. 6, 12-13

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
     403 U.S. 388 (1971)............................ 1, 4-5, 24-29, 29 n.10, 30-33, 35

*Booth v. Fletcher*, 101 F.2d 676 (D.C. Cir. 1938).................................... 9 n.7

*BP W. Coast Prods. LLC v. May*, 347 F. Supp. 2d 898 (D. Nev. 2004) ........ 9

*Cannon v. D.C.*, 717 F.3d 200 (D.C. Cir. 2013).......................................... 10

*Carlson v. Green*, 446 U.S. 14 (1980) ......................................................... 28

*Cellco Partnership v. FCC*, 357 F.3d 88 (D.C. Cir. 2004).......................... 10

*Church of Scientology v. United States*, 506 U.S. 9 (1992) ........................ 20

*Clark v. Library of Congress*, 750 F.2d 89 (D.C. Cir. 1984) ................. 17-18

*Cnty. of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64 (D.D.C. 2008) ....... 8

*Cty. of L.A. v. Davis*, 440 U.S. 625 (1979) .............................................. 5, 13

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ...................................... 12

*Dasisa v. Univ. of Mass.*, 2006 U.S. App. LEXIS 12547
     (D.C. Cir. May 2, 2006)............................................................................ 7

*Davis v. Passman*, 442 U.S. 228 (1979) ..................................................... 28

*D.C. Prof'l Taxicab Drivers Ass'n v. District of Columbia*,
     880 F. Supp. 2d 67 (D.D.C. 2012)......................................................... 12

*Dellums v. Powell*, 566 F.2d 167 (D.C. Cir. 1977)................................ 24-25

---

[1] Authorities upon which TTV chiefly relies are marked with asterisks.

*Dickerson v. United States*, 530 U.S. 428 (2000) ......................................... 17

*FDIC v. Meyer*, 510 U.S. 471 (1994) ........................................................... 35

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ...................................................................................... 6

*Hartman v. Moore*, 547 U.S. 250 (2006) ................................................. 24-25

*Kim v. United States,* 632 F.3d 713 (D.C. Cir 2011) ............................... 31-32

*Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*,
    969 F.2d 1384 (2d Cir. 1992) ................................................................. 9

*Linchpins of Liberty v. United States*, No. 15-501
    (D.C. Cir. filed Jan. 15, 2015) ........................................................ 3 n.3

*Lindsey v. United States*, 448 F. Supp. 2d 37 (D.D.C. 2006) ....................... 7

*M/V American Queen v. San Diego Marine Constr. Corp.*,
    708 F.2d 1483 (9th Cir. 1983) ............................................................... 9

*Minneci v. Pollard*, 132 S. Ct. 617 (2012) .................................................. 25

*Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449 (D.C. Cir. 1998) ........ 5

*Murphy v. Kmart Corp.*, 2010 U.S. Dist. LEXIS 96693
    (D.S.D. Sept. 15, 2010) ......................................................................... 9

*Paterson v. Weinberger*, 644 F.2d 521 (5th Cir. 1981) ................................ 7

*Perry v. Sindermann*, 408 U.S. 593 (1972) .................................................. 3

*Power Inc. v. NLRB*, 40 F.3d 409 (D.C. Cir. 1994) ................................ 9 n.7

*Qassim v. Bush*, 466 F.3d 1073, 1075 (D.C. Cir. 2006) ............................. 14

*Regan v. Taxation with Representation of Wash.*, 461 U.S. 540 (1983) ........ 3

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*,
    547 U.S. 47 (2006) .............................................................................. 19

*SEC v. Bilzerian*, 112 F. Supp. 2d 12 (D.D.C. 2000) .............................. 9 n.7

*Sossamon v. Lone Star State of Tex.*, 560 F.3d 316 (5th Cir. 2009). 15, 15 n.9

*Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169 (D.C. Cir. 2006) .................... 11

*United Presbyterian Church v. Reagan*, 738 F.2d 1375 (D.C. Cir. 1984)... 18

*U.S. v. Neill*, 964 F. Supp. 438 (D.D.C. 1997) ................................. 7

*Weinstein v. Islamic Republic of Iran,*
175 F. Supp. 2d 13 (D.D.C. 2001) ......................................... 7, 9 n.7

*Wilson v. Libby*, 535 F.3d 697, 721 (2008)............................................. 25, 31

*Young v. D.C. Hous. Auth.*, 31 F. Supp. 3d 90 (D.D.C. 2014) .................... 13

*Z St. v. Koskinen*, 791 F.3d 24 (D.C. Cir. 2015)........................................... 26

## Statutes and Rules

26 U.S.C. § 501(c)(3)......................................................................... 3

26 U.S.C. § 6103(b)(4)...................................................................... 23

26 U.S.C. § 7428......................................................4, 19-20, 25-27

26 U.S.C. § 7428(b)(2)...................................................................... 19

26 C.F.R. 601.201(n)(7)(iv)(b) ......................................................... 20

26 C.F.R. 601.201(n)(7)(v) ............................................................... 20

Fed. R. Civ. P 12(b)(6)...................................................................... 11

Fed. R. Evid. 201(b)(2) ....................................................................... 7

Fed. R. Evid. 801(c) ........................................................................... 9

Fed. R. Evid. 801(d)(2) ...................................................................... 8

Fed. R. Evid. 802 ............................................................................... 9

## Other Authorities

134 Cong. Rec. 28285 (Oct. 7, 1988) ........................................... 27

*GAO Report .................................................................6, 10-11, 13-14, 17

Hearing on S. 579, 100th Cong., 1st Sess., § 3(a) (1987)........................27-28

Impeachment of Richard M. Nixon, The President of the United States, Art. II(1) ................................................................................................. 2 n. 2

IRS Pub. 557, *Tax-Exempt Status for Your Organization*, Ch. 1 (Rev. October 2011) ........................................................................................... 23

IRS Rev. Proc. 2007-52, sec. 6.02 ............................................................... 20

IRS Rev. Proc. 2011-09 ................................................................................ 23

IRS Rev. Proc. 2015-5, Sect. 5.03 .........................................................19-20

Oversight Report of Findings.................................................................33-35

TIGTA, *Status of Actions Taken to Improve the Processing of Tax-Exempt Applications Involving Political Campaign Intervention*, No. 2015-10-025 (March 2015)...................................................................................11, 14-15

U.S. Government Accountability Office, Resources: For Auditors, http://www.gao.gov/resources/auditors/overview .................................... 5 n.4

Werfel, Charting a Path Forward at the IRS: Initial Assessment and Plan of Action, Appendix C, June 24, 2013 .............................................. 8 n. 6, 9, 11

## SUMMARY OF THE ARGUMENT

This case is not moot. The district court's contrary holding rests on improper and selective use of judicial notice, exclusively in the Government's favor. If the court's judicial notice standard is acceptable, TTV must be afforded its benefit equally, which means this Court must consider evidence that shows that the Targeting Scheme has not ceased, that TTV remains threatened by viewpoint discrimination, and that calls into question the district court's conclusion that the IRS has "completely and irrevocably eradicated the effects" of the Targeting Scheme.

TTV's unlawful inspection claims are actionable. The Government's brief admits, as it must, that the Targeting Scheme existed. It cannot be true, then, that the inspection of information demanded from TTV, information which was irrelevant to the determination of TTV's tax-exempt status, was inspected for a tax-administration purpose. The district court thus erred in dismissing this claim.

TTV's *Bivens* claims are likewise actionable. This Court has long considered *Bivens* applicable to First Amendment claims. Congress, as well as the IRS itself, has plainly indicated that *Bivens* remedies are viable against IRS officials. The authority on which the Individuals and the district court rely to conclude otherwise is highly distinguishable, and does not provide a basis for dismissal.

For the reasons that follow, the districts court's decision should be reversed

1

and the case remanded.

## ARGUMENT

The articles of impeachment that were drawn up against President Richard Nixon, and that precipitated his resignation, alleged that he had *attempted* to employ the IRS for partisan political ends.[2] Here, the Obama administration has *successfully* employed the IRS for partisan political ends. This cannot stand. This Court must ensure that it never happens again.

True the Vote's ("TTV") application for a tax-exemption was intentionally delayed for over three years, all because the Government objected to TTV's policy positions, mission, and affiliations, in violation of core First Amendment freedoms. The IRS's conduct cost TTV donors, time, and expenses. And the IRS remains in possession of volumes of information unnecessarily demanded from TTV under the threat that failure to comply would result in the closing of its application and treatment of TTV as a taxable entity.

The Government's position is that there is absolutely no remedy for the unconstitutional conduct by government officials is wrong. The mere *suspension* of one component of the administration-wide scheme of targeting conservative

---

[2] Impeachment of Richard M. Nixon, The President of the United States, Art. II(1), *available at* https://www.gpo.gov/fdsys/pkg/GPO-CDOC-106sdoc3/pdf/GPO-CDOC-106sdoc3-19-3.pdf.

organizations has done nothing to remedy the harm presently inflicted on TTV or to hold the responsible government officials accountable for their admitted wrongdoing.

The Individual Appellees (the "Individuals") begin with a fascinating, but largely irrelevant, description of the contours of tax-exempt entities organized under Section 501(c)(3) of the Internal Revenue Code ("IRC").[3] The Individuals remind this Court of the uncontroversial principle that "[t]ax-exempt status is a benefit; it is not constitutionally required." *See Regan v. Taxation with Representation of Wash.*, 461 U.S. 540, 545 (1983).

Important for this Court, however, is what *is* constitutionally required. When the government makes a benefit available, "[i]t may not deny [that] benefit…on a basis that infringes constitutionally protected interests—especially, [the] interest in freedom of speech…. Such interference with constitutional rights is impermissible." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Such unconstitutional interference is precisely what TTV alleges and what must be accepted as true for purposes of this appeal.

---

[3] At least eleven times, the Individuals cross-reference arguments from their brief filed in *Linchpins of Liberty v. United States*, No. 15-501 (D.C. Cir. filed Jan. 15, 2015). Federal Rule of Appellate Procedure 28(i) permits a party to adopt by reference a part of another party's brief in cases with multiple parties or consolidated cases. This case is neither. As such, TTV only responds to those arguments in the brief filed here.

3

The Individuals' suggest that the unconstitutional scrutiny of TTV was, in fact, justified. (Ind. Br. at 28 (TTV's application is the type "that should prompt closer scrutiny from an IRS employee determining an applicant's eligibility for tax-exempt status").) Apart from being refuted by the Treasury Inspector General for Tax Administration ("TIGTA") and other government actors, such a suggestion is irrelevant to this case. The allegations—which must be taken as true—are that the Individuals caused pecuniary harm to the TTV as a result of blatant viewpoint discrimination. Whether such harm can be remedied under the authority of *Bivens* is the relevant question.

The Individuals endeavor to convince this Court that Congress—having fully envisioned the possibility of the unconstitutional scheme perpetrated by the Individuals in this case—deliberately intended to provide no effective remedy to victims like TTV. In fact, the Individuals go further. They argue that it was the deliberate intent of Congress that victims like TTV wait nearly three quarters of a year before they may seek any relief, and only then in the form of a declaratory judgment to obtain their tax-exempt status, 26 U.S.C. § 7428, with absolutely no remedy for egregiously unconstitutional conduct by government officials.

The Individuals' argument defies common sense and is contrary to this Court's authority to "use any available remedy to make good the wrong done." *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388,

4

396 (1971). Even the IRS conceded below that remedies under *Bivens* are available to TTV. (Dkt. 54 at 16.)

For the reasons below, this Court should reverse the district court's decision and permit TTV to pursue its claims.

## I.     This Case is Not Moot.

"The burden of establishing mootness rests on the party that raises the issue." *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 459 (D.C. Cir. 1998) (citations omitted). The Government's burden in this case is a "heavy" one, *Cty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979), one that is not satisfied by simply granting TTV's application for a tax exemption, (Gov. Br. at 13-14). An action is moot only "when nothing turns on its outcome," *Nichols*, 142 F.3d at 459, which the Government has not demonstrated here.

TTV provided four ways in which the Government's conduct continues or threatens to harm it. (TTV Br. at 15-24.) Far from countering those assertions, the Government has demonstrated that this case presents disputed issues of fact, which must be resolved through the discovery process rather than through the selective use of judicial notice. The Government Accountability Office ("GAO")—the nation's "supreme audit institution"[4]— has flatly refuted the Government's claim

---

[4] U.S. Government Accountability Office, Resources: For Auditors, http://www.gao.gov/resources/auditors/overview (last accessed March, 6, 2016).

5

that the threat of viewpoint discrimination has been alleviated. In fact, it is precisely in the IRS's examination of existing organizations like TTV where GAO discovered that the threat of discriminatory treatment remains most prevalent.

Moreover, a defendant cannot automatically moot a case "simply by ending its unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013). The Government bears "the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). Not only has the Government failed to make the necessary showing, the GAO Report[5] makes it nearly impossible to do so.

The Government has also failed to counter TTV's argument that TTV is harmed by the IRS's continued possession of and ability to make public information it concedes was unnecessarily demanded from TTV. Remarkably, the Government resorts to victim blaming, asserting that TTV is without recourse because it "made no attempt to protect the requested information, but submitted it to the IRS." (Gov. Br. at 27-28.)

A live controversy remains that this Court can remedy. Reversal is therefore appropriate.

_____

[5] *Available at* http://www.gao.gov/products/GAO-15-514 (last visited March 7, 2016).

### A. The District Court Erred By Taking Judicial Notice of Disputed Facts.

Echoing the district court, the Government goes beyond the allegations in the Complaint and engages in a so-called "factual attack" on this Court's jurisdiction, relying almost exclusively on matters outside the pleadings. *See Lindsey v. United States*, 448 F. Supp. 2d 37, 43 (D.D.C. 2006) (describing nature of "factual attack" on jurisdiction). Ordinarily, in a factual attack, "the defendant submits affidavits, testimony, or other evidentiary materials…through some evidentiary method" in order to rebut the jurisdictional basis for the action. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). The Government submitted no such evidence. Instead, the district court found this case was moot entirely by taking judicial notice of adjudicative facts.

"The court may judicially notice a fact that is not subject to reasonable dispute because it…can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The type of facts subject to judicial notice is very limited because "judicial notice 'is a process by which a court takes recognition of a fact in the absence of formal proof.'" *Weinstein v. Islamic Republic of Iran*, 175 F. Supp. 2d 13, 16 (D.D.C. 2001) (quoting *U.S. v. Neill*, 964 F. Supp. 438, 446 (D.D.C. 1997)).

The district court supported its mootness determination by taking "judicial notice that the IRS has in fact suspended the alleged scheme and taken remedial

7

steps to address the alleged conduct." (JA-208, n.7.) The source for both of these assertions is an extra-record report—the IRS Path Forward[6]—and website post prepared by the IRS itself—a *defendant* in this case. *Id*. Such self-serving materials are "not the type of document[s] about which there can be no reasonable dispute." *Cnty. of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 78 (D.D.C. 2008) (refusing request to take judicial notice of Inspector General's report).

Whether the targeting of certain tax-exempt groups has, in fact, ceased is a question of considerable dispute, and is thus not a fact subject to judicial notice. *Dasisa v. Univ. of Mass*., 2006 U.S. App. LEXIS 12547, *2 (D.C. Cir. May 2, 2006) (unpublished) ("matters that are debatable,  . . . do not qualify as 'adjudicative facts' of which the court will take judicial notice."). That TIGTA has since found that the IRS has allegedly taken steps to temper the use of inappropriate selection criteria for future applicants (Gov. Br. at 15-16) is of no moment at this stage in this case because that report is itself no more reliable than the other sources on which the Government and the district court rely. *Kempthorne*, 587 F. Supp. at 78. Although, the report's admissions against interest can be used against the government itself, (Fed. R. Evid. 801(d)(2)), the self-serving statements in the government's own report in favor of the government's

---

[6] Daniel Werfel, *Charting a Path Forward at the IRS: Initial Assessment & Plan of Action* (June 2013) ("IRS Path Forward").

position are not even admissible, (Fed. R. Evid. 801(c); 802), much less dispositive as a matter of judicial notice.

The fact that the IRS Path Forward document and the IRS's website are "public records" does not *ipso facto* make their factual contents subject to judicial notice, as the district court believed. JA-205-206.  Generally, "'a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it.'" *BP W. Coast Prods. LLC v. May*, 347 F. Supp. 2d 898, 906 (D. Nev. 2004) (quoting *M/V American Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983)). That a document is a public record may permit "the court to take judicial notice of the *existence* of the document," *Murphy v. Kmart Corp.*, 2010 U.S. Dist. LEXIS 96693, *9 (D.S.D. Sept. 15, 2010) (emphasis in original), but the facts contained within that document *must be reasonably undisputable* before they may be established as facts, *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992).[7]

---

[7] A survey of Circuit law reveals that the judicial notice standard is difficult to satisfy. *See*, *e.g.*, *Booth v. Fletcher*, 101 F.2d 676, 678 (D.C. Cir. 1938) (noticing fact that the appellant was the retired Chief Justice of the Court of Claims), *SEC v. Bilzerian*, 112 F. Supp. 2d 12, 15 n.3 (D.D.C. 2000) (noticing fact that a petition for rehearing had been filed); *Power Inc. v. NLRB*, 40 F.3d 409, 426 n.11 (D.C. Cir. 1994) (noticing that the union won the election). Such facts are "straightforward and easy to ascertain." *Weinstein*, 175 F. Supp. 2d at 16.

9

Compounding its error, the district court selectively applied its version of the judicial notice standard to assertions that the IRS Targeting Scheme had ceased. The Government has done the same here. The district court ignored evidence suggesting that the IRS Targeting Scheme had manifested itself in other ongoing oversight mechanisms with the agency, including a so-called "Review of Operations" program under which organizations similar to TTV were granted tax-exempt status but then immediately subjected to ongoing heightened review and potential audit. (TTV Br. at 9.) And since the district court's decision, there is more evidence that the threat of viewpoint discrimination within the IRS remains very real. *See* GAO Report.

Surprisingly, the Government responds to the GAO Report by pointing out that it does not address application-review procedures, but rather "covers examination selection of existing exempt organizations." (Gov. Br. at 20.) But that is precisely where TTV presently finds itself. The GAO Report demonstrates that the IRS Targeting Scheme has not ceased, but has spread to other mechanisms of the IRS's oversight of organizations like TTV.

The Government cites *Cannon v. D.C.*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013), and *Cellco Partnership v. FCC*, 357 F.3d 88, 96 (D.C. Cir. 2004), to

10

support its claim that the contents of the IRS Path Forward and 2015 TIGTA[8]

Report are the proper subject of judicial notice. (Gov. Br. at 18.) Yet there is no

suggestion in those cases that the facts of which this Court took judicial notice

were in any way disputed. Here, the GAO Report—and TTV's well-pleaded

allegations (which must be taken as true)—flatly contradict the district court's

conclusion that the threat of viewpoint discrimination has been eliminated or that

the IRS Targeting Scheme has ceased in all of its applications. At best, the

unsworn, extra-record statements on which the Government relies create a disputed

issue of fact as to whether the IRS Targeting Scheme has ceased.

At this stage in the litigation, TTV, not the Government, must be afforded all

reasonable inferences that can be drawn from the allegations. *Stewart v. Nat'l*

*Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006). By cherry picking only those

self-serving "facts" in the IRS's own reports that support the IRS, the district court

flipped the Rule 12(b)(6) standard on its head and thus erred.

### B. The Government Has Failed to Satisfy the Formidable Burden of Demonstrating that Its Voluntary Cessation of the Challenged Conduct Mooted TTV's Claims.

The Government acknowledges that its mootness argument depends on its

voluntary cessation of the challenged conduct *after* litigation began. (Gov. Br. 12-

---

[8] TIGTA, *Status of Actions Taken to Improve the Processing of Tax-Exempt Applications Involving Political Campaign Intervention*, No. 2015-10-025 (March 2015) ("2015 TIGTA Report").

13.) The Government therefore "bears the *formidable* burden of showing that it is *absolutely clear* the allegedly wrongful behavior could not reasonably be expected to recur." *Already*, 133 S. Ct. at 727 (citations omitted) (emphases added). That "formidable burden" is satisfied "only when two factors are met: (1) there is no reasonable expectation that the alleged wrong(s) will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *D.C. Prof'l Taxicab Drivers Ass'n v. District of Columbia*, 880 F. Supp. 2d 67, 74 (D.D.C. 2012) (citations and quotations omitted). Even if the facts on which the Government and the district court rely were admissible, they fall woefully short of establishing those factors.

The district court believed two IRS actions demonstrate that the voluntary cessation doctrine is inapplicable here: (1) the "suspension until further notice" of its be-on-the-lookout (BOLO) list used to subject TTV to discriminatory treatment, and (2) the so-called "remedial steps" allegedly taken by the IRS. (JA-208 n.7.) The district court's analysis is erroneous for several reasons.

First, because the BOLO list has, by the IRS's own account, been suspended only *until further notice*, it is far from "absolutely clear" that the IRS cannot return to its old ways. The suspension of the BOLO list is not permanent, as it must be to render this case moot. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)

12

("[T]he case is not moot, since the moratorium [on the challenged policy] is not permanent" "and may be lifted at any time.").

County of L.A. v. Davis, 440 U.S. 625 (1979), is not to the contrary. In Davis, the Supreme Court found plaintiff's claims of a discriminatory hiring process moot when the county instituted a non-discriminatory method of screening job applicants after the commencement of litigation. The changes, however, were "a substantial policy endeavor for a County—while the present case simply involves the" mere suspension until further notice of a long-used watch list "that is much more easily undone or ignored." Young v. D.C. Hous. Auth., 31 F. Supp. 3d 90, 97-98 (D.D.C. 2014). Moreover, in Davis "[t]here [was] … no suggestion by any of the parties, nor [was] there any reason to believe, that [the defendants] would significantly alter their [conduct]" if not enjoined. 440 U.S. at 632.

The same cannot be said here. Indeed, the most recent report concerning the IRS's selection criteria—and the one that pertains to existing organizations—demonstrates the threat that the IRS will continue to use inappropriate criteria to identify organizations for examination. GAO Report at Highlights. Moreover, Davis predates Lyons, which explained that a policy change must be permanent to render a case moot, and Already, which requires "unconditional and irrevocable" assurances that the challenged conduct will not recur. 133 S. Ct. at 728.

13

Second, the GAO Report also demonstrates that "interim relief or events have [not] *completely and irrevocably* eradicated the effects of the alleged violation." *Qassim v. Bush*, 466 F.3d 1073, 1075 (D.C. Cir. 2006). In response, the Government invokes the 2015 TIGTA Report, which purports to provide an update on the alleged remedial steps taken by the IRS to address the challenged conduct, which the district court also cited approvingly in its voluntary cessation analysis. (Gov. Br. at 14-17.) Although TIGTA reports that the "IRS has taken significant actions to eliminate the selection of potential political cases based on names and policy positions," it can hardly be said to endorse the "complete[] and irrevocabl[e]" change necessary to moot this case. *Quassim*, 466 at 1075.

In fact, the 2015 TIGTA Report details numerous shortcomings in the IRS's alleged remedial actions. Most troublingly, the report explains that despite the "overhaul" the Government claims occurred, two Determinations Unit employees interviewed by TIGTA "stated that they did not know what criteria to use to identify potential political campaign intervention." 2015 TIGTA Report at 3.

TIGTA also found several deficiencies in the implementation of training recommendations that the Government claims have been completed by the IRS. Previously, TIGTA recommended that training be required for IRS employees regarding the following topics: "(1) the use of activities, instead of names and policy positions, to identify applications for further review, (2) what constitutes

14

political campaign intervention versus general advocacy, (3) the type of additional information that should be requested and the appropriate wording of questions in additional information request letters, and (4) a change in process for referring organizations to the EO function Examinations office." *Id.* at 8.

However, TIGTA explained that the IRS plans to offer political campaign intervention training "too late in the election cycle for the training to be useful." *Id.* Additionally, TIGTA found that as of August 27, 2014, forty-six employees "did not complete one or more of the training sessions … and/or did not attend the training sessions for the required amount of time." *Id.* at 8-9.

The Government desperately attempts to alleviate its "formidable burden" by pointing out that "other Circuits" have "less concern about the recurrence of objectionable behavior" when the defendant is a government actor. (Gov. Br. at 13.) Not only is such authority not the rule in this Circuit, it does not help the Government here. As the Government's brief explains, deference may be appropriate unless there is "evidence to the contrary." (Gov. Br. at 19 (quoting *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009).)[9]

Such evidence is present here. According to the GAO, the IRS has failed to eliminate the threat of viewpoint discrimination in its ongoing regulation of TTV.

_____

[9] Moreover, the *Sossamon* decision was "based on the special considerations afford[ed] the government in its role as jail-keeper." 560 F.3d at 321.

15

And as detailed by Congress, the IRS has repeatedly obscured and even withheld the truth from investigators in this matter. (TTV Br. at 9-12.) The IRS is therefore undeserving of deference and its self-serving statements concerning its remedial efforts should not be blindly accepted, but should be tested by the discovery and adversarial process.

The Government lastly suggests that it is "implausible" that the IRS could return to its old ways "given that it is subject to scrutiny by numerous entities within the legislative and executive branches." (Gov. Br. at 16.) However, what is "implausible" is that the Government would expect this Court to believe such a thing given that such scrutiny did not prevent the IRS from perpetrating a multi-year targeting scheme that ensnared hundreds of organizations. Many likely thought it just as "implausible" that the IRS could again be used to target political enemies following the Watergate Scandal that saw the President of the United States resign his post. Absent relief from this Court, it is very plausible that this will happen again.

The foregoing plainly demonstrates the district court erred in holding that the IRS has satisfied its "formidable burden" of demonstrating that its voluntary cessation has mooted TTV's claims.

16

## C. Current and Future Harm to TTV's Constitutional Rights is Not Speculative or Outside the Scope of the Complaint.

The Government's assertion that TTV's allegations were confined narrowly to the "application-review process" is refuted by the plain language of the Complaint, which seeks relief against the Targeting Scheme, i.e. the review process and "any other similar practice or policy" (JA-63, Prayer for Relief at 3), through which the IRS is or is threatening to engage in viewpoint discrimination.

Whether the district court considered "remedial" steps beyond the alleged suspension of the BOLO list—as the Government believes—is largely irrelevant in light of the recent findings by the GAO that the threat of the IRS using inappropriate criteria to target existing organizations for audit remains. It is precisely that threat, and others, that fall squarely within TTV's Complaint.

Moreover, the Targeting Scheme currently chills TTV's First Amendment rights, (TTV Br. at 18,) which is "*itself* a violation of the First Amendment," *Dickerson v. United States*, 530 U.S. 428, 459 (2000) (Scalia, J., dissenting) (citations omitted). The Government does not dispute that. Rather, the Government contends that TTV's reliance on *Clark v. Library of Congress*, 750 F.2d 89 (D.C. Cir. 1984) to support this point is "misplaced." (Gov. Br. at 25.) To be sure, this Court held that the appellant's request to enjoin further investigations was "premature" because the potential for future injury was too speculative. *Clark*, 750 F.2d at 94 n.5. But on the question of whether the appellant could pursue his First

Amendment chill claim as a result of a *previous* investigation was answered in the affirmative. *Id*. at 93. Indeed, it is the law of this Circuit that a "chilling effect" constitutes an actionable injury where "the plaintiff has unquestionably suffered some concrete harm (past or immediately threatened) apart from the 'chill' itself." *United Presbyterian Church v. Reagan*, 738 F.2d 1375, 1378 (D.C. Cir. 1984). Like the appellant in *Clark*, TTV suffered concrete harms in the form of forfeited donations (JA-62-63, ¶¶ 210-11), and burdensome and intrusive inquiries into TTV's activities and associations. TTV should be allowed to pursue its claims.

### D. TTV's Claims Regarding the Retention and Disclosure of TTV's Application Materials Are Actionable.

The public availability of TTV's unlawfully acquired application materials—as much as it is a direct consequence of the IRS's illegal Targeting Scheme—presents a live controversy that this Court can remedy. (TTV Br. at 22-23.) TTV's Complaint contemplated such harm, seeking to enjoin "further implement[ation]" of the Targeting Scheme (JA-63, Prayer for Relief at 3), which necessarily includes the public release of the information unlawfully collected by the IRS in furtherance of that scheme. (JA-56, ¶ 172 (recognizing that TTV's application would become public once approved).)

The Government concedes that the Complaint makes such allegations. (Gov. Br. at 26.) Yet its response, bizarrely, is to claim that the Complaint could not possibly allege such harm because the IRS advised TTV that its application, once

18

approved, would be made available for public inspection. (*Id*.) The Government's

argument presents the classic case of an unconstitutional condition. *Rumsfeld v.*

*Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 59 (2006) (the

unconstitutional condition doctrine prohibits government from "deny[ing] a benefit

to a person on a basis that infringes his constitutionally protected . . . freedom of

speech even if he has no entitlement to that benefit."). TTV could either have

complied with the IRS's unconstitutional viewpoint-based requests, thereby

making private information concerning its activities, affiliations, and policies

available for public inspection, or TTV could have refused such requests and

forfeited its ability to effectively pursue its mission. With either choice, TTV

surrenders its constitutional rights.

The world in which the Government prefers to live, one in which infant

charities can freely risk the loss of donations and expend precious resources

fighting a government of nearly unlimited means, simply does not exist. The world

TTV and others prefer to live in is one in which charitable organizations can trust

the IRS to enforce the tax code in an impartial manner.

Had TTV "refused to disclose information" in response to the IRS's

requests, TTV would be precluded from seeking relief under Section 7428, which

requires that an organization first exhaust all administrative remedies. 26 U.S.C. §

7428(b)(2). If an organization fails to respond to a request for additional

19

information, the IRS will close the application and consider it withdrawn. IRS Rev. Proc. 2015-5, Sect. 5.03 ("[F]ailure to respond to a request for additional information will result in the closure of the application without a determination letter being issued."). IRS regulations specifically state that exhaustion of remedies requires an organization to take "all reasonable steps to secure a determination from the Service," including "submission of all additional information requested by the Service." 26 C.F.R. 601.201(n)(7)(iv)(b). Therefore, if an organization does not answer the questions or provide all information requested by the IRS, it cannot avail itself of Section 7428. 26 C.F.R. 601.201(n)(7)(v); IRS Rev. Proc. 2007-52, sec. 6.02.

The Government does no better countering *Church of Scientology v. United States*, 506 U.S. 9 (1992), which informs this Court that the IRS's retention of information unlawfully demanded from TTV constitutes a separate injury that prevents this case from being moot. The Government asserts that *Church of Scientology* is distinguishable because the "taxpayer there was 'forced' to provide privileged information to the IRS because…a court had ordered it to comply with a summons." (Gov. Br. at 27.) This argument fails. The "forcefulness" with which the information was acquired did not determine the outcome in *Church of Scientology*. Rather, it was the unlawfulness of the summons. 509 U.S. at 13. The

20

same is true here. The collection of certain application materials related to TTV was premised on unlawful viewpoint discrimination.

Under the threat of its application being closed, TTV chose to provide information to the IRS, information it believed was requested in the ordinary course of the application process. The retention of such information is an "affront to the taxpayer's privacy. [TTV's] interest in maintaining the privacy of [its] 'papers and effects' is of sufficient importance to merit constitutional protection." *Id*. at 13.

## II.    The IRS Cannot Both Admit the Existence of the Targeting Scheme and Insist that the Inspections of Materials Unnecessary to the Determination of TTV's Exempt Status were Conducted for a Tax Administration Purpose.

The Government spends the first half of its brief arguing that the unconstitutional conduct in which the IRS engaged has been remedied, including the "unnecessary information requests" the IRS sent to groups like TTV. (Gov. Br. at 15.) The Government must state such things in order to make the argument that the case is now moot. But now the Government wants to have it both ways. It wants to admit the existence of the Targeting Scheme while maintaining that the information demanded from TTV was inspected for a lawful tax-administration purpose.

If the IRS Targeting Scheme existed—which it did, as must be assumed under Rule 12 (JA-56-57)—then the IRS demanded information from TTV that

21

was unnecessary and irrelevant to the determination of TTV's tax exempt status and which was request solely because the IRS engaged in viewpoint discrimination. That information was inspected by known individuals. (JA-58, ¶ 181.) The IRS cannot now admit that such improper requests and inspections took place and still plausibly claim that the information was not "used for anything other than 'processing applications.'" (Gov. Br. at 30.) Such a statement is flatly refuted not only by the Complaint, but by TIGTA, which identified seven requests for information that were unnecessarily propounded on groups like TTV. (JA-156.)

For the same reasons, the Government cannot admit that information demanded from TTV was requested for unconstitutional reasons and yet still part of the "official duties" of certain Appellees. (*Id*. at 28.) It is irreconcilable that information obtained in bad faith pursuant to an unconstitutional viewpoint discrimination scheme, which was, *by admission*, unnecessary and irrelevant to the determination of TTV's status, could *also* be legitimately inspected for a tax administrations purpose. For the Government to effectively argue otherwise is for it to argue that the IRS Targeting Scheme never existed, which it simply cannot do.

It is also no answer to claim that TTV requested the inspection of information unnecessary to the determination of its tax-exempt status simply because the information was "furnished" to the IRS. (Gov. Br. at 32.) All of the information provided to the IRS was required as a precondition for the continued

22

consideration of TTV's application for exempt status. The Government utterly disregards the deliberate perversion of the normal exempt organization application process caused by the IRS Targeting Scheme, and ignores the limitations on the IRS imposed under Section 6103.

While TTV's initial submission of its Form 1023 application was made willingly, it was submitted with an expectation that its application would be received, processed, and acted upon in the normal and customary manner. *See, e.g.*, IRS Pub. 557, *Tax-Exempt Status for Your Organization*, Ch. 1 (Rev. October 2011); IRS Rev. Proc. 2011-09. The IRS does not—and cannot—explain how information unnecessary and irrelevant to the determinations process could be used for the lawful purpose of "tax administration." 26 U.S.C. § 6103(b)(4). But for the false representations made to it concerning the necessity of the information requested, TTV would not have provided that information to the IRS. In that regard, TTV no more requested its return information be inspected than Bernie Madoff's investors requested that he defraud them. And, as noted above, had TTV failed to provide the documents illegally demanded by the IRS, its application would have been terminated with no further recourse.

Accepting the Government's position would permit the IRS to effectively condition the recognition of exempt status on the surrender of any information the IRS may want to know about an applicant, its board of directors, its members, its

23

volunteers, its activities and speakers, and its donors. The IRS would then be free to inspect such information and disclose it to other agents and employees, all under the guise of "investigating" the applicant, and then further disclose that information to the public once the application is approved. Whether such information is "necessary" for the determination of the applicant's status would be irrelevant.

At this stage in the litigation, TTV must be afforded the opportunity to verify or rebut, through discovery, the claims made by the Government concerning the purposes for which its return information was inspected and used.

## III.    TTV's *Bivens* Claims are Actionable.

### A. This Court Recognizes *Bivens* Claims for First Amendment Violations.

TTV does not seek to expand *Bivens* to a new context. Over thirty-five years ago, this Court recognized the availability of a *Bivens* action to compensate victims of First Amendment retaliation. *Dellums v. Powell*, 566 F.2d 167, 194-96 (D.C. Cir. 1977), *cert. denied*, 438 U.S. 916 (1978).

The Supreme Court, too, has strongly indicated that the claims asserted by TTV are actionable. In *Hartman v. Moore*, 547 U.S. 250, 256 (2006), the Court explained that "[o]fficial reprisal for protected speech offends the Constitution [because] it threatens to inhibit exercise of the protected right…. When the vengeful officer is federal, he is subject to an action for damages on the authority

24

of *Bivens*." (citations and quotations omitted). This Court, too, recognizes that "[t]here is nothing novel about a *Bivens* remedy for a First Amendment retaliation claim against federal officials." *Wilson v. Libby*, 535 F.3d 697, 721 (2008) (citing *Hartman* and *Dellums*).

Seemingly recognizing this authority, the Individuals attempt to couch TTV's claims as narrowly concerned with the tax-exempt application process. (Ind. Br. 22.) Yet they do not provide any reason why *Bivens* requires this Court to depart from the broad instructions of *Dellums* and *Hartman*. Indeed, there is no reason to reach a contrary conclusion under the present circumstances.

## B. Section 7428 is Not an Adequate, Alternative Remedy Such that Would Preclude Reliance on *Bivens*.

The Individuals assert that whether TTV has an adequate, alternative remedy is "not the question" this Court must answer. (Ind. Br. at 18.) Yet that is precisely the inquiry the Supreme Court demands. As recently as 2012, the Supreme Court explained that the first step in the *Bivens* analysis is to ask "whether any alternative, existing process for protecting the [constitutionally recognized] interest amounts to a convincing reason…to refrain from providing a new and freestanding remedy in damages." *Minneci v. Pollard*, 132 S. Ct. 617, 621 (2012) (internal citations omitted). The Individuals seem to recognize as much, given that they go to great lengths to explain why Section 7428 provides the only remedy available to

25

TTV for the constitutional harm it has suffered. But Section 7428 does not preclude reliance on *Bivens* for at least two reasons.

First, just last year, this Court rejected the argument that Section 7428 is a sufficient substitute for a constitutional claim. As explained by this Court, Congress did not intend to make organizations like TTV endure "blatant viewpoint discrimination" during the 270-day threshold under Section 7428 prior to filing suit to protect their constitutional rights. *Z St. v. Koskinen*, 791 F.3d 24, 32 (D.C. Cir. 2015).

It is largely irrelevant that *Z St.* concerned the Anti-Injunction Act rather than *Bivens* because the same logic applies in both cases. It is hard to believe that Congress would have contemplated the scheme before this Court and still intended that victims like TTV be limited to Section 7428. Indeed, what is plausible, and indeed likely, is that Congress did not envision the scheme before this Court, and thus the omission of an express remedy was "inadvertent," *Wilkie v. Robbins*, 551 U.S. 537, 554 (2007), not deliberate, as the Individuals contend. Accordingly, Section 7428 does not preclude a remedy.

Second, Section 7428 is an insufficient remedy for constitutional violations because it requires the exhaustion of administrative remedies. The Government states that TTV could have refused to provide information it believed was unnecessary to its application and then invoked Section 7428 if its application was

26

consequently closed. However, as explained, that is not accurate. An applicant has

not exhausted its administrative remedies until the application has been pending for

at least 270 days *and* the applicant has taken all "timely, reasonable steps to secure

a determination." Such steps include the "timely submission of all additional

information requested" by the IRS. 26 C.F.R. § 601.201(n)(7)(iv)(b). In other

words, a declaratory judgment action under Section 7428 would be unripe in the

scenario described by the Government. A remedy that is wholly unavailable is

clearly inadequate.

### C. Congressional Intent to Preserve *Bivens* Remedies Is Sufficiently Clear.

It is the Individuals, and not TTV, who err in their argument regarding the

legislative history of Section 7433. On two occasions, Congress considered a

statutory civil action against IRS employees who committed constitutional

violations. (*See* TTV Br. at 31-32.) During consideration of both bills, Congress

was explicitly informed that a remedy for such violations was presently available

against IRS employees under *Bivens*. On one such occasion Congress's own staff

explained that through *Bivens*, "[t]he courts have created a clear cause of action for

injured taxpayers." 134 Cong. Rec. 28285, 29273 (Oct. 7, 1988). Upon this

information, Congress omitted from its bills the precise remedy it knew to be

available under *Bivens*.

27

The Individuals, not surprisingly, see this omission as an indication that Congress "rejected" the remedy TTV seeks. Yet they provide absolutely no legislative history to support that position. Congress was well-aware that *Bivens* had become a frequent recourse for injured taxpayers in the years immediately preceding consideration of the aforementioned bills. In fact, Congress was informed by then-IRS Commissioner Gibbs that "more than 1000 *Bivens* suits were filed against [IRS] employees during fiscal years 1980 through 1986." Hearing on S. 579, 100th Cong., 1st Sess., § 3(a) (1987) at 243. If such suits were causing under-enforcement of the tax code—something the Individuals vehemently assert will result in if TTV is allowed to proceed with its claims—it is hard to imagine that Congress would have ignored such concerns without so much as a word rejecting the availability of *Bivens* claims.

The Supreme Court requires "legislative history to show that Congress meant to pre-empt [the] *Bivens* remed[ies]," *Carlson v. Green*, 446 U.S. 14, 19 (1980), or else "the two [remedies] can exist side by side," *id* at 23 n.10. Indeed, in *Carlson*, the Supreme Court recognized a *Bivens* remedy for the violation of Eighth Amendment rights, despite the availability of the Federal Tort Claims Act ("FTCA"), because "nothing in the [FTCA] or its legislative history… show[ed] that Congress meant to pre-empt a *Bivens* remedy or to create an equally effective remedy for constitutional violations." 446 U.S. at 18. Similarly, in *Davis v.*

28

*Passman*, 442 U.S. 228, 245-48 (1979), the Court recognized a *Bivens* remedy for a congressional employee's allegedly discriminatory termination in violation of her due process rights because there were no "equally effective alternative remedies" and "no explicit congressional declaration" that the plaintiff may not recover money damages.

The legislative history plainly indicates that taxpayers had come to rely on *Bivens* to an enormous extent in the years following that decision. It is not consistent with congressional practice to assume—without any evidentiary support from the Individuals—that Congress intended to wipe away the "clear cause of action" the courts had crafted as a remedy for injured taxpayers.

It is therefore puzzling when the Individuals state that Congress could not have intended to "preserve *Bivens* remedies … because there were no such remedies to preserve." (Ind. Br. at 23.) In the very next paragraph, the Individuals concede that "many *Bivens* suits were filed against Service employees between 1980 and 1986."[10] (Ind. Br. at 24 (citations and quotations omitted). Indeed, that is precisely the remedy Congress intended to preserve.

---

[10] The Individuals point to the lower success rate of these cases as evidence that a *Bivens* remedy should be denied here. (Ind. Br. at 24.) However, the success rate of *Bivens* claims against particular federal officials has never played a part of the "special factors" analysis and the Individuals provide no reason such speculation should now control whether TTV may pursue its claims against IRS officials here.

29

The testimony of Commissioner Gibbs concerning the viability of *Bivens* against IRS officials is not the view of one man frozen in time. The *current* IRS Commissioner, in his motion to dismiss below, *swears to the very same thing*. (Dkt. 54 at 16 ("Plaintiff has available—and again has raised—claims under *Bivens* (Count III of the Amended Complaint).").) Furthermore, such a concession from the IRS itself severely discredits the Individuals' argument that permitting TTV's claims to move forward would cause insurmountable problems for the administration of the tax code. (Ind. Br. at 27.)

Commissioner Gibbs's "concerns" about retention of IRS employees and enforcement of the tax code did not concern *Bivens*, but rather the proposed statutory remedy in the senate bill under consideration. (Ind. Br. at 24.) That proposed remedy went considerably farther in providing a cause of action than does *Bivens*, which requires that several factors be present—or not present—before such an action may lie. *Bivens* also asks whether an employee is entitled to qualified immunity, making it the more desirable action for the IRS to defend when compared to the explicit statutory cause of action Congress considered. As such, Commissioner Gibbs's testimony did not address the special factors that may counsel hesitation, as the Individuals believe. (Ind. Br. at 24.)

The legislative history plainly indicates that Congress understood that *Bivens* remedies were available against IRS officials to remedy constitutional harms for

30

which taxpayers had no available remedy under the present law, and therefore that the statutory remedies it has provided complement, but do not supplant, *Bivens*. "Where Congress decides to enact a statutory remedy which it views as fully adequate only in combination with the *Bivens* remedy…that congressional decision should be given effect by the courts." *Id*.

Congress and the IRS have both "expressed an intention that the courts preserve *Bivens* remedies." *Wilson*, 535 F.3d at 705. Even if considered a "comprehensive remedial scheme," the IRC does not foreclose a *Bivens* remedy for TTV's constitutional injuries.

### D. D.C. Circuit and Supreme Court Precedent Clearly Instruct that Whether a Comprehensive Remedial Scheme Precludes a *Bivens* Remedy Turns on the Claimant Before the Court.

Attempting to solidify their reliance on *Kim v. United States,* 632 F.3d 713 (D.C. Cir 2011), the Individuals state that "[t]he Supreme Court's [*Bivens*] analysis…has never turned on the nature of the challenged conduct." (Gov. Br. at 16.) But that is simply not true. A comprehensive remedial scheme is one "special factor" that may weigh against the creation of a *Bivens* remedy. But this Court has been clear that the inquiry does not turn definitively upon the mere existence of a comprehensive remedial scheme alone. Indeed, this Court must additionally ask whether Congress "has 'not inadvertently' omitted damages remedies *for certain claimants*, and has not plainly expressed an intention that the courts preserve

31

*Bivens* remedies." *Wilson*, 535 F.3d at 706. The clear import of this Court's language is that even within the confines of the same statutory scheme, a *Bivens* remedy might be appropriate for some claimants and not others, and some claims and not others.

As explained, the circumstances of this case are such that a *Bivens* remedy is appropriate here, but was not appropriate under the circumstances at issue in *Kim*. (TTV Br. at 28-30.)

### E. The Individuals' Concern that Providing a Remedy for TTV would Jeopardize Enforcement of the Law of Tax Exempt Organizations is Severely Overblown and Undermined by *Bivens* and its Progeny.

Without support, the Individuals assert that providing a remedy for TTV here would result in IRS employees "frequently be[ing] the target of allegations like those [TTV] asserts," and would cause IRS employees to "under-enforce" the IRC. (Gov. Br. at 27.) Neither contention has merit.

Foremost, *Bivens* rejects such concerns. *Bivens* itself involved the area in which the judiciary arguably has historically provided the most deference—law enforcement. Yet as the holding of the case demonstrates, any concern about under-enforcement gave way to the need to protect against the deprivation of constitutional rights.

Individuals' concerns do not withstand scrutiny. Each year, the IRS vigorously scrutinizes thousands of tax-exempt applications. Yet nowhere do the

32

Individuals provide any evidence that such organizations are attempting to beat down the door of the IRS on the back of *Bivens*, or that a ruling for TTV here would suddenly throw open the floodgates. The magnitude of applications the IRS processes is not a reason to hesitate, but a reason to act. Unchecked abuse in this area will reach an enormous number of organizations designed to benefit social welfare and charitable causes.

Further, it is unclear exactly what type of enforcement the Individuals believe stands to be jeopardized. Is it the use of blatantly viewpoint-based watch-lists? Is it the freedom to delay hundreds of applications for years? Or maybe it is the ability to propound intrusive questionnaires that demand sensitive information such as donor names? The Individuals do not say.

However, these questions highlight that it is not under-enforcement that should concern this Court; it is the precedent that will be set if the Individuals' unconstitutional "enforcement mechanisms" escape justice. For if they do, the IRS will have little incentive to root out the culture of bias that gave rise to the egregious scheme that this Court must now review.

### F. The Egregiousness of the IRS Targeting Scheme Weighs Heavily in Favor of a *Bivens* Remedy.

Special factors justify a remedy for the unprecedented, egregious, and prolonged abuses perpetrated by the IRS. As explained in the recent Oversight

33

Report of Findings,[11] the IRS and its employees:

- "targeted conservative-oriented applicants for tax exempt status";
- "covered up the misconduct and misled Congress about the existence and nature of the targeting";
- "and the Obama Administration knowingly and wrongly blamed line-level employees for the misconduct"; and,
- "obstructed the Committee's investigation."

Oversight Report of Findings at v.

And more is likely to come because "fact-finding is not yet complete." *Id*. at iv. Any shortcoming in Oversight's fact-finding is a direct result of the obstructionist tactics employed by the IRS. Not only have several categories of records subpoenaed by Oversight not been produced by the IRS, "TIGTA recently announced that it restored approximately 30,000 e-mails to and from Lois Lerner *that the IRS previously claimed were permanently lost or destroyed*." *Id*. (emphasis added).

Oversight's report contains an entire section devoted to the abusive treatment of TTV and its founder, Catherine Engelbrecht. *See id*. at 203-207. Remarkably, Oversight Committee Ranking Member Elijah Cummings "wrote to Engelbrecht requesting extensive information about TTV's work" and also "privately solicited records related to TTV from the IRS." *Id*. at 204, 206. Appellee

---

[11] A*vailable at* https://oversight.house.gov/wp-content/uploads/2014/12/December-2014-IRS-Report.pdf

Paz "authorized the IRS to release information to the Democratic staff, but it is unclear what information the IRS eventually provided." *Id*. at 159.

The district court held that the Individuals' mere employment with the IRS means that no matter the magnitude of their transgressions, they may not be made to answer for their actions. Yet it is not enough that the IRS, after the fact, be ordered to now conduct itself in accordance with federal law. Declaratory and injunctive relief cannot make TTV and the hundreds of other targeted groups whole again. Nor will such a "remedy" effectively ensure that citizens are not again targeted for the beliefs they hold. After all, "[i]t must be remembered that the purpose of *Bivens* is to deter *the officer*." *FDIC v. Meyer*, 510 U.S. 471, 485 (1994) (emphasis in original).

Those who perpetrated this unconstitutional targeting scheme must be held accountable. *Bivens* is tailor made for this case—and only such a remedy can accomplish the purpose for which *Bivens* was intended.

## CONCLUSION

TTV requests reversal and remand for further proceedings.

35

Dated: March 7, 2016

Respectfully submitted,

Cleta Mitchell
Michael J. Lockerby
FOLEY & LARDNER, LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, DC 20007
(202) 672-5300 (telephone)
(202) 672-5399 (fax)
mlockerby@foley.com
cmitchell@foley.com
*Lead Counsel for Appellant*

_____/s/ Noel H. Johnson_____
Kaylan L. Phillips
Noel H. Johnson
PUBLIC INTEREST LEGAL FOUNDATION
209 West Main Street
Plainfield, IN 46168
(317) 203-5599 (telephone)
(888) 815-5641 (fax)
kphillips@publicinterestlegal.org
njohnson@ publicinterestlegal.org
*Counsel for Appellant*

William E. Davis
Mathew D. Gutierrez
FOLEY & LARDNER, LLP
One Biscayne Tower
2 South Biscayne Boulevard
Suite 1900
Miami, FL 33131
(305) 482-8404 (telephone)
(305) 482-8600 (fax)
wdavis@foley.com
mgutierrez@foley.com
*Counsel for Appellant*

John C. Eastman
CENTER FOR CONST'L JURISPRUDENCE
c/o Chapman University Fowler
School of Law
One University Drive
Orange, CA 92866
(877) 855-3330 x2 (telephone)
(714) 844-4817 (fax)
jeastman@chapman.edu
*Counsel for Appellant*

## Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of this Court's order, dated September 23, 2015, because this brief contains 7,999 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R.App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.

Dated: March 7, 2016          ___/s/ Noel H. Johnson_____
                                      Noel H. Johnson
                                      PUBLIC INTEREST LEGAL FOUNDATION
                                      209 West Main Street
                                      Plainfield, IN 46168
                                      (317) 203-5599 (telephone)
                                      (888) 815-5641 (fax)
                                      njohnson@ publicinterestlegal.org
                                      *Counsel for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Appellant's Opening

Brief with the Clerk of the Court for the United States Court of Appeals for the

District of Columbia Circuit by using the appellate CM/ECF system on March 7,

2016. I further certify that all participants in the case are registered CM/ECF users

and that service will be accomplished by the appellate CM/ECF system.


Dated: March 7, 2016                               /s/ Noel H. Johnson
                                          Noel H. Johnson
                                          PUBLIC INTEREST LEGAL FOUNDATION
                                          209 West Main Street
                                          Plainfield, IN 46168
                                          (317) 203-5599 (telephone)
                                          (888) 815-5641 (fax)
                                          njohnson@ publicinterestlegal.org
                                          *Counsel for Appellant*

1