

**U.S. Department of Justice**

**Tax Division**

*Please reply to:* Appellate Section
P.O. Box 502
Washington, D.C. 20044

*Facsimile No. (202) 514-8456*
*Telephone No.(202) 514-3361*

JAHagley:mll
5-16-4583
CMN 2013101880

March 22, 2016

Mark J. Langer, Esquire
Clerk, U.S. Court of Appeals
  for the District of Columbia Circuit
U.S. Courthouse, Room 5423
333 Constitution Avenue, N.W.
Washington, D.C.  20001

    Re:   True the Vote, Inc. v. Internal Revenue Service, *et al.*
           (D.C. Cir. - No. 14-5316)

Dear Mr. Langer:

      Oral argument is scheduled in this case for April 14, 2016, before Judges Henderson, Ginsburg, and Sentelle.  Pursuant to Fed. R. App. P. 28(j), the Government writes to update its Certificate as to Parties, Rulings, and Related Cases.  *See* Gov't Br. *ii*.  In its Certificate, the Government noted that a petition for writ of mandamus was pending in *NorCal Tea Party Patriots v. IRS*, No. 15-3793 (6th Cir.).  Today, the Sixth Circuit denied the Government's petition.  A copy of the Sixth Circuit's opinion is attached.  The petition challenged a discovery order that called for the disclosure of the names, addresses, and taxpayer-identification numbers of applicants for tax-exempt status.  The Sixth Circuit held that the disclosure was not precluded by Section 6103 of the Internal Revenue Code.  Although we also cited (*see* Gov't Br. 38) an earlier ruling of the District Court in *NorCal*, involving what constitutes unlawful inspection of taxpayer-return information, that ruling was not placed in issue in the mandamus proceeding.

13718602.1

　　　Please distribute this letter and its attachment to the panel assigned to hear this case.  Thank you.

　　　　　　　　　　　　　　　　　Sincerely yours,

　　　　　　　　　　　　　　　　　/s/ Judith A. Hagley

　　　　　　　　　　　　　　　　　JUDITH A. HAGLEY
　　　　　　　　　　　　　　　　　Attorney
　　　　　　　　　　　　　　　　　Appellate Section

Enclosure

13718602.1

## CERTIFICATE OF SERVICE

It is hereby certified that on March 22, 2016, the foregoing letter with attachment was filed with the Clerk via the CM/ECF system and served on the appellant via CM/ECF.

s/ Judith A. Hagley<br>
JUDITH A. HAGLEY

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0069p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

In re: UNITED STATES OF AMERICA.
_____

UNITED STATES OF AMERICA,

                 *Petitioner*,

    *v*.

NORCAL TEA PARTY PATRIOTS, et al.,

                 *Respondents*.

No. 15-3793

On Petition for a Writ of Mandamus to the
United States District Court for the Southern District of Ohio.
No. 1:13-cv-00341—Susan J. Dlott, District Judge.

Argued: March 16, 2016

Decided and Filed: March 22, 2016

Before: KEITH, McKEAGUE, and KETHLEDGE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Patrick J. Urda, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Petitioner. Edward D. Greim**,** GRAVES GARRETT, LLC, Kansas City, Missouri, for Respondents. **ON PETITION:** Patrick J. Urda, Gilbert S. Rothenberg, Jonathan S. Cohen, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Petitioner. **ON RESPONSE:** Edward D. Greim, Todd P. Graves, Dane C. Martin, GRAVES GARRETT, LLC, Kansas City, Missouri, Christopher P. Finney, FINNEY LAW FIRM, LLC, Cincinnati, Ohio, David R. Langdon, LANGDON LAW, LLC, West Chester, Ohio, for Respondents.

1

## OPINION

KETHLEDGE, Circuit Judge.  Among the most serious allegations a federal court can address are that an Executive agency has targeted citizens for mistreatment based on their political views.  No citizen—Republican or Democrat, socialist or libertarian—should be targeted or even have to fear being targeted on those grounds.  Yet those are the grounds on which the plaintiffs allege they were mistreated by the IRS here.  The allegations are substantial: most are drawn from findings made by the Treasury Department's own Inspector General for Tax Administration.  Those findings include that the IRS used political criteria to round up applications for tax-exempt status filed by so-called tea-party groups; that the IRS often took four times as long to process tea-party applications as other applications; and that the IRS served tea-party applicants with crushing demands for what the Inspector General called "unnecessary information."

Yet in this lawsuit the IRS has only compounded the conduct that gave rise to it.  The plaintiffs seek damages on behalf of themselves and other groups whose applications the IRS treated in the manner described by the Inspector General.  The lawsuit has progressed as slowly as the underlying applications themselves:  at every turn the IRS has resisted the plaintiffs' requests for information regarding the IRS's treatment of the plaintiff class, eventually to the open frustration of the district court.  At issue here are IRS "Be On the Lookout" lists of organizations allegedly targeted for unfavorable treatment because of their political beliefs.  Those organizations in turn make up the plaintiff class.  The district court ordered production of those lists, and did so again over an IRS motion to reconsider.  Yet, almost a year later, the IRS still has not complied with the court's orders.  Instead the IRS now seeks from this court a writ of mandamus, an extraordinary remedy reserved to correct only the clearest abuses of power by a district court.  We deny the petition.

Case: 15-3793   Document: 26-2   Filed: 03/22/2016   Page: 3
USCA Case #14-5316   Document #1605176   Filed: 03/22/2016   Page 6 of 20

No. 15-3793                     *In re United States of America*                    Page 3

I.

A.

Every year, thousands of non-profit groups—churches, schools, charities, and other actors in what Tocqueville called America's "civil life"—apply for exemption from federal taxes under section 501(c) of the Internal Revenue Code. In 2014, the IRS considered 117,525 such applications. *See Internal Revenue Service Data Book 2014* at 57. Of those, the IRS rejected 89, or about 0.07%. *Id.*

Most groups apply for 501(c)(3) status, which permits them to receive tax-deductible donations and to engage in limited, issue-based political advocacy. Others apply as 501(c)(4) social-welfare organizations. Tax-exempt 501(c)(4) groups may not collect tax-deductible donations, but they may engage in relatively unfettered political advocacy, including election advocacy. 501(c)(4) groups range from national organizations—including the American Civil Liberties Union, the National Rifle Association, and the Sierra Club—to local neighborhood associations.

Applicants for tax-exempt status submit standardized forms: Form 1023 for aspiring 501(c)(3) organizations, and Form 1024 for aspiring 501(c)(4) organizations. Form 1023 asks applicants to describe their purposes and activities; the compensation of their officers and employees; their fundraising methods; their revenues, expenses, assets, and liabilities; and their plans (if any) to undertake political advocacy. Form 1024 asks applicants about their activities; the names and titles of their officers; their criteria for membership; their publications; and their revenues, expenses, and balance sheets.

Both forms say at the top of page one that the applications, if successful, will be "open for public inspection." That is by Congressional design. The Internal Revenue Code requires that the application of every exempt organization be available for inspection by the general public at the national office of the IRS, as well as at the major offices of the organization. *See* 26 U.S.C. § 6104(a)(1)(A), (d)(1)(A)(iii). Even if the IRS denies an organization's application, the IRS must publish the application and the denial letter, though (unless a court orders

Case: 15-3793   Document: 26-2   Filed: 03/22/2016   Page: 4
USCA Case #14-5316   Document #1605176   Filed: 03/22/2016   Page 7 of 20

No. 15-3793                         *In re United States of America*                         Page 4

otherwise) it must first remove any identifying information. *See* 26 U.S.C. § 6110(a), (b)(1)(A), (b)(2), (c)(1); *see also* Treas. Reg. § 301.6104(a)–1(f).

Once the IRS has approved an application, the exempt organization must file a yearly information return, using a Form 990. This form asks about the group's governance; the salaries or benefits paid to its employees and members; the amount of contributions and grants it received that year; and the amount it spent on furthering its mission. The form also asks for a detailed report of the group's revenues, expenses, and balance sheet. Often, the group must attach a Schedule B, a list of the names and addresses of its major donors that year. Similar to Form 1023 and Form 1024, Form 990 is marked at the top of its first page, "Open to Public Inspection." The IRS and the group itself must make the group's return publicly available, with the proviso that the IRS must not—and each group need not—disclose the names or addresses of the group's donors as revealed on Schedule B. *See* 26 U.S.C. § 6104(b), (d)(1)(A)(i), (d)(3)(A).

Congress thus created a regime in which all of the information demanded in a successful application for 501(c) tax-exempt status is presumptively open to the public. The same is true of the information revealed in an exempt organization's annual return, save for the identities of individual donors. And the few unsuccessful applications are presumptively open to the public once any identifying information has been redacted. As for pending or dormant applications, the IRS treats the information contained in those applications as confidential "return information," not to be revealed except under limited circumstances. *See* 26 U.S.C. § 6103(a); Treas. Reg. § 301.6104(a)–1(d), (g).

B.

In 2010, the IRS began to pay unusual attention to 501(c) applications from groups with certain political affiliations. As found by the Inspector General, the IRS "developed and used inappropriate criteria to identify applications from organizations with 'Tea Party' in their names." IG Report at 5. The IRS soon "expanded the criteria to inappropriately include organizations with other specific names (Patriots and 9/12) or policy positions." *Id*. As to the policy positions, the IRS gave heightened scrutiny to organizations concerned with "government spending, government debt or taxes," "lobbying to 'make America a better place to live[,]'" or

Case: 15-3793   Document: 26-2   Filed: 03/22/2016   Page: 5
USCA Case #14-5316   Document #1605176   Filed: 03/22/2016   Page 8 of 20

No. 15-3793                     *In re United States of America*                     Page 5

"criticiz[ing] how the country is being run[.]" *Id*. at 6. The IRS collected these criteria on a spreadsheet that would become known as the "'Be On the Lookout' listing" (or BOLO listing). *Id*. at 6. These "inappropriate criteria remained in place for more than 18 months." *Id*. at 7.

Applicants whom the IRS flagged with the "Be On the Lookout" criteria were sent to a so-called "team of specialists," where the applicants "experienced significant delays and requests for unnecessary information[.]" IG Report at 7. As for the delays, "the IRS's goal for processing all types of applications for tax-exempt status was 121 days in Fiscal Year 2012[.]" *Id*. at 1. "In comparison, the average time a potential political case [*i.e.*, an application from one of the groups targeted with these criteria] was open as of December 17, 2012, was 574 calendar days[.]" *Id*. at 15. Thus, as of that date, "many organizations had not received an approval or denial letter for more than two years after they submitted their applications. Some cases have been open during two election cycles (2010 and 2012)"—and, as of December 2012, some had been open "for more than 1,000 days." *Id*. at 11, 14. These delays themselves brought adverse consequences for the applicant groups: the IG observed that, for "501(c)(3) organizations, this means that potential donors and grantors could be reluctant to provide donations or grants. In addition, some organizations withdrew their applications and others may not have begun conducting planned charitable or social welfare work." *Id*. at 12.

The IRS's application forms for tax-exempt status themselves request detailed information from every applicant group. For groups subject to the IRS's inappropriate criteria, however, the IRS also demanded what the IG called "unnecessary information." Among other things, the IRS demanded that many of these groups provide the following: "the names of donors"; "a list of all issues that are important to the organization[,]" and the organization's "position regarding such issues"; "the roles and activities of the audience and participants" at the group's events (typically over a 12-18 month period), and "the type of conversations and discussions members and participants had during the activity"; whether any of the group's officers or directors "has run or will run for public office"; "the political affiliation of the officer, director, speakers, candidates supported, etc."; "information regarding employment" of the group's officers or directors; and "information regarding activities of another organization—not just the relationship of the other organization to the applicant." *Id*. at 20. These demands,

Case: 15-3793     Document: 26-2     Filed: 03/22/2016     Page: 6
USCA Case #14-5316     Document #1605176     Filed: 03/22/2016     Page 9 of 20

No. 15-3793                     *In re United States of America*                     Page 6

according to the IG, "created [a] burden on the organizations that were required to gather and forward information that was not needed by the [IRS] and led to delays in processing the applications." *Id*. at 18. Moreover, "[f]or some organizations, this was the second letter received from the IRS requesting additional information, the first of which had been received more than a year before[.]" *Id*. This second round of letters also warned that the IRS would close the applicant's case if the IRS did not receive all of the requested information within 21 days—"despite the fact that the IRS had done nothing with some of the applications for more than one year." *Id*.

The experience of the lead plaintiff in this case, NorCal Tea Party Patriots, provides an example. NorCal applied for tax-exempt status in April 2010. In July 2010, the IRS sent NorCal a letter requesting additional information to process its application. NorCal promptly replied with 120 pages of responsive material. Eighteen months passed without further word from the IRS. Then, in a letter dated January 27, 2012, the IRS demanded more information from NorCal. The IRS's "Additional Information Requested" ran five pages single-spaced and comprised 19 separate requests, almost all of which had subparts, and many of which had six or more subparts. Among other things, the IRS requested a list of all NorCal events and activities since July 2010, with detailed information concerning the circumstances of each event and the content of any speeches or presentations made at those events; the names of NorCal's donors and whether those donors had run for elected office in the past or intended to run for elected office in the future, along with the amounts and dates of every donation; and copies of all newsletters, emails, or advertising materials that the group had sent to its members or to the general public. The IRS's letter also reminded NorCal that, "[i]f we approve your application for exemption, we will be required by law to make the . . . information you submit in response to this letter available for public inspection." The IRS directed NorCal to respond by February 17, 2012—three weeks after the date of the letter—and told NorCal that, "[i]f we don't hear from you by the response due date . . . we will assume you no longer want us to consider your application for exemption and will close your case. As a result, the Internal Revenue Service will treat you as a taxable entity." NorCal eventually provided approximately 3,000 pages of responsive material.

Case: 15-3793    Document: 26-2    Filed: 03/22/2016    Page: 7
USCA Case #14-5316    Document #1605176    Filed: 03/22/2016    Page 10 of 20

No. 15-3793                    *In re United States of America*                    Page 7

The IRS's own Taxpayer Advocate seconded many of the findings in the IG's Report. But the response of IRS Management was muted. Although the IRS acknowledged—in the classically passive formulation—certain "mistakes that were made in the process by which these applications were worked[,]" the IRS asserted that "centralization was warranted" in processing the requests, because "[c]entralization of like cases furthers quality and consistency." IG Report at 44-45.

C.

One week after the release of the Inspector General's report, the plaintiffs brought this lawsuit against the IRS and certain IRS officials. The plaintiffs asserted claims under the Privacy Act, 5 U.S.C. § 552a, and under the First and Fifth Amendments to the U.S. Constitution. The plaintiffs also claimed that the IRS's collection and internal exchange of information about their donors, along with other sensitive information not typically requested in an application for tax-exempt status, violated the Internal Revenue Code's prohibition on the unauthorized inspection of confidential "return information." *See* 26 U.S.C. §§ 6103(a), 7431 (creating a cause of action for violations of § 6103). The plaintiffs also sought to certify a class of organizations allegedly targeted by the IRS because of their political beliefs.

To that end, the plaintiffs sought discovery in the form of basic information relevant to class certification, including the names of IRS employees who reviewed the groups' applications for tax-exempt status and the number of applications from similar groups that had been granted, denied, withdrawn, or were still pending. On the record before us here, the IRS's response has been one of continuous resistance. For example, the IRS asserted that the names of IRS employees who worked on the groups' applications were taxpayer "return information" protected from disclosure by § 6103. The IRS eventually abandoned that position, but argued instead that § 6103 barred the Department of Justice's attorneys from even reviewing the groups' application files to find the names of the IRS employees who worked on them. That was true, the IRS asserted, even though § 6103(h)(2)—entitled "Department of Justice"—expressly allows the Department's attorneys to review a taxpayer's return information to the extent the taxpayer "is or may be a party to" a judicial proceeding. *See* 26 U.S.C. § 6103(h)(2)(A). The IRS further objected—this, in a case where the IRS forced the lead plaintiff to produce 3,000 pages of what

Case: 15-3793     Document: 26-2     Filed: 03/22/2016     Page: 8
USCA Case #14-5316     Document #1605176     Filed: 03/22/2016     Page 11 of 20

No. 15-3793                    *In re United States of America*                    Page 8

the Inspector General called "unnecessary information"—that "it would be unduly burdensome" for the IRS to collect the names of the employees who worked on the groups' applications. The district court eventually intervened and declared the IRS's objections meritless. Yet the IRS objected to still other document requests on grounds of "the deliberative process privilege[.]" That privilege, the IRS acknowledged, can be waived in cases involving "government misconduct"; but in the IRS's reading, the IG's report "does not include any allegation or finding of misconduct."

Eventually the district court's patience wore thin. The court began a discovery conference in December 2014 by stating: "It looks like everything in this case seems to be turning into an argument on discovery. I think we've already had more discovery conferences in this case than I've had in any other case this whole year." In the same conference the court admonished the IRS: "this is class discovery, but you're not willing to give any discovery on the putative class . . . you're just running around in circles and not answering the questions." Those admonitions appeared to have little effect. In October 2015, the court stated as follows:

> My impression is the government probably did something wrong in this case. Whether there's liability or not is a legal question. However, I feel like the government is doing everything it possibly can to make this as complicated as it possibly can, to last as long as it possibly can, so that by the time there is a result, nobody is going to care except the plaintiffs. . . . I question whether or not the Department of Justice is doing justice.

The document requests specifically at issue here concern the plaintiffs' requests for any lists of organizations that the IRS flagged for special attention using the "Be On the Lookout" criteria, as well as two spreadsheets that the IRS provided to the Inspector General in connection with his report. The plaintiffs specified that they wanted "the names of class members as shown on the IRS's internal lists" so that plaintiffs could identify fellow members of the putative class. The IRS refused to produce the lists and instead moved for a protective order from the district court. In support, the IRS argued that any information contained in an application for tax-exempt status, including the applicant's name, is confidential "return information" that the IRS is barred from disclosing to the district court. The district court, for its part, agreed that the plaintiffs' requests encompassed "return information"; but the court held that the IRS could disclose the documents nonetheless under an exception allowing disclosure where "the treatment

Case: 15-3793    Document: 26-2    Filed: 03/22/2016    Page: 9
USCA Case #14-5316    Document #1605176    Filed: 03/22/2016    Page 12 of 20

No. 15-3793                    *In re United States of America*                    Page 9

of an item reflected on such return is directly related to the resolution of an issue" in a judicial proceeding. 26 U.S.C. § 6103(h)(4)(B). The district court thus ordered the IRS to produce the documents. The IRS moved for reconsideration, and the court modified its order to permit the IRS to redact any employer identification numbers; but otherwise the court again ordered production of the documents.

The IRS then filed this petition for a writ of mandamus.

II.

A.

The writ of mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004). Mandamus should issue only in "exceptional circumstances" involving a "judicial usurpation of power" or a "clear abuse of discretion." *Id.* To obtain the writ here, the IRS must show that it lacks any other adequate means of obtaining relief, that its right to relief is "clear and indisputable," and that issuance of the writ is "appropriate under the circumstances." *Id.* at 380-81.

The IRS argues that the "names and other identifying information of" organizations that apply for tax-exempt status—along with the applications themselves—are confidential "return information" under 26 U.S.C. § 6103. IRS Petition at 2, 16. The IRS argues further that the district court lacked authority to order disclosure of those names under a statutory provision for disclosure in judicial proceedings where "the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding[.]" 26 U.S.C. § 6103(h)(4)(B). The IRS contends that the district court's discovery orders threaten to undermine statutory protections for taxpayer privacy, and that a writ of mandamus is therefore appropriate.

B.

In this country taxpayer privacy has a checkered history. The nation's first federal income-tax statute did not keep taxpayer information confidential. To the contrary, when Congress passed an income tax to finance the Civil War, courthouses and newspapers published household tax information as a way of encouraging ordinary citizens to police their neighbors'

Case: 15-3793     Document: 26-2     Filed: 03/22/2016     Page: 10
USCA Case #14-5316     Document #1605176     Filed: 03/22/2016     Page 13 of 20

No. 15-3793                    *In re United States of America*                    Page 10

compliance with the new law. *See* Office of Tax Policy, Dep't of the Treasury, *Scope & Use of Taxpayer Confidentiality & Disclosure Provisions, Vol. I* at 15 (2000). In the early twentieth century, Congress continued to classify tax returns as public records open to general inspection, subject to regulations promulgated by the Treasury Department. *Id.* at 17-18. Eventually those regulations made individual and corporate tax returns generally available to federal agencies and committees of Congress, but unavailable to the general public. *Id.* at 20.

The dangers of that regime became clear when Congress investigated President Richard Nixon's alleged abuses of power in connection with his 1972 reelection campaign. Congressional committees heard testimony that the White House had obtained from the IRS sensitive tax information on political opponents, and moreover had directed IRS personnel to audit the returns of particular taxpayers. The House Judiciary Committee thereafter approved an Article of Impeachment alleging that President Nixon had, among other things, "endeavored . . . to cause, in violation of the constitutional rights of citizens, income tax audits or other income tax investigations to be initiated or conducted in a discriminatory manner."

In the wake of President Nixon's resignation, Congress enacted the Tax Reform Act of 1976, which overhauled the rules governing disclosure of taxpayer information. No longer would the Executive have free rein over the handling of sensitive taxpayer records; instead, as the Treasury Department's Office of Tax Policy acknowledged, "Congress undertook direct responsibility for determining the types and manner of permissible disclosures." Office of Tax Policy, *Taxpayer Confidentiality Provisions, Vol. I* at 22.

1.

At the core of this statutory regime is the general rule that "[r]eturns and return information shall be confidential[.]" 26 U.S.C. § 6103(a). "Returns" include any "tax or information return," as well as "supporting schedules . . . which are supplemental to, or part of, the return so filed." 26 U.S.C. § 6103(b)(1). Congress has carefully delineated the circumstances in which returns or return information can be disclosed to government officials or to the public. IRS officials may, for example, disclose a taxpayer's own return or return information to that taxpayer. *See* 26 U.S.C. § 6103(c). In certain cases, federal officials must

Case: 15-3793     Document: 26-2     Filed: 03/22/2016     Page: 11
USCA Case #14-5316     Document #1605176     Filed: 03/22/2016     Page 14 of 20

No. 15-3793                    *In re United States of America*                    Page 11

disclose returns and return information to state tax administrators and local law enforcement. *See* 26 U.S.C. § 6103(d). And the IRS must disclose returns and return information to Congressional committees upon written request. *See* 26 U.S.C. § 6103(f).

Here, the parties and the district court agree—as do we—that applications for tax-exempt status are not "returns." *See* § 6103(b)(1). Rather, the parties say that the applications are "return information," which includes, among other things, "a taxpayer's identity" and "data . . . collected by the Secretary with respect to . . . the determination of the existence, or possible existence, of [tax] liability (or the amount thereof)[.]" 26 U.S.C. § 6103(b)(2)(A). Thus, in the parties' view, the applicant names on the "Be On the Lookout" lists and spreadsheets are "return information." As described above, the district court accepted that proposition, but held nonetheless—per the argument of plaintiffs alone—that the names on the lists and spreadsheets were subject to disclosure under § 6103(h)(4)(B). That subsection provides:

> **(4) Disclosure in judicial and administrative tax proceedings.**—A return or return information may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration, but only—
>
> > (B) if the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding[.]

The IRS argues that the district court's application of this subsection was mistaken because § 6103(h)(4)(B) authorizes disclosure only of information reflected on a *return*—and the names at issue here, the IRS says, are instead return *information*. That argument is correct so far as it goes. As defined in § 6103, as shown above, a "return" is something different than "return information"; the applicant names on the "Be On the Lookout" lists and spreadsheets came from applications for tax-exempt status, rather than from "returns"; and hence the names are not an item reflected on a "return." Subsection 6104(h)(4)(B) therefore does not authorize disclosure of those names.

The plaintiffs respond that this interpretation reads the words "or return information" out of the so-called prefatory language of § 6104(h)(4), which again states that "a return or return information may be disclosed" under ("but only" under) the circumstances described in subsections (A)-(D). But that argument is plainly wrong. The prefatory language states that "a

Case: 15-3793    Document: 26-2    Filed: 03/22/2016    Page: 12
USCA Case #14-5316    Document #1605176    Filed: 03/22/2016    Page 15 of 20

No. 15-3793                      *In re United States of America*                      Page 12

return or return information" may be disclosed as provided in subsections (A)-(D). In Congress's judgment, some of the circumstances described in those subsections warrant disclosure of "return or return information" alike; other circumstances, namely those described in the subsection at issue here, warrant disclosure only of information reflected on a "return." The point becomes clearer when one views subsections (B) and (C) together:

> A return or return information may be disclosed in a Federal or State judicial or administrative proceeding, but only—
>
> …
>
> (B)  if the treatment of an item reflected on such *return* is directly related to the resolution of an issue in the proceeding; [or]
>
> (C)  if such *return or return information* directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding[.]

26 U.S.C. § 6103(h)(4) (emphasis added).

It was Congress's prerogative to authorize broader disclosure of taxpayer information under the circumstances described in subsection (C) than in the circumstances described in subsection (B). And the mere existence of subsection (C), not to mention (A) and (D), shows that the words "or return information[,]" as used in the prefatory language, have plenty of meaning in § 6104(h)(4). Thus, reading subsection (B) to mean what it says—to authorize disclosure only of information reflected on a return—does not render meaningless the words "or return information" as used in the prefatory language. Instead that reading honors Congress's choice in crafting the provisions. *See Dep't of Homeland Sec. v. MacLean*, 135 S. Ct. 913, 919 (2015) ("Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another").

We therefore hold that 26 U.S.C. § 6103(h)(4)(B) means what it says: only information that is "reflected on [a] return" may be disclosed under section 6103(h)(4)(B); return information that is not reflected on a return may not be. *Accord In re United States*, 669 F.3d 1333, 1339-40 (Fed. Cir. 2012). The district court was mistaken when it held otherwise.

Case: 15-3793     Document: 26-2     Filed: 03/22/2016     Page: 13
USCA Case #14-5316     Document #1605176     Filed: 03/22/2016     Page 16 of 20

No. 15-3793                          *In re United States of America*                          Page 13

2.

But that does not mean the IRS is entitled to the extraordinary relief it seeks here. For § 6103(h)(4) provides neither the first word nor the last on the question whether the names of applicants for tax-exempt status are subject to disclosure as ordered by the district court. The first word is on the front of the IRS application forms themselves: "If exempt status is approved, this application"—including of course the applicant's name—"will be open for public inspection." The last word comes from two provisions that the IRS fails to mention in its petition: 26 U.S.C. §§ 6104 and 6103(b)(6).

a.

As discussed above, the IRS contends in its petition that the "names and other identifying information of" applicants for tax-exempt status are generally barred from disclosure under § 6103. IRS Petition at 2, 16. But § 6104 mandates precisely the opposite for applicants whose applications are granted. Under § 6104, any successful application for 501(c) or 501(d) tax-exempt status, "together with any papers submitted in support of such application . . . shall be open to public inspection at the national office of the Internal Revenue Service." 26 U.S.C. § 6104(a)(1)(A). In that respect, among others, applications for tax-exempt status are very different from tax returns. As relevant here, under § 6104, the name of every successful applicant for tax-exempt status is indisputably public in character. The IRS itself says as much in the header of the application forms that every applicant for tax-exempt status must fill out. (See the preceding paragraph.) The IRS said as much when requesting "additional information" from NorCal, when it warned that, "[i]f we approve your application for exemption, we will be required by law to make the application and the information that you submit in response to this letter available for public inspection." The IRS said as much even in this litigation—during the IRS's retreating action through the foothills of § 6103(h)—when it wrote to plaintiffs' counsel that "[s]ection 6104(a)(1)(A) permits the public inspection of any letter or document the IRS issued to an applicant whose application for 501(c) status is approved[.]" And the IRS's lawyer conceded in oral argument before this court that "the names of entities that are approved, I agree, are public." Yet the IRS failed to mention this elementary legal truth in the district court or in its petition for extraordinary relief from this court. We therefore hold the obvious: the names and

Case: 15-3793    Document: 26-2    Filed: 03/22/2016    Page: 14
USCA Case #14-5316    Document #1605176    Filed: 03/22/2016    Page 17 of 20

No. 15-3793                     *In re United States of America*                     Page 14

identifying information of groups whose applications for tax-exempt status the IRS has already granted are public information under § 6104.  And that means the IRS's petition is patently meritless as to the names and identifying information of groups whose applications the IRS has since granted—which is presumably most of the names and information at issue here, given the very high approval rate of tax-exemption applications generally.

b.

That leaves the names of organizations whose applications remain pending, or who withdrew their applications, or whose applications the IRS rejected.  Presumably none of the applications reflected on the "Be On the Lookout" lists are still pending, since those applications were filed over four years ago.  But there are likely some groups who chose to withdraw their applications rather than contend with the IRS's long delays and requests for "additional information."  For the most part the information submitted in those applications remains confidential "return information."  *See* Treas. Reg. § 301.6104(a)–1(d), (g).  And presumably the IRS outright denied the applications of some of the groups it allegedly targeted.

Yet the prospect of any pending, withdrawn, or denied applications only leads us back to a more fundamental question:  whether the names and identifying information of applicants for tax-exempt status are "return information" in the first place.  As noted above, "return information" as defined by § 6103(b)(2)(A) includes "a taxpayer's identity[.]"  That term sounds like it might include an applicant's name.  But here again the IRS has failed to mention a relevant statutory provision, this time § 6103(b)(6).  That provision states in full:  "The term 'taxpayer identity' means the name of a person with respect to whom *a return is filed*, his mailing address, his taxpayer identification number (as described in section 6109), or a combination thereof."  (Emphasis added.)  The word "return" has a meaning just as concrete in § 6103(b)(6) as it did in § 6103(h)(4); and that meaning does not include an application for tax-exempt status.  *See* § 6103(b)(1).  Applicants *qua* applicants file applications, not "returns"; and thus the name of an applicant for tax-exempt status does not fall within a "taxpayer's identity" as that term is defined in § 6103(b)(6) and used in § 6103(b)(2)(A).  On this point Congress drew a clear line, whose contours follow the meaning of "return."  We follow that line here just as we did in interpreting § 6103(h)(4).

Case: 15-3793     Document: 26-2     Filed: 03/22/2016     Page: 15
USCA Case #14-5316     Document #1605176     Filed: 03/22/2016     Page 18 of 20

No. 15-3793                      *In re United States of America*                      Page 15

The IRS responded at oral argument—as it always seems to respond when seeking to withhold documents in cases involving § 6103—that the names of applicants for tax-exempt status are "other data, received by, recorded by, furnished to, or collected by the Secretary . . . with respect to the determination of the existence, or possible existence, of liability" for a tax. *See* § 6103(b)(2)(A). But that argument would prove too much. If "data collected" by the Secretary includes the name of an applicant for tax-exempt status, so too it includes the name of a taxpayer who files a return. And in that event Congress was wasting its time when it included "taxpayer identity" as a type of return information under § 6103(b)(2)(A), since a taxpayer's name would already be "data collected" (and thus return information) under the IRS's unbounded conception of that term. And Congress was wasting its time yet again when it carefully defined "taxpayer identity" in § 6103(b)(6) to include names on returns but not applications—because again, in the IRS's view, both types of names are data collected (and thus return information). All of which is to say that, as a matter of elementary statutory interpretation, the IRS's assertion that applicant names are return information is meritless.

Section 6104 likewise reveals that the names of applicants for tax-exempt status are not "return information." The point is highly technical but worth making here. Section 6104(c) provides a mechanism by which the IRS may tip off state authorities regarding the IRS's intention to deny tax-exempt status to an organization that has applied for it. *See* 26 U.S.C. § 6104(c)(2). That subsection specifies in one subparagraph that the IRS may disclose to state authorities "the *names, addresses, and taxpayer identification numbers* of organizations which have applied for recognition as organizations described in section 501(c)(3)." 26 U.S.C. § 6104(c)(2)(A)(iii) (emphasis added). The next subparagraph authorizes the IRS to make "*additional* disclosures," namely, "*[r]eturns and return information* of organizations with respect to which information is disclosed under subparagraph (A) may be made available for inspection by or disclosed to an appropriate State officer." 26 U.S.C. § 6104(c)(2)(B) (emphasis added). But Congress would have had no need separately to authorize disclosure of the "names, addresses, and taxpayer identification numbers" in § 6104(c)(2)(A)(iii) if that information was already "return information" subject to disclosure under § 6104(c)(2)(B). The rules of statutory interpretation cut both ways, and the rules that cut in favor of the IRS's reading of

Case: 15-3793     Document: 26-2          Filed: 03/22/2016     Page: 16
USCA Case #14-5316    Document #1605176        Filed: 03/22/2016    Page 19 of 20

No. 15-3793                     *In re United States of America*                     Page 16

§ 6103(h)(4)(B) here cut against the IRS's reading of "return information" to include applicant names and identifying information.

Still more support for our interpretation comes from the D.C. Circuit's opinion in *Ryan v. Bureau of Alcohol, Tobacco & Firearms*, 715 F.2d 644 (D.C. Cir. 1983) (Scalia, J.). There the court considered a situation analogous to the one presented here: whether a member of the public could access a list of the names of manufacturers that had submitted Forms 4328, which provided notice of intent to engage in the manufacture of domestic liquor bottles. The ATF resisted disclosure on the ground that the names were return information under § 6103 because they had been provided "for ascertaining tax liability." *Id.* at 645. The district court agreed. But then-Judge Scalia, writing for himself and then-Judge Ruth Bader Ginsburg, declined to affirm on those grounds. Instead he concluded that Form 4328 was an "information return" within the meaning of § 6103(b)(1), and that—*because the manufacturers had filed a "return"*—the manufacturers' names fell within the term "taxpayer identity" as defined by § 6103(b)(6) and used in § 6103(b)(2)(A). 715 F.2d at 647. Here, unlike in *Ryan*, the applications at issue—the Forms 1023 and 1024 submitted to the IRS—are undisputedly not returns.

We recognize that, in another case, the D.C. Circuit held that the names of applicants for tax-exempt status are "return information." *See Landmark Legal Foundation v. IRS*, 267 F.3d 1132, 1135 (D.C. Cir. 2001). But that holding is unpersuasive for a simple reason. The *Landmark* court stated that the names of applicants for tax-exempt status are "return information" because § 6103(b)(2)(A) "specifically covers 'a taxpayer's *identity*.'" *Id.* (quoting § 6103(b)(2)(A)) (emphasis in original). But the court *never referenced Congress's express definition of that term* in § 6103(b)(6)—the IRS apparently failed to mention it there too—and thus the court seemed unaware throughout that "taxpayer's identity" includes only names on a *return*, not on an application.

For all of these reasons, we hold that the names, addresses, and taxpayer-identification numbers of applicants for tax-exempt status are not "return information" under § 6103(b)(2)(A). And we otherwise emphasize that the phrase "data, received by, recorded by, furnished to, or collected by the Secretary[,]" as used in § 6103(b)(2)(A), does not entitle the IRS to keep secret (in the name of "taxpayer privacy," no less) every internal IRS document that reveals IRS

Case: 15-3793   Document: 26-2   Filed: 03/22/2016   Page: 17
USCA Case #14-5316   Document #1605176   Filed: 03/22/2016   Page 20 of 20

No. 15-3793　　　　　　　*In re United States of America*　　　　　　　Page 17

mistreatment of a taxpayer or applicant organization—in this case or future ones. Section 6103 was enacted to protect taxpayers from the IRS, not the IRS from taxpayers.

*　　*　　*

In closing, we echo the district court's observations about this case. The lawyers in the Department of Justice have a long and storied tradition of defending the nation's interests and enforcing its laws—all of them, not just selective ones—in a manner worthy of the Department's name. The conduct of the IRS's attorneys in the district court falls outside that tradition. We expect that the IRS will do better going forward. And we order that the IRS comply with the district court's discovery orders of April 1 and June 16, 2015—without redactions, and without further delay.

The petition is denied.